**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| YURY RINSKY, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 16-10403 |
| CUSHMAN & WAKEFIELD, INC. | ) | |
| Defendant. | ) | |

**DEFENDANT CUSHMAN & WAKEFIELD, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Cushman & Wakefield, Inc. ("C&W") hereby submits this memorandum of law in support of its motion for summary judgment, pursuant to Fed. R. Civ. P. 56, on all five counts of plaintiff Yury Rinsky's Complaint.[1]

**Preliminary Statement**

This action arises from the termination of Plaintiff's employment with C&W at its headquarters in New York City in July 2015. Plaintiff alleges that the termination of his employment constitutes discrimination under M.G.L. c. 151B, §4, as he claims it was motivated by his age and health condition, lymphoma, for which he was last treated in 2013. Plaintiff further alleges that the circumstances surrounding his termination give rise to claims for promissory estoppel and misrepresentation based on alleged promises of C&W employees that he could transfer to the Boston office of a C&W affiliate to perform his work.

[1] Plaintiff initially filed his Complaint in Middlesex Superior Court on January 15, 2016, and it was removed to Federal Court on February 25, 2016 after C&W accepted service of process on January 29, 2016. Plaintiff's Complaint pled five counts: (1) Count I for age discrimination in violation of M.G.L. c. 151B; (2) Count II for disability discrimination in violation of M.G.L. c. 151B; (3) Count III for promissory estoppel/detrimental reliance; (4) Count IV for fraudulent misrepresentation; and (5) Count V for negligent misrepresentation.

The undisputed facts tell a different story. In support of its motion for summary judgment, C&W relies exclusively on the testimony of Plaintiff, his answers to interrogatories, and documents authenticated by him at his deposition. These indisputable facts reveal that there is no evidence whatsoever that the decision to terminate – which Plaintiff admits was the only adverse employment action against him – had anything to do with his age. Plaintiff's only basis for alleging age discrimination is the mere fact of his age. Under the burden shifting analysis of *McDonnell Douglas*, this alone is insufficient. C&W had a legitimate nondiscriminatory reason for terminating Plaintiff – it wanted Plaintiff to work at its New York headquarters, as he had for the prior twenty-eight years, and he refused to do so. Simply being sixty-three years old is not enough to establish that this was a pretext for discriminatory animus.

The same is true of Plaintiff's claim of discrimination based on health. Plaintiff admits that he is not part of the class of persons protected by M.G.L. c. 151B, §4(16). His last treatment for lymphoma was in 2013, and he admitted that it did not impact his ability to work in 2015. Furthermore, Plaintiff's only factual allegation regarding his health in the months leading up to the termination of his employment was an expression of relief by his boss that he didn't have additional health concerns. Again, the undisputed facts are clear – Plaintiff was not terminated because of any disability, but because he chose not to return to work in New York.

This leaves Plaintiff with his misrepresentation and promissory estoppel claims, all of which hinge on the theory that Plaintiff is entitled to future lost wages and benefits because he relied on an alleged promise that he could transfer to Boston and continue to work at C&W. However, as articulated in this Court's decision in *Treadwell v. John Hancock Mut. Life Ins.*, as an at-will employee Plaintiff cannot recover lost wages or benefits under a promissory estoppel or misrepresentation theory. Furthermore, all three claims fail because Plaintiff neither relied

nor did so reasonably. The undisputed facts are that Plaintiff's plans to move to Boston were in the works since at least the beginning of 2014. Plaintiff purchased a home in Massachusetts (with a Declaration of Homestead), and his New Jersey residence was under contract for sale, before any representation by C&W was ever made. The timing simply doesn't work. Plaintiff had every intention of moving to Boston to be nearer to his daughter regardless of whether C&W approved the transfer. Finally, evidence of other key elements of promissory estoppel and fraudulent misrepresentation (intent to induce and knowledge of falsity) are completely absent from the record. For all of these reasons, C&W is entitled to summary judgment.

**Undisputed Facts[2]**

Plaintiff is sixty-five years old.[3] He became employed by C&W in 1988, working in the information technology department.[4] By all accounts, Plaintiff was an excellent employee. During the entire twenty-eight years he worked at C&W, he reported to headquarters in New York City, where he had an office or cubicle and where his computer workstation was located.[5] By 2015, he was responsible for support of the financial systems – primarily, the commission system for payments to brokers for C&W offices nationwide and in Mexico.[6] His area of expertise was a specific computer system, the AS400, on which he worked for the majority of his time at C&W.[7] He worked with one other full time programmer, Anna Kleynshteyn.[8] They both were located at headquarters, and there were no other employees working on the AS400 system.[9]

---

[2] C&W sets forth this statement of facts solely for the purpose of summary judgment and makes no admission with respect to the facts contained herein. All facts contained herein are derived from C&W's L.R. 56.1 Concise Statement of Material Facts of Record as to Which There is no Genuine Issue to be Tried (the "Rule 56.1 Statement") filed herewith.
[3] Rule 56.1 Statement at ¶1.
[4] Rule 56.1 Statement at ¶2.
[5] Rule 56.1 Statement at ¶3.
[6] Rule 56.1 Statement at ¶3.
[7] Rule 56.1 Statement at ¶4.
[8] Rule 56.1 Statement at ¶4.
[9] Rule 56.1 Statement at ¶4.

