**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| YURY RINSKY,<br><br>Plaintiff,<br><br>v.<br><br>CUSHMAN & WAKEFIELD, INC.<br><br>Defendant. | ) | C.A. No. 16-10403 |

**DEFENDANT CUSHMAN & WAKEFIELD, INC.'S LOCAL RULE 56.1 CONCISE STATEMENT OF MATERIAL FACTS OF RECORD AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

Defendant Cushman & Wakefield, Inc. ("C&W") hereby submits, pursuant to Local Rule 56.1, this Concise Statement of Material Facts of Record as to Which There is no Genuine Issue to be Tried in support of its Motion for Summary Judgment on all counts of Plaintiff's Complaint.

1. Plaintiff is sixty-five years old. *See* Transcript of Deposition of Yury Rinsky dated March 1, 2017 ("**Rinsky Dep.**"), true and correct copies of excerpts of which were filed herewith as **Exhibit A, at 5:7.**

2. Plaintiff became employed by C&W in 1988, working in the information technology department. Plaintiff was an excellent employee. **Rinsky Dep. at 7:20-21, 8:20-9:8.**

3. During the entire twenty-eight years Plaintiff worked at C&W, he reported to headquarters in New York City, where he had an office or cubicle and where his computer workstation was located. By 2015, he was responsible for support of the financial systems – primarily, the commission system for payments to brokers for C&W offices nationwide and in Mexico. **Rinsky Dep. at 11:13-24, 12:9-14, 16:10-13.**

4. His area of expertise was a specific computer system, the AS400, on which he worked for the majority of his time at C&W. He worked with one other full time programmer, Anna Kleynshteyn. They both were located at headquarters, and there were no other employees working on the AS400 system. **Rinsky Dep. at 13:5-8, 13:20-22, 16:7-9, 17:21-22, 194:23-195:8.**

5. Plaintiff's direct supervisor was Colin Reid. Mr. Reid reported to Andrew Hamilton, who reported to Leif Maiorini, who in turn reported to Craig Cuyar, the Chief Information Officer for C&W globally. Prior to March 2015, all of them reported to, and had offices in, C&W's headquarters in New York. **Rinsky Dep. at 14:3-5, 14:21-15:17, 14:21-16:6.**

6. The financial and accounting employees supported by Plaintiff are located at the New York headquarters, and Plaintiff met, and communicated, with them regularly, sometimes as much as several times a week. By Plaintiff's own admission, he was required to provide system support to this department in "high-data-activity times like month's closing, broker payroll," and his support was required "in a very limited time frame." **Rinsky Dep. at 12:18-13:4, 16:24-17:11, 99:19-100:6.**

7. Plaintiff understood that at all times during his employment he was an employee at will and could be terminated at any time. He further understood that nothing that was represented to him by Mr. Reid affected his at-will status. **Rinsky Dep. at 85:21-86:8, 105:6-12.**

8. For the twenty-eight years prior to his move to Massachusetts, Plaintiff's primary residence was 3524 Gardenview Terrace, Fair Lawn, NJ (the "NJ Home"), twenty miles from C&W's headquarters. **Rinsky Dep. at 5:20-21.**

9. At some point in late 2013 or early 2014, Plaintiff and his wife decided to move

to Boston to be closer to their daughter, Karina, and her family, and began looking to purchase property. Plaintiff testified that everyone knew he was going to move to Boston for "***two decades***." **Rinsky Dep. at 29:4-29:9, 30:1-30:6, 88:7-18, 88:13-14.**

10. Karina lives in Winchester in a house originally purchased by Plaintiff, and has lived in the Boston area since she went to college in 1993 or 1994. **Rinsky Dep. at 6:9-14**; *see also* Quitclaim Deed recorded July 12, 2012 (Rinsky Dep. Ex. 3), a true and correct copy of which was filed herewith as **Exhibit B**.

11. Plaintiff and his wife purchased the condominium at 7 Conant Road, Apt. 9, Winchester, MA (the "MA Condo") in December 2014 for $400,000. The Rinskys, who were represented by local counsel in connection with the purchase, executed a Declaration of Homestead, declaring under oath and before a notary that they owned the home "and occupy or intend to occupy the house as my/our principal residence." **Rinsky Dep. at 5:11-12, 36:11-12, 36:21-23, 37:20-38-13, 39:6-11;** *see also* Fiduciary Deed recorded December 19, 2014 (Rinsky Dep. Ex. 4), a true and correct copy of which was filed herewith as **Exhibit C**; Declaration of Homestead dated December 18, 2014 (Rinsky Dep. Ex. 5), a true and correct copy of which was filed herewith as **Exhibit D**.

12. After the purchase, the Rinskys did not immediately move into the MA Condo. They were doing significant renovations – more than $30,000 – through at least April 2015. **Rinsky Dep. at 30:23-31:21, 33:7-14.**

13. The Rinskys used "most" of the equity in the NJ Home to purchase the MA Condo and renovate it. They never listed the MA Condo with a broker to seek a tenant for the property, nor did they rent it out. During this time, the Rinskys were paying mortgages on both properties. **Rinsky Dep. at 31:13-19, 33:22-34:2, 34:20-22, 35:2-6.**

14. The Rinskys listed the NJ Home for sale through a broker on MLS on March 29, 2015. **Rinsky Dep. at 40:16-24, 41:22-42:10, 76:1-4;** *see also* email correspondence from Michael Salman to Yury Rinsky dated February 16, 2017 (Rinsky Dep. Ex. 10), a true and correct copy of which was filed herewith as **Exhibit E**.

15. Plaintiff claims that his first conversation with C&W regarding a potential transfer occurred in March 2015, when he spoke with his supervisor Colin Reid. Plaintiff concedes that Mr. Reid made no promises at this time, and that Mr. Reid told him that the sale would take at least six months, that he was really busy, and that they could talk about it another time. Plaintiff had already made his decision to move to Massachusetts and informed Mr. Reid that he was putting the NJ Home on the market anyway. **Rinsky Dep. at 44:8-14, 45:9-18, 45:19-46:6.**

16. The Rinskys received a cash offer for $340,000, reflected in a purchase and sale agreement dated March 31, 2016. Plaintiff received this offer from his broker on April 2, 2015. **Rinsky Dep. at 61:19-20, 64:1-66:9**; Contract of the Sale of Real Estate dated March 31, 2016 (Rinsky Dep. Ex. 6), a true and correct copy of which was filed herewith as **Exhibit F**.

17. Shortly thereafter that Plaintiff testified that he had a second conversation with Mr. Reid, in which he informed him of the offer and telling him that they had decided to accept it. He further testified that he informed Mr. Reid that he wanted to work in Boston once the sale went through and that Mr. Reid said that he was "okay with it," that "it's not just me, I need to talk to my boss [Hamilton]" and that "it's too fast, it's too fast." Mr. Reid stated that he would need to obtain approvals, and made a joke about how long it took him to get approved for his own transfer to the Miami office, saying "it took me ten years." Plaintiff's response was "okay, let me know." **Rinsky Dep. at 49:14-16; 50:18-20, 51:1-6, 51:7-23, 54:15-21, 55:11, 56:11-17,**

**57:21-59:3.**

18. When Plaintiff followed up with Mr. Reid in the middle of April, Mr. Reid still had no answer regarding the transfer. **Rinsky Dep. at 60:3-17.**

19. By April 3, 2015, Plaintiff knew he was going to accept the offer and had hired an attorney to represent him and his wife in the transaction. Agreement was reached by April 14, 2015, when a home inspection took place. **Rinsky Dep. at 62:19-63:11, 67:20-22, 71:1-4, 72:2-20**; *see also* series of correspondence reflecting the hiring of Attorney Banks (included in Rinsky Dep. Ex. 8 at YR-72-78), true and correct copies of which were filed herewith as **Exhibit G**; Inspection Agreement for inspection dated April 14, 2015 (included in Rinsky Dep. Ex. 8 at YR-91), a true and correct copy of which was filed herewith as **Exhibit H**.

20. After these events, Plaintiff had the conversation with Mr. Reid in which he claims that Mr. Reid told him that Mr. Hamilton had no problem with the transfer. Plaintiff could not say that Mr. Reid knew at the time that the representation was inaccurate, and he admitted that he had no evidence of such knowledge on the part of Mr. Reid or Mr. Hamilton – just an inference from subsequent events – in his own words, "what happened is the evidence." During this conversation, Mr. Reid told Plaintiff that Mr. Cuyar was travelling and busy with the pending merger. **Rinsky Dep. at 78:7-24, 79:2-4, 187:21-189:4.**

21. Plaintiff concedes that the NJ Home was on the market and under agreement before Mr. Reid made the alleged statements regarding transfer. **Rinsky Dep. at 151:14-152:9.**

22. On Sunday, May 17, 2015, Plaintiff found out the closing date and emailed Mr. Reid, telling him that he was moving to Boston on May 27, 2015 and would need to take four personal days after Memorial Day. Plaintiff stated that he was confident that he could work remotely, and that he looked "forward to sitting down with you and coming up with an

arrangement that benefits all involved." *See* email correspondence between Plaintiff and Mr. Reid dated May 17, 2015 (Rinsky Dep. Ex. 11), a true and correct copy of which was filed herewith at **Exhibit I**.

23. On May 13, 2015, Mr. Reid told plaintiff that the ability of both Plaintiff and Ms. Kleynshteyn to telecommute was "being revoked for both of you effective next week," a directive that did not change prior to May 27, 2015. **Rinsky Dep. at 108:4-12, 109:11-22**; *see also* email correspondence between Mr. Reid and Plaintiff dated May 13, 2015 (Rinsky Dep. Ex. 12), a true and correct copy of which was filed herewith as **Exhibit J**.

24. As of the May 17, 2015 email, Plaintiff admits that none of the details of a transfer had been determined, including the number of days he would have to be in New York, who would pay for travel, how he would support the AS400 from Boston, the logistics of office space and a computer station, and the hours he would need to be available. **Rinsky Dep. at 90:23-91:13, 95:9-15, 101:11-102:13.**

25. Mr. Reid's response to the May 17, 2015 email was to say "Okay. We will talk on Tuesday." *See* email correspondence between Mr. Reid and Plaintiff dated May 18, 2015 (Rinsky Dep. Ex. 13), a true and correct copy of which was filed herewith as **Exhibit K**.

26. The sale of the NJ Home ultimately closed on May 25, 2015. The Rinskys did not attempt to rent in the New York area, nor did they include a leaseback provision as part of the sale of the NJ Home. **Rinsky Dep. at 43:8-17, 76:5-7**; Exhibit E; see also Deed dated May 25, 2015 (Rinsky Dep. Ex. 14 at YR 66-69), a true and correct copy of which was filed herewith as **Exhibit L**.

27. Plaintiff worked remotely from Boston from the time he moved until June 22, 2015, receiving his regular salary through July 10, 2015. **Rinsky Dep. at 128:19-22, 158:20-22,**

**165:3-6.**

28. By June 22, the decision was made that Plaintiff needed to be in the New York headquarters on a daily basis, and this message was relayed to Plaintiff during a call with Mr. Reid, Mr. Hamilton and Katrina Hicks from Human Resources. Plaintiff was given the option to return to New York or resign. Plaintiff declined to resign, but he did not return to the New York headquarters. **Rinsky Dep. at 129:12-130:9, 130:23-24, 144:4-8, 144:16-19;** *see also* email chain on June 22, 2015 (Rinsky Dep. Ex. 17), a true and correct copy of which was filed herewith as **Exhibit M**; email chain on June 22, 2015 (Rinsky Dep. Ex. 18), a true and correct copy of which was filed herewith as **Exhibit N**.

29. Plaintiff was notified that he had been terminated for job abandonment effective July 10, 2015 in a letter dated July 14, 2015. *See* letter from Mr. Reid to Plaintiff dated July 14, 2015 (Rinsky Dep. Ex. 20), a true and correct copy of which was filed herewith as **Exhibit O**.

30. Plaintiff's discrimination claims are based solely on events in 2009 and 2013 that are related to his health, and not age. *See* MCAD Charge of Discrimination dated August 13, 2015 and filed August 24, 2015 (Rinsky Dep. Ex. 21), a true and correct copy of which was filed herewith as **Exhibit P**; *see also* Complaint.

31. Plaintiff has a history of lymphoma, having had chemotherapy in 2009. He also broke his arm in 2009, and continued to work despite being told to take time off. Plaintiff was out in 2013 for nine-plus weeks when he was diagnosed with pneumonia, had further chemotherapy for the lymphoma, and was out with hypertension. On each occasion he was able to take time off and his employment remained the same before and after his treatment. **Rinsky Dep. at 168:13-169:10, 169:22-170:4, 170:7-24, 171:1-173:1.**

32. Plaintiff never asked for any accommodation – in his own words "I didn't have

disability. I was able to work." Other than the events listed in paragraph 31, Plaintiff admits that there is "no other basis of discrimination" that he alleges against C&W. **Rinsky Dep. at 173:2-8, 174:8-10.**

33. Mr. Reid was the only person at C&W that Plaintiff told about his medical condition. Mr. Reid was "never" negative about his health issues and "was always nice about it." For example, during the second conversation with Mr. Reid regarding the transfer, Mr. Reid was happy that Plaintiff's issues had nothing to do with his health. **Rinsky Dep. at 53:18-54, 133:18-24.**

34. In conversations regarding the requested transfer, Plaintiff admits that Mr. Reid made no comments regarding his health. There was no mention of his health during the June 22, 2015 call in which he was given the option to return to New York or resign. In his own words, the decision to move to Boston had "nothing to do with [his] health." **Rinsky Dep. at 88:19-23, 117:9-15, 132:23-133:11; 134:1-3.**

35. No one at C&W ever mentioned Plaintiff's age in 2015 or in connection with the transfer request. During discussions about transfer request, Plaintiff admits that Mr. Reid, who is only a couple of years younger than Plaintiff, made no comments about Plaintiff's age. There was no mention of age during the June 22, 2015 call in which he was given the option to return to New York or resign. **Rinsky Dep. at 117:2-8, 132:20-22, 185:8-186:1.**

36. C&W did not replace Plaintiff with a full time employee, but instead assigned his programming tasks to a consultant, Edgardo Felix, who Plaintiff believed to be approximately 50 years old. **Rinsky Dep. at 121:13-122:1.**

37. Plaintiff stated that although certain comments concerning his age and/or health condition were made during the course of his employment with C&W, "the only adverse

employment action that I am claiming in this lawsuit is my termination." *See* Plaintiff's Answers to First Set of Interrogatories from C&W, true and correct copies of which were filed herewith at **Exhibit Q**, at Answer Number 19.

38. Plaintiff also stated that the only damages that he was seeking in this lawsuit are lost pay and benefits, emotional distress, and liquidated/punitive damages and attorneys' fees (for the statutory discrimination claims). Plaintiff's Supplemental Answers to First Set of Interrogatories from C&W, true and correct copies of which were filed herewith at **Exhibit R**, at Answer Number 23.

Dated: March 13, 2017

Respectfully Submitted,
**CUSHMAN & WAKEFIELD, INC.**
By its attorneys,

/s/Edward F. Whitesell, Jr.

Robert R. Berluti, Esq. (BBO# 039960)
Edward F. Whitesell, Jr., Esq. (BBO# 644331)
**BERLUTI MCLAUGHLIN & KUTCHIN LLP**
44 School Street, 9th Floor
Boston, MA 02108
Phone: 617-557-3030
Fax: 617-557-2939
rberluti@bmklegal.com
ewhitesell@bmklegal.com

## Certificate of Service

I, Edward F. Whitesell, Jr., hereby certify that on March 13, 2017, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/Edward F. Whitesell, Jr.