# EXHIBIT Q

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| YURY RINSKY,<br><br>Plaintiff,<br><br>v.<br><br>CUSHMAN & WAKEFIELD, INC.<br><br>Defendant. | ) | C.A. No. 16-10403 |

**PLAINTIFF, YURY RINSKY'S ANSWERS TO FIRST SET OF**
**INTERROGATORIES FROM DEFENDANT, CUSHMAN & WAKEFIELD, INC.**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Rule 33.1, Plaintiff Yury Rinsky ("Plaintiff"), hereby answers the first set of interrogatories propounded by Defendant, Cushman & Wakefield, Inc. (the "Company") as follows:

**INTERROGATORY NO. 1**

Please list all of the employment positions you have held since leaving Cushman & Wakefield's employment, the name of the company or employer, and the length of time you worked for the company or the employer.

**ANSWER NO. 1**

I have not held any employment positions since my employment was terminated by Cushman & Wakefield.

**INTERROGATORY NO. 2**

List any and all attempts that you have made to acquire employment since leaving Cushman & Wakefield on July 10, 2015.

**ANSWER NO. 2**

Plaintiff objects to the terms "attempts" as vague and undefined. Subject to and without waiving this objection, Plaintiff states as follows: Although I have looked for employment through advertisements, I have not discovered any available opportunities for comparable

employment in a location as convenient as, or more convenient than, my place of former employment with the company, Boston, Massachusetts.

**INTERROGATORY NO. 3**

Identify all copies, emails, documents and/or notices of approval for Mr. Rinsky to transfer to the Boston office from the New York City office.

**ANSWER NO. 3**

Plaintiff refers to documents produced in response to Defendant's Request for Production of Documents. Plaintiff further states as follows: Following up on previous discussions with Colin Reid, I sent and email to Mr. Reid on May 17, 2015 titled "Moving to Boston." In the email, I wrote, as follows:

"As discussed will be moving to Boston on 5/27/2015 for family reasons and need to take 4 persona days after Memorial Day (5/26 – 5/29).

I am confident that I can continue to work to the best of my ability remotely. I look forward to sitting down with you and coming up with an arrangement that benefits all involved.

Thanks."

In response to this email, Mr. Reid replied as follows:

"OK, we will talk on Tuesday."

Subsequent to moving to Boston and working for Defendant remotely, I received a communication from Scott Sommer on June 2, 2015, which stated as follows:

"good afternoon, your desktop is still in NY, do you need it."

In response, I sent a reply email to Mr. Sommer, copying Mr. Reid, which stated:

"Scott,

I will need my desktop in a couple of weeks when I get a cubical in Boston office.

Thanks."

In response, Mr. Reid sent a reply email to Mr. Sommer and me, copying Andrew Hamilton, in which he wrote the following:

"Scott,

Pls wait until I am back in NY tomorrow. Yury might be getting new equipment for Boston, since I have an AS400 consultant sitting there next week.

Andrew, Pls advise.

Thx."

**INTERROGATORY NO. 4**

Describe in detail any and all conversations and/or communications regarding an approval for Mr. Rinsky to transfer to the Boston office from the New York City office.

**ANSWER NO. 4**

Plaintiff refers to the emails and communications discussed in response to Interrogatory Number 3. Plaintiff further states as follows: I had a conversation with Mr. Reid about putting my house in New Jersey on the market in the March, 2015 and asked him if the company would allow me to work from Boston once my house in New Jersey was sold. Mr. Reid said that he was extremely busy and suggested that the sale of my house would take at least six months and that we could talk about it later.

In the first week of April, I received a reasonable offer for purchase of my house in New Jersey, which contained no mortgage contingency and included an option to lease the house back. Immediately thereafter, I requested a meeting with Mr. Reid to discuss "something important" so I could make a decision about the offer I have received.

During that meeting, Mr. Reid fist expressed relief that the "something important" I wanted to discuss was not my health problem, but rather a request to work from the Boston office that we had already discussed before. I told Mr. Reid that I had received an offer for my New Jersey house and asked if it would be possible to transfer with the company to Boston in order to be near my daughter. Mr. Reid approved my request to work from the Boston office, stating "I'm ok with it. You work from home half the time anyway and we have never had a problem. This should work out fine. How can I say no when I will be working remotely from Miami?" Mr. Reid told me that he would have discussions with his manager, Andrew Hamilton, about my transfer and getting me a workspace there.

A week later, Mr. Reid told me that his manager, Andrew Hamilton, approved my request and Craig Cayar (CIO), who was travelling at the time, would arrange a workspace for me in the Boston office. Specifically, Mr. Reid stated "Andrew said he knows you handle most of the work on the AS400 and he has no problem with you working from the Boston office."

I have reviewed the dates listed in the Complaint filed in this matter as well as relevant documents, and have determined that an error was made with respect to dates listed. Specifically, the Complaint states that I received a cash offer on May 15, 2015. I now realize that this was in error, as the offer is dated March 31, 2015, which I believe I received within the subsequent few days at the beginning of April.

**INTERROGATORY NO. 5**

Identify any and all communications concerning a "verbal" approval, what was said during these communications, and who made the manifestations during the communications.

**ANSWER NO. 5**

Plaintiff refers Defendant to his answers to Interrogatory Numbers 3 and 4.

**INTERROGATORY NO. 6**

Identify all documents and/or communications provided to Mr. Rinsky regarding an approval for Mr. Rinsky to transfer to the Boston office from the New York City office from Mr. Hamilton.

**ANSWER NO. 6**

Plaintiff refers Defendant to his answers to Interrogatory Numbers 3 and 4.

**INTERROGATORY NO. 7**

Identify any and all documents and/or communications relating to the purchase of the residence at 7 Conant Road, Apartment 9 in Winchester, Massachusetts.

**ANSWER NO. 7**

Plaintiff objects to this interrogatory as not reasonably calculated to the discovery of admissible evidence. Subject to and without waving such objection, Plaintiff states as follows: The property at 7 Conant Road, Apartment 9 in Winchester, Massachusetts was purchased on December 18, 2014.

**INTERROGATORY NO. 8**

Identify when Mr. Rinsky and/or his wife made the decision to relocate from New York City, New York to Winchester, Massachusetts.

**ANSWER NO. 8**

Plaintiff states as follows: My plan was to retire to the Boston area after retirement at age 67. Given the real estate market in Massachusetts and difficulty in finding a residence, my wife and I began exploring potential retirement properties in 2014. The decision to relocate prior to my retirement was made in April 2015, after I was given approval by Mr. Reid and Mr. Hamilton to transfer with the company to the Boston office, a described in my response to Interrogatory Numbers 3 and 4 above.

**INTERROGATORY NO. 9**

Please describe in detail all of the motives, needs and/or interests in Mr. Rinsky's and/or his wife's decision to relocate to Winchester, Massachusetts.

**ANSWER NO. 9**

Plaintiff states as follows: The motives, needs and/interests of my wife and I in relocating to Winchester, Massachusetts was to be close to our daughter while continuing to work for the company until my retirement.

**INTERROGATORY NO. 10**

Identify whether Mr. Rinsky has ever filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") or the equivalent in New York in the past five years since January 1, 2014.

**ANSWER NO. 10**

Plaintiff objects to this interrogatory as not reasonably calculated to the discovery of admissible evidence. Subject to and without waving such objection, Plaintiff states as follows: No.

**INTERROGATORY NO. 11**

Please list any and all instances that Mr. Rinsky experienced personal discriminatory aminus based on his age and/or disability.

**ANSWER NO. 11**

Plaintiff states as follows: I believe that the termination of my employment was based on my age and/or health condition. There are two incidents that I know of during which discriminatory animus was shown.

After my chemotherapy treatment in 2009, Mr. Reid called me in to a conference room and told me that I could continue working for the company but that if I needed to take more time off from treatment, the company "won't be able to keep you here."

After my pneumonia hospitalization and chemotherapy treatment in 2013, a similar incident occurred. Mr. Reid once again called me into a conference room and told me the same thing.

**INTERROGATORY NO. 12**

Identify any and all individuals from whom Mr. Rinsky experienced discriminatory animus based on his age and/or disability and describe the circumstances of this discriminatory conduct.

**ANSWER NO. 12**

Plaintiff refers Defendant to his answer to Interrogatory 11.

**INTERROGATORY NO. 13**

Indicate all instances of Mr. Rinsky filing a complaint with Cushman & Wakefield for the discriminatory conduct directed at Mr. Rinsky as a result of his age and/or disability.

**ANSWER NO. 13**

Plaintiff states as follows: I sent a letter to the interim President of the Company, John Santora, on June 22, 2015 describing the discriminatory conduct that I had experienced. Specifically, I wrote as follows:

"John:

Please help me understand my abrupt termination. As you know I have been an employee for over 27 years. I recently moved to Boston with the expectation that I would continue to work remotely until a cubicle in the Boston office was set up. My move was approved by my direct manager and I put my house on the market. If my manager did not approve my move I would not sell my house and moved to Boston. I am upset and confused by the course of today's events. This morning I was told that I should forcibly resign and my manager sent me an email with specifics about my letter of resignation to human resources. I have no intention of resigning today or ever. I have done my job for almost three decades exceeding every expectation and I think am still very useful to the company. I am forwarding you the correspondence between my direct manager and human resources. Please help me make sense of this and let me know if there is anything you can do to help.

I appreciate your help.

Yury"

**INTERROGATORY NO. 14**

Describe any and all inquiries made by Mr. Rinsky regarding whether he would be able to relocate to the Boston office from the New York City office.

**ANSWER NO. 14**

Plaintiff refers Defendant to his answers to Interrogatory Numbers 3 and 4.

**INTERROGATORY NO. 15**

Describe in detail the results of the meeting between Mr. Rinsky and Mr. Reid in April 2015.

**ANSWER NO. 15**

Plaintiff refers Defendant to his answers to Interrogatory Numbers 3 and 4.

**INTERROGATORY NO. 16**

Please list all properties owned, leased, or managed by Mr. Rinsky and/or his wife in Massachusetts since 2005.

**ANSWER NO. 16**

Plaintiff objects to this interrogatory as not reasonably calculated to the discovery of admissible evidence. Subject to and without waving such objection, Plaintiff states as follows: I owned a home in New Jersey, which was sold in May 2015 after my transfer to Boston was approved. I previously had purchased the property at 7 Conant Road, Apartment 9 in Winchester, Massachusetts was purchased on December 18, 2014. These are the only properties that are relevant to this lawsuit.

**INTERROGATORY NO. 17**

Describe the basis for the ownership, leasehold, or management of any property by Mr. Rinsky and/or his wife in Massachusetts since 2005.

**ANSWER NO. 17**

Plaintiff objects to this interrogatory as not reasonably calculated to the discovery of admissible evidence.

**INTERROGATORY NO. 18**

Describe all the false information, complained of in Count V of the Complaint, provided by Cushman & Wakefield to Mr. Rinsky.

**ANSWER NO. 18**

Plaintiff refers Defendant to his answers to Interrogatory Numbers 2, 3 and 4. Plaintiff further states as follows: The information that Mr. Reid supplied to me, namely that (a) my

transfer to work in the Boston office was approved by him and Mr. Hamilton, (b) that I was permitted to move to Boston and work from that location remotely until my office space was set up, and (c) that I was to receive a cubicle and computer equipment at the company's Boston location, appears to have been false.

**INTERROGATORY NO. 19**

Describe each and every adverse employment action that involved unlawful discrimination, by stating:

a. Each characteristic on which you base your claim or claims of discrimination;
b. All facts upon which you base each claim of discrimination;
c. The name, address, and telephone number of each person with knowledge of those facts; and
d. Identify all documents evidencing those facts.

**ANSWER NO. 19**

Plaintiff refers to his answers to previous Interrogatories and documents produced in response to Defendant's Request for Production of Documents. Plaintiff further states as follows: Although, as referenced above, that certain comments concerning my age and/or health condition were made during the course of my employment with the company, the only adverse employment action that I am claiming in this lawsuit is my termination.

**INTERROGATORY NO. 20**

Describe any complaints made by Mr. Rinsky to Cushman & Wakefield about any of the unlawful conduct alleged in the Plaintiff's Complaint. If so, please state:

a. The nature and date of the complaint;
b. The name, address, telephone number, and job title of each person who investigated the complaint;
c. The nature and date of any action taken in response to the complaint; and
d. Identify all documents relating to the complaint, investigation, and any action taken in response to the complaint.

**ANSWER NO. 20**

Plaintiff refers to his answer to Interrogatory Number 13.

**INTERROGATORY NO. 21**

Identify each person who may have knowledge of any of the factual allegations, events or issues identified in the Complaint and for each person such identified, please provide the subject(s) upon which you believe that they have information.

**ANSWER NO. 21**

Plaintiff states as follows: Colin Reid and Andrew Hamilton. I believe each may have knowledge about my request for transfer, the approval of my request, and the circumstances concerning my termination.

**INTERROGATORY NO. 22**

Identify each type of benefit to which Mr. Rinsky would have been entitled, from the date of the Termination to the present, if the Termination had not happened. For each type of benefit, state the amount Cushman & Wakefield would have paid to provide the benefit for Mr. Rinsky during this time period and the value of the benefit to Mr. Rinsky.

**ANSWER NO. 22**

Plaintiff objects to the term "benefit" as vague and undefined. Plaintiff further objects to the extent that the information sought is as easily ascertainable from Defendant as from Plaintiff. Subject to and without waiving the objections, Plaintiff states as follows: At the time of my termination, my salary was $133,738.08. I also received medical, dental and disability insurance, which equate to a monetary value of $6,008 per year. I also was provided with 35 Paid Time Off (PTO) days, which equate to a monetary value of $17,730 per year. I also received a year-end bonus of $17,738 in 2014, which I would have expected to receive in following years.

**INTERROGATORY NO. 23**

Identify with specific numbers the damages you seek in this lawsuit.

**ANSWER NO. 23**

Plaintiff states as follows: I seek the following damages in this lawsuit:

(a) lost pay and benefits, equating to at least $175,214.08 per year, as described in response to Interrogatory Number 22, for at least the three years I expected to work between my termination and my expected retirement, or $525,642.24, with any applicable interest;

(b) damages for emotional distress, which are impossible for me to quantify with specific numbers, and for which I will leave allocation of specific numbers to the Court or the jury at trial;

(c) liquidated/punitive damages, which are impossible for me to quantify with specific numbers, and for which I will leave allocation of specific numbers to the Court or the jury at trial; and

(d) attorneys' fees and costs.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 19 DAY OF JANUARY, 2017

Yury Rinsky

AS TO OBJECTIONS:

**YURY RINSKY**,
By his attorney,

Mark D. Szal, BBO# 667594
SZAL LAW GROUP LLC
589 Tremont Street, Suite 4
Boston, Massachusetts 02118
Telephone: (617) 830-2494
mark@szallawgroup.com

Dated: January 19, 2017

**CERTIFICATE OF SERVICE**

I, Mark D. Szal, hereby certify that on this 20th day of January, 2017, I served the foregoing by email to:

Robert R. Berluti, Esq.
Berluti, McLaughlin & Kutchin LLP
44 School Street
Boston, Massachusetts 02108

Mark D. Szal