Plaintiff's direct supervisor was Colin Reid.[10] Mr. Reid reported to Andrew Hamilton, who reported to Leif Maiorini, who in turn reported to Craig Cuyar, the Chief Information Officer for C&W globally.[11] Prior to March 2015, all of them reported to, and had offices in, C&W's headquarters in New York.[12] Plaintiff needed to be at the headquarters office because that is where the financial and accounting employees are located, and Plaintiff met, and communicated, with them regularly, sometimes as much as several times a week.[13] By Plaintiff's own admission, he was required to provide system support to this department in "high-data-activity times like month's closing, broker payroll," and his support was required "in a very limited time frame."[14] Plaintiff understood that at all times during his employment he was an employee at will and could be terminated at any time.[15] He further understood that nothing that was represented to him by Mr. Reid affected his at-will status.[16]

For the twenty-eight years prior to his move to Massachusetts, Plaintiff's primary residence was 3524 Gardenview Terrace, Fair Lawn, NJ (the "NJ Home"), twenty miles from C&W's headquarters.[17] By early 2014, however, Plaintiff and his wife decided to move to Boston to be closer to their daughter, Karina, and her family, and began looking to purchase property.[18] Plaintiff testified that everyone knew he intended to move to Boston for "***two decades***."[19] Karina lives in Winchester in a house originally purchased by Plaintiff, and has lived in the Boston area since she went to college in 1993 or 1994.[20] Plaintiff and his wife purchased

---

[10] Rule 56.1 Statement at ¶5.
[11] Rule 56.1 Statement at ¶5.
[12] Rule 56.1 Statement at ¶5.
[13] Rule 56.1 Statement at ¶6.
[14] Rule 56.1 Statement at ¶6.
[15] Rule 56.1 Statement at ¶7.
[16] Rule 56.1 Statement at ¶7.
[17] Rule 56.1 Statement at ¶8.
[18] Rule 56.1 Statement at ¶9.
[19] Rule 56.1 Statement at ¶9.
[20] Rule 56.1 Statement at ¶10.

the condominium at 7 Conant Road, Apt. 9, Winchester, MA (the "MA Condo") in December 2014, long before any transfer request was made by Plaintiff, for $400,000.[21]

The undisputed facts establish that the Rinskys intended to make the MA Condo their primary address from the outset. The Rinskys, who were represented by local counsel in connection with the purchase, executed a Declaration of Homestead, declaring under oath and before a notary that they owned the home "***and occupy or intend to occupy the house as my/our principal residence***."[22] After the purchase, the Rinskys did not immediately move into the MA Condo only because they were doing significant renovations – more than $30,000 – through at least April 2015.[23] They used "most" of the equity in the NJ Home to purchase the MA Condo and renovate it.[24] They never listed the MA Condo with a broker to seek a tenant fir the property, nor did they rent it out.[25] During this time, the Rinskys were paying mortgages on both properties.[26] Even before the work was done, the Rinskys listed the NJ Home for sale through a broker on MLS on March 29, 2015.[27]

Plaintiff claims that his first conversation with C&W regarding a transfer occurred at this time, in March 2015, when he spoke with his supervisor Colin Reid.[28] However, he concedes that Mr. Reid made no promises at this time, and that Mr. Reid told him that a sale would take at least six months, that he was really busy, and that they could talk about it another time.[29] Plaintiff, who had already made his decision to move to Massachusetts, informed Mr. Reid that

[21] Rule 56.1 Statement at ¶11.
[22] Rule 56.1 Statement at ¶11. Plaintiff did not check the "elderly" box on the Declaration of Homestead, despite being 63 years old at the time.
[23] Rule 56.1 Statement at ¶12.
[24] Rule 56.1 Statement at ¶13.
[25] Rule 56.1 Statement at ¶13.
[26] Rule 56.1 Statement at ¶13.
[27] Rule 56.1 Statement at ¶14.
[28] Rule 56.1 Statement at ¶15.
[29] Rule 56.1 Statement at ¶15.

he was putting the NJ Home on the market anyway.[30] Within days of putting the NJ Home on the market, they received a cash offer for $340,000, reflected in a purchase and sale agreement dated March 31, 2016.[31] Plaintiff received the offer from his broker on April 2, 2015.[32]

It was shortly thereafter that Plaintiff claims he had a second conversation with Mr. Reid, in which he informed him of the offer and telling him that ***they had decided to accept it***.[33] He claims he t Mr. Reid that he wanted to work in Boston once the sale went through and that Mr. Reid said that he was "okay with it," that "it's not just me, I need to talk to my boss [Hamilton]" and that "it's too fast, it's too fast."[34] Mr. Reid made clear that he would need to obtain approvals, and made a joke about how long it took him to get approved for his own transfer to the Miami office of C&W, saying "it took me ten years."[35] Plaintiff's response was "okay, let me know."[36] When Plaintiff followed up with Mr. Reid in the middle of April, he still had no answer regarding the transfer.[37]

Undeterred, the Rinskys moved forward with the sale. By April 3, 2015, Plaintiff knew he was going to accept the offer and had hired an attorney to represent him and his wife in the transaction.[38] Agreement was prior to April 14, 2015, when a home inspection took place.[39] It was only after this had occurred that Plaintiff had the conversation with Mr. Reid in which he claims that Mr. Reid told him that Mr. Hamilton had no problem with the transfer.[40] Plaintiff could not say that Mr. Reid knew at the time that the statement was inaccurate, and admitted that

---

[30] Rule 56.1 Statement at ¶15.
[31] Rule 56.1 Statement at ¶16.
[32] Rule 56.1 Statement at ¶16.
[33] Rule 56.1 Statement at ¶17.
[34] Rule 56.1 Statement at ¶17.
[35] Rule 56.1 Statement at ¶17.
[36] Rule 56.1 Statement at ¶17.
[37] Rule 56.1 Statement at ¶18.
[38] Rule 56.1 Statement at ¶19.
[39] Rule 56.1 Statement at ¶19.
[40] Rule 56.1 Statement at ¶20.

he had no evidence of knowledge on the part of Mr. Reid or Mr. Hamilton – just an inference from subsequent events.[41] During this conversation, Mr. Reid told Plaintiff that Mr. Cuyar was travelling and busy with the pending merger.[42] Plaintiff concedes that the NJ Home was on the market and under agreement before Mr. Reid made the alleged statements regarding transfer.[43]

On Sunday, May 17, 2015, Plaintiff found out the closing date and emailed Mr. Reid, telling him that he was moving to Boston on May 27, 2015 and would need to take four personal days after Memorial Day.[44] Plaintiff stated that he was confident that he could work remotely, and that he looked "forward to sitting down with you and coming up with an arrangement that benefits all involved."[45] ***Just four days earlier,*** Mr. Reid told plaintiff that the ability of both Plaintiff and Ms. Kleynshteyn to telecommute was ***"being revoked for both of you effective next week,"*** a directive that did not change prior to May 27, 2015.[46] At this point, Plaintiff admits that none of the details of a transfer had been determined, such as the number of days he would have to be in New York, who would pay for travel, how he would support the AS400 from Boston, the logistics of office space and a computer station, and the hours he would need to be available.[47] Mr. Reid's response to this email was to say "Okay. We will talk on Tuesday."[48] The sale of the NJ Home closed on May 25, 2015.[49] The Rinskys did not attempt to rent in the New York area, nor did they include a leaseback provision as part of the sale of the NJ Home.[50]

Plaintiff worked remotely from Boston from the time he moved until June 22, 2015,

---

[41] Rule 56.1 Statement at ¶20.
[42] Rule 56.1 Statement at ¶20.
[43] Rule 56.1 Statement at ¶21.
[44] Rule 56.1 Statement at ¶22.
[45] Rule 56.1 Statement at ¶22.
[46] Rule 56.1 Statement at ¶23.
[47] Rule 56.1 Statement at ¶24.
[48] Rule 56.1 Statement at ¶25.
[49] Rule 56.1 Statement at ¶26.
[50] Rule 56.1 Statement at ¶26.

receiving his regular salary through July 10, 2015.[51] By June 22, the decision was made that Plaintiff needed to be in the New York headquarters on a daily basis, and this message was relayed to Plaintiff during a call with Mr. Reid, Mr. Hamilton and Katrina Hicks from Human Resources.[52] Plaintiff was given the option to return to New York or resign.[53] Plaintiff declined to resign, but he did not return to New York headquarters.[54] As a result, in a letter dated July 14, 2015, Plaintiff was notified that he was terminated for job abandonment effective July 10, 2015[55]

Plaintiff's discrimination claims are based solely on events in 2009 and 2013 that are solely related to his health, and not age.[56] Plaintiff has a history of lymphoma, having had chemotherapy in 2009.[57] He also broke his arm in 2009, and continued to work despite being told to take time off.[58] Plaintiff was out in 2013 for nine-plus weeks when he was diagnosed with pneumonia, had further chemotherapy for the lymphoma, and was out with hypertension.[59] On each occasion he was able to take time off and his employment remained the same before and after his treatment.[60] Plaintiff never asked for any accommodation – in his own words "I didn't have disability. I was able to work."[61] Other than these events, Plaintiff admits that there is "no other basis of discrimination" that he alleges against C&W.[62]

Mr. Reid was the only person at C&W that Plaintiff told about his medical condition.[63] Mr. Reid was "never" negative about his health issues and "was always nice about it."[64] For

---

[51] Rule 56.1 Statement at ¶27.
[52] Rule 56.1 Statement at ¶28.
[53] Rule 56.1 Statement at ¶28.
[54] Rule 56.1 Statement at ¶28.
[55] Rule 56.1 Statement at ¶29.
[56] Rule 56.1 Statement at ¶30.
[57] Rule 56.1 Statement at ¶31.
[58] Rule 56.1 Statement at ¶31.
[59] Rule 56.1 Statement at ¶31.
[60] Rule 56.1 Statement at ¶31.
[61] Rule 56.1 Statement at ¶32.
[62] Rule 56.1 Statement at ¶32.
[63] Rule 56.1 Statement at ¶33.
[64] Rule 56.1 Statement at ¶33.

example, during the second conversation with Mr. Reid regarding the transfer, Mr. Reid was happy that Plaintiff's issues had nothing to do with his health.[65] In conversations regarding the requested transfer, Plaintiff admits that Mr. Reid made no comments regarding his health.[66] There was no mention of his health during the June 22, 2015 call in which he was given the option to return to New York or resign.[67] In the words of Plaintiff, the decision to move to Boston had "nothing to do with [his] health."[68] Likewise, no one at C&W ever mentioned Plaintiff's age in 2015 or in connection with the transfer request.[69] During discussions about his transfer request, Plaintiff admits that Mr. Reid, who is only a couple of years younger than Plaintiff, made no comments about Plaintiff's age.[70] There was no mention of age during the June 22, 2015 call in which he was given the option to return to New York or resign.[71] C&W did not replace Plaintiff with a full time employee, but instead assigned his programming tasks to a consultant, Edgardo Felix, who Plaintiff believed to be approximately 50 years old.[72]

In Plaintiff's Answers to First Set of Interrogatories from C&W, he stated that although certain comments concerning his age and/or health condition were made during the course of his employment with C&W, "the only adverse employment action that I am claiming in this lawsuit is my termination."[73] Plaintiff also stated in his Supplemental Answers to Interrogatories that the only damages that he was seeking in this lawsuit are lost pay and benefits, emotional distress, and liquidated/punitive damages and attorneys' fees (for the discrimination claims).[74]

---

[65] Rule 56.1 Statement at ¶33.
[66] Rule 56.1 Statement at ¶34.
[67] Rule 56.1 Statement at ¶34.
[68] Rule 56.1 Statement at ¶34.
[69] Rule 56.1 Statement at ¶35.
[70] Rule 56.1 Statement at ¶35.
[71] Rule 56.1 Statement at ¶35.
[72] Rule 56.1 Statement at ¶36.
[73] Rule 56.1 Statement at ¶37.
[74] Rule 56.1 Statement at ¶38.

## **Argument**[75]

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *See id*. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (internal citations omitted).

Here, Plaintiff has failed to present sufficient evidence in his favor to allow a jury to return a verdict on any of his five claims against C&W. There is simply no evidence that C&W discriminated against Plaintiff on the basis of age or disability – the dispute here that led to termination of his employment was about whether he could transfer to Boston. Moreover, this dispute does not give rise to claims for promissory estoppel or misrepresentation, as Plaintiff was

---

[75] Plaintiff has chosen to pursue his claims under Massachusetts law by: (1) filing a claim with the Massachusetts Commission Against Discrimination; (2) asserting claims under Massachusetts discrimination statutes; and (3) by relying on Massachusetts law in opposing C&W's notice of intend to file a dispositive motion. C&W believes that a choice of law analysis would dictate that New York law, rather than Massachusetts, would apply based on the facts here. *See*, *e.g.*, *Krause v. UPS Supply Chain Solutions, Inc.*, 2009 WL 3578601, *5 (D. Mass., Oct. 28, 2009) (Woodlock, J.) (choice of law analysis for discrimination claims); *Levin v. Dalva Bros., Inc.*, 459 F. 3d 68 (2006) (choice of law analysis for intentional and negligent misrepresentation). However, for the limited purpose of this summary judgment motion, C&W applies the substantive law of Massachusetts. In the event that Plaintiff's claims survive summary judgment, C&W reserves its right to argue that the applicable law is that of New York.

an employee at will and thus cannot recover future lost wages and benefits as damages for those claims. Finally, there is no evidence to prove several key elements of the promissory estoppel and misrepresentation claims – in particular the key element of reliance. For these reasons, judgment should enter in favor or C&W on all five counts of Plaintiff's Complaint.

## I. THERE IS NO EVIDENCE TO SUPPORT PLAINTIFF'S CLAIM THAT C&W DISCRIMINATED AGAINST HIM BASED ON HIS AGE

Plaintiff has no evidence to prove his claim of age discrimination under M.G.L. c. 151B. Indeed, the only fact upon which Plaintiff relies is that he was 63 years old at the time that he was terminated. M.G.L. c. 151B contains "four elements an employee must prove to prevail on a claim of discrimination in employment: membership in a protected class, harm, discriminatory animus, and causation." *Sullivan v. Liberty Mut. Ins. Co.*, 444 Mass. 34, 38 (2005) (summary judgment for employer affirmed). Because the first two elements are rarely disputed and the latter two element are rarely supported by direct evidence, "a plaintiff may therefore establish one or both by indirect or circumstantial evidence using the familiar three-stage, burden-shifting paradigm first set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805 (1973)." *Id*. at 39-40. This test "does not circumvent the plaintiff's burden to prove all the essential elements of a discrimination claim but does permit the jury to infer discriminatory animus and causation from proof that an employer has advanced a false reason for the adverse employment decision." *Id*. at 40. Here, application of the *McDonnell Douglas* test reveals no indirect or circumstantial evidence from which a jury could infer discriminatory animus.

Generally, a plaintiff who is terminated establishes a prima facie case of discrimination by producing evidence that he is a member of a class protected by G.L. c. 151B, he performed his job at an acceptable level, he was terminated, and his employer sought to fill his position by hiring another individual with qualifications similar to his. *See, e.g., id.* at 41. C&W does not

dispute that Plaintiff was in a protected class (age), that he was performing his job at an acceptable level, or that he was ultimately terminated. However, Plaintiff fails to meet the fourth element, as he was not replaced by the hiring of another individual. Instead, certain of his job duties were assigned to a contractor, Edgardo Felix. Moreover, "the fact that a person over forty, who is performing adequately, is terminated and replaced by someone who is younger, but insignificantly so, by itself permits no inference that age was a determining factor in the plaintiff's termination." *Knight v. Avon Prod., Inc.*, 438 Mass. 413, 423 (2003*); see also Saposnik v. Babcock Borsig Power, Inc.*, 2005 WL 2009507, at *6 (Mass. Super. Ct., July 15, 2005) (O'Connor, J.) (older ages of employees within department can negate inference). By Plaintiff's admission Mr. Reid was in his sixties and he believed Mr. Felix to be fifty years old.

In any event, even if Plaintiff could establish a prima facie case, that merely shifts the burden to C&W. C&W can meet its burden by "articulating a lawful reason or reasons for its employment decision and producing credible evidence to show that the reason or reasons advanced were the real reasons." *Sullivan*, 444 Mass. at 50. C&W's burden at this stage "is one of production and not persuasion" – it "need not prove that the reasons were nondiscriminatory." *Id*. at 51. C&W meets this burden. The record is clear that C&W believed that Plaintiff was required in New York headquarters, as that is where the people whom Plaintiff supported were located. Plaintiff admits that Mr. Hamilton told him that they ***wanted*** him to return to his job in New York. C&W management had no interest in terminating Plaintiff, as they believed him to be a good employee, but he forced their hand. The stated and sole reason for the termination of Plaintiff's employment was job abandonment – Plaintiff refused to return to his position.

Having succeeded "in carrying its burden of production, the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant." *Id*. at 54. "The

presumption of discrimination disappears" and the "burden returns to [Plaintiff] to establish that the basis of [C&W]'s decision was unlawful discrimination by adducing evidence that the reasons given by [C&W] for its actions were mere pretexts to hide such discrimination." *Id*. at 54-55. "This may be accomplished by showing that the reasons advanced by [C&W] for making the adverse decision are not true." *Id.* at 55. In *Sullivan*, evidence of a disproportionate impact on older employees in a firm-wide layoff, allegedly ageist remarks[76] and reassignment of work to younger employees helped establish a prima facie case, but was insufficient to rebut the employer's stated reasons and fend off summary judgment. *Id*. at 55; *see also Knight*, 438 Mass. at 426 (jury verdict for employee overturned and judgment entered for employer where there was no evidence that the basis for termination was plaintiff's age). Here, Plaintiff doesn't have evidence of discriminatory animus, let alone evidence that any such animus caused an adverse employment decision – all he can point to is the mere fact of his age.[77] As was the case in *Sullivan*, Plaintiff's "proof is insufficient, as a matter of law, to show that, when [he] was terminated, [C&W] had a discriminatory intent, motive, or state of mind based on [his] age … and that any such animus was a material and important ingredient in the discharge." *Sullivan*, 444 Mass. at 57. C&W is entitled to judgment as a matter of law on Count I of the Complaint.

## II. THERE IS NO EVIDENCE TO SUPPORT PLAINTIFF'S CLAIM THAT C&W DISCRIMINATED AGAINST HIM BASED ON ANY DISABILITY

Plaintiff also has not presented sufficient evidence to establish a claim of disability discrimination under M.G.L. c. 151B. In support of this claim, Plaintiff points only to C&W's knowledge of his lymphoma and two statements he attributes to Mr. Reid: (1) a statement in 2013 after lymphoma treatment that C&W "would not keep him employed if he took more time

[76] For example, employees were told that they were "stuck in the old ways" and "part of the old guard" was insufficient to establish causation. *Sullivan*, 44 Mass. at 49, n. 24.
[77] His immediate superior, Colin Reid, remains with C&W and is only a few years younger than Plaintiff.

off for something similar soon"; and (2) Mr. Reid's expression of relief in April 2015 that Plaintiff's reason for needing to talk to him was not to discuss further health problems.

This claim fails for a number of reasons. "To establish a violation of G.L. c. 151B, § 4(16), proof is required that (1) the plaintiff is handicapped within the meaning of the statute; (2) the plaintiff is a 'qualified handicapped person' (meaning that, notwithstanding the handicap, the plaintiff can perform the essential functions of the job, either [a] without accommodation, or [b] with a reasonable accommodation provided by the employer, subject to the statutory qualification that the accommodation not pose an undue hardship upon the employer); and (3) the handicap was the cause of the allegedly unlawful discriminatory action." *Cargill v. Harvard Univ.*, 60 Mass. App. Ct. 585, 586 (2004). Plaintiff is also required to present credible evidence that "the position he had occupied remained open and the employer sought to fill it." *City of New Bedford v. Massachusetts Commission Against Discrimination*, 440 Mass. 450, 463 (2003).

In the first instance, Plaintiff's claim under M.G.L. §4(16) is not one based on an allegation of a failure to make reasonable accommodation for his medical condition (prong two). *See*, *e.g.*, *Alba v. Raytheon Co.*, 441 Mass. 836, 843 n.9 (2004). Plaintiff expressly denies that his request to transfer to Boston was a request for an accommodation – in his words, the decision to move to Boston had "nothing to do with [his] health." His consistently stated motive for moving to Boston was to be closer to his daughter and her family.

Furthermore, Plaintiff cannot establish a prima facie case of discrimination based on disability. By his own admission, Plaintiff does not fall within the definition of the class of persons protected by this section of the statute (prong one). "Not all physical or mental impairments constitute a "handicap" under the Massachusetts antidiscrimination statute." *New Bedford*, 440 Mass. at 462. "The term 'handicap' means (a) a physical or mental impairment

which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment…." M.G.L. c. 151B, § 1; *see also New Bedford*, 440 Mass. at 463. "Under this framework, it is insufficient to merely submit evidence of a medical diagnosis of an impairment, rather, those seeking G.L. c. 151B protection must offer evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial." *Id.* "An impairment substantially limits an individual's ability to work if it prevents or significantly restricts the individual from performing a class of jobs or a broad range of jobs in various classes." *Id*. at 464. There is no evidence here that Plaintiff's lymphoma substantially limited his ability to perform his work – his last treatment for cancer was in 2013. In his own words: "I didn't have disability. I was able to work."

Likewise, Plaintiff cannot offer any evidence to prove that his lymphoma was the cause of any discriminatory action. As discussed above, C&W's reason for denying the transfer and ultimately terminating Plaintiff was his refusal to return to New York headquarters to perform his work. The only mention of Plaintiff's health in all of the discussions regarding the transfer request and termination of Plaintiff was a passing comment by Mr. Reid that he was glad that Plaintiff didn't need to speak with him because of health reasons. There was no discriminatory animus where Plaintiff concedes that Mr. Reid was "never" negative about Plaintiff's health issues and "was always nice about it." As there is no evidence that Plaintiff's health played any role in the refusal to allow the transfer or the ultimate termination of Plaintiff, C&W is entitled to judgment as a matter of law on Count II of the Complaint.

## III. THE PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE CLAIM FAILS AS A MATTER OF LAW

In Count III of Plaintiff's seeks to recover for promissory estoppel based on his allegation that he detrimentally relied upon statements of Mr. Reid and Mr. Hamilton that he could transfer

to Boston and continue to work there. The elements of a promissory estoppel claim include: 1) a representation intended to induce a course of conduct on the part of the person to whom the representation is made; 2) reasonable reliance upon the representations by that party and, 3) detriment to that party as a result of the reliance. *Hall v. Horizon House Microwave, Inc*., 24 Mass. App. Ct. 84, 93-94 (1987). Here, Plaintiff's promissory estoppel claim fails for three distinct reasons: (1) the lost wages and benefits sought by Plaintiff are not recoverable under a promissory estoppel claim; (2) there is no evidence of reasonable reliance; and (3) there is no evidence that the alleged representations were intended to induce Plaintiff to move to Boston.

### A. Promissory Estoppel Cannot Alter Plaintiff's Status As An Employee At Will And Create An Employment Contract Where None Existed, And As A Result, Plaintiff Has No Recoverable Damages

Promissory estoppel is not an appropriate claim in these circumstances. As set forth in the answers to interrogatories, the damages that Plaintiff seeks to recover under his non-statutory claims are limited to lost wages and benefits for the period of time between his termination and his intended retirement. These damages are not available to an employee at will, under either a promissory estoppel or misrepresentation theory of liability.

In the absence of a representation of employment for a specific period, a promise does not alter Plaintiff's status as an employee at will. *See Treadwell v. John Hancock Mut. Life Ins. Co.*, 666 F. Supp. 278, 286 (1987) (citing *McCone v. New England Telephone and Telegraph Co.,* 393 Mass. 231, 233 n. 6 (1984)). As this Court held in *Treadwell*, "[t]he promise of secure and continued employment is simply too vague to be enforceable under the doctrine of promissory estoppel and thereby transform the nature of plaintiff's employment from at-will to employment for an indefinite period." *Id* at 287. In general, an at-will employee can "be terminated at any time for any reason or for no reason at all." *Gram v. Liberty Mut. Ins. Co.*, 384

Mass. 659, 669 n.6 (1981). Thus, "[a]n employee at will is not entitled to benefits as damages which 'he neither contemplated or included in his contract,' and which are unrelated to past services." *Treadwell*, 666 F. Supp. at 287 (quoting *Maddaloni v. Western Mass. Bus Lines, Inc.,* 386 Mass. 877, 884 (1982)). "In addition, damages generally may not be awarded for lost wages if the employment is terminable at will." *Id.* (citing *Kravetz v. Merchants Distributors, Inc.,* 387 Mass. 457, 463 (1982)). "Because the plaintiff had no expectation of continued employment, [he] cannot as matter of law establish any damages traceable to [his] termination." *Furlonge v. Boston Med. Ctr.*, 2016 WL 70450, at *5 (D. Mass., Jan. 6, 2016) (Saylor, J.); *Fitzgerald v. Queen Anne Nursing Home, Inc.*, 61 Mass. App. Ct. 1103, at *1 (2004) (Rule 1:28).

Plaintiff's promissory estoppel claim is even more tenuous than that in *Treadwell*. Rather than any promise of continued employment, his claim for lost future wages and benefits is based solely on an alleged promise that he could transfer to Boston. *See*, *e.g.*, *Tinkham v. Jenny Craig, Inc.*, 45 Mass. App. Ct. 567, 570-71 (1998) (summary judgment appropriate where promissory estoppel and misrepresentation claims were based on an "illusory" promise to promote). He admits that he knew he was an employee at will and could be terminated at any time. Even if C&W had approved a transfer, there was nothing preventing C&W from terminating Plaintiff's employment the very next day, for "any reason or no reason at all." For these reasons, C&W is entitled to judgment as a matter of law on Count III of Plaintiff's Complaint.

**B. Plaintiff Did Not Rely On Any Statements Of C&W, As The Decision To Move Was Made Before The Alleged Statements Were Made, And To The Extent That Plaintiff Relied, Such Reliance Was Not Reasonable As A Matter Of Law**

The promissory estoppel claim also fails because there is no evidence of reliance. *Hall*, 24 Mass. App. Ct. at 93-94. The timeline of events established by Plaintiff's testimony reveals that Plaintiff did not rely on any promise on the part of C&W in making his decision to move to

Boston. Plaintiff's reason for moving to Boston was to be nearer to his daughter and her family. He testified that everyone knew that they intended to move to Boston for "two decades" and that he started looking for a home in beginning of 2014 – ***sixteen months*** before the alleged promise in April 2015 that he could transfer to Boston. Plaintiff purchased the MA Condo in December 2014, months before C&W knew that he was moving or wished to transfer. Upon purchasing the MA Condo, with the advice of counsel, he signed a Homestead Declaration naming it his primary residence. Plaintiff put the NJ Home on the market on March 29, 2015, accepted an offer and hired an attorney by April 3, 2015, and agreed to sell it by April 14, 2015.[78]

It was only after all of this had occurred that Plaintiff alleges that he was promised he could move to Boston. The only reasonable conclusion to be drawn from this undisputed evidence is that Plaintiff, who was close to retirement and wanted to be closer to family, intended to move to Boston regardless of whether C&W would allow him to transfer there for work. Moreover, even if there was any basis to conclude that Plaintiff relied on the alleged promises, such reliance was not reasonable as a matter of law. Plaintiff knew he was an employee at will – he could not reasonably rely on continued employment. Just prior to the move, he and his co-worker Anna Kleynshteyn were told by Mr. Reid that they could no longer telecommute, and would need to work from New York headquarters. It was not reasonable for Plaintiff to rely on an alleged promise that he could work from Boston in the face of a directive that he couldn't even work from his New Jersey home. For these reasons, C&W is entitled to summary judgment on Count III.

### C. There Is No Evidence That Any Statements Made By C&W Employees Were Intended To Induce Plaintiff To Move To Boston

Another crucial element of the promissory estoppel claim is that the promise or

---

[78] Rule 56.1 Statement at ¶¶14, 19.

representation be intended to induce a course of conduct by Plaintiff – here to move to Boston. *Hall*, 24 Mass. App. Ct. at 93-94. There is no such evidence here – the undisputed evidence is that C&W wanted Plaintiff to work out of the New York headquarters. His failure to return to New York was the reason he was ultimately terminated. It is counterintuitive to believe that Mr. Reid or Mr. Hamilton would make these statements "for the purpose of inducing" Plaintiff to move to Boston – neither individual nor C&W stood to gain from the transfer. For this reason, C&W is entitled to summary judgment on Count III

## IV. THERE IS INSUFFICIENT EVIDENCE TO PROVE KEY ELEMENTS OF THE MISREPRESENTATION CLAIMS

Plaintiff's fraudulent and negligent misrepresentation claims are largely redundant to the claim for promissory estoppel, as all three are based on the same core facts, have overlapping elements and seek the same damages. Whereas Plaintiff's promissory estoppel claim seeks to enforce the alleged representations in contract, the misrepresentation claims seek damages for those representations in tort. Either way the claims are pled, they fail as a matter of law.

"To recover for fraudulent misrepresentation, a plaintiff must allege and prove that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to [his] damage." *Masingill v. EMC Corp.*, 449 Mass. 532, 540 (2007) [emphasis added]. "Such reliance by the plaintiff must be reasonable." *Id*. citing *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.,* 438 Mass. 459, 467, 781 N.E.2d 787 (2003). "In order to recover for negligent misrepresentation a plaintiff must prove that the defendant (1) in the course of his business, (2) supplies false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise

reasonable care or competence in obtaining or communicating the information." *Nota Const. Corp. v. Keyes Assocs., Inc.*, 45 Mass. App. Ct. 15, 19-20 (1998).

As discussed in the foregoing section, there is no evidence here of two elements that one or both of the misrepresentation claims share with promissory estoppel - reasonable reliance and (in the case of fraudulent misrepresentation) intent to induce Plaintiff to act. *See Masingill*, 449 Mass at 540; *Nota Const.*, 45 Mass. App. Ct. at 19-20. Furthermore, the fact that no damages for lost wages and benefits will be awarded if the employment is terminable at will is fatal to the misrepresentation claims as well. *See Treadwell*, 666 F. Supp. at 286 (dismissing deceit count for representation that plaintiff would "have secure and continued employment with defendant").

There is an additional basis for summary judgment on Plaintiff's fraudulent misrepresentation claim – the Plaintiff failed to present any evidence of fraud on the part of C&W. Under *Masingill*, Plaintiff must allege and prove that the person making the representation did so "with knowledge of its falsity." 449 Mass at 540. Here, there is no evidence that that any representation of Mr. Reid or Mr. Hamilton regarding Plaintiff's ability to transfer to Boston was made with knowledge of its falsity. Plaintiff concedes that he had no reason to believe that they had such knowledge at the time other than the inference he drew from what would later occur – in his own words, "what happened is the evidence."[79] When asked if it was his testimony that Mr. Reid knew at the time that he said something to him that was not accurate, he responded "I cannot say that." Because Plaintiff cannot provide any evidence that C&W had knowledge of the falsity of any representation, C&W is entitled to judgment as a matter of law on Count IV.

---

[79] Rule 56.1 Statement at ¶20.

## Conclusion

For all for the reasons set forth herein, C&W respectfully requests that this Honorable Court grant its motion for summary judgment, enter judgment dismissing all counts of Plaintiff's Complaint, and grant such other and further relief as it deems just and proper.

Dated: March 13, 2017

Respectfully Submitted,
**CUSHMAN & WAKEFIELD, INC.**
By its attorneys,

/s/Edward F. Whitesell, Jr.

Robert R. Berluti, Esq. (BBO# 039960)
Edward F. Whitesell, Jr., Esq. (BBO# 644331)
**BERLUTI MCLAUGHLIN & KUTCHIN LLP**
44 School Street, 9th Floor
Boston, MA 02108
Phone: 617-557-3030
Fax: 617-557-2939
rberluti@bmklegal.com
ewhitesell@bmklegal.com

## Certificate of Service

I, Edward F. Whitesell, Jr., hereby certify that on March 13, 2017, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/Edward F. Whitesell, Jr.