UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| YURY RINSKY, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 16-10403 |
| CUSHMAN & WAKEFIELD, INC., | ) | |
| Defendant. | ) | |

**PLAINTIFF'S PRETRIAL MEMORANDUM**

NOW COMES the Plaintiff, Yury Rinsky ("Plaintiff"), by and through counsel, and hereby files this Pretrial Memorandum pursuant to the Court's Pretrial Order dated August 18, 2016.

## 1. SUMMARY OF PLAINTIFF'S EVIDENCE

The following is a concise summary of the evidence that will be offered by Plaintiff at trial with respect to liability and damages.

The evidence will show that Plaintiff sought a transfer within his employer from New York to Boston, and his immediate supervisor informed him that his transfer was approved. Later, however, upper-level management claimed that the transfer has not gone through the correct process and used this as a pretext to terminate Plaintiff due to their concerns about his missing work due to a handicap (cancer) and his age. Given Plaintiff's knowledge of certain computer systems, managers decided to string Plaintiff along until they could get a younger and healthier replacement up to speed on Plaintiff's technical knowledge base. Once Plaintiff's knowledge had been transferred, he was told his transfer had never been approved and that if he

did not report to his former location in New York the next day and every day thereafter, he would be terminated. When he refused to report or resign, his employment was terminated.

Specifically, Plaintiff, at 63 years old with a history of recurrent cancer known to defendant, Cushman & Wakefield, Inc. ("Defendant"), was terminated by Defendant in July 2015 for "job abandonment" after 27 years with the company. Plaintiff had sought to transfer from the New York office of Defendant to its Boston office. He sought approval from his direct supervisor, Colin Reid ("Reid"), who commented that he was glad to hear that Plaintiff was not taking more time off to deal with recurrent cancer when Plaintiff told him in early 2015 that he needed to talk to him about "something important." Plaintiff had previously been treated for cancer twice with a 9-week chemotherapy regimen each time; this required him to be out of work each time two days per week. Upon returning to work on each occasion, Reid delivered a message from his supervisors that Defendant would not continue to employ Plaintiff if he took more time off for treatment because of how busy the department was.

Reid approved of Plaintiff's transfer request, but also told Plaintiff that his request had to be approved by Reid's supervisor, Andrew Hamilton ("Hamilton"). Reid later confirmed to Plaintiff that Hamilton too approved the transfer request. Neither Reid nor anyone else informed Plaintiff that there were any other approvals or paperwork necessary. Interestingly, Reid had himself transferred from Defendant's New York office to Miami during this time, and, from his own recent experience, was the most knowledgeable person in Plaintiff's department concerning the "informal" and unwritten transfer process. Both Reid and another employee, each of whom are younger than Plaintiff and do not have recurrent cancer, were allowed to transfer from New York to different locations in Florida. Plaintiff appears to be the only member of this department whose transfer request was denied.

Based on Reid's approval and his communication that Hamilton also approved, Plaintiff reminded his supervisor of his move date (May 27, 2015) by email on May 17, 2015, ten days prior. Reid's email response indicated consent. Plaintiff was never told that his request was denied or even still under consideration. As a result, Plaintiff closed on the sale of his house in New Jersey, gave up an opportunity to lease his New Jersey home after the sale, packed his family's household belongings, and moved to the Boston area. Almost immediately after moving to the Boston area, Plaintiff resumed working for Defendant remotely, with the understanding that he would be provided with a workstation in the Boston office shortly thereafter.

Plaintiff continued to perform work for Defendant from his home outside of Boston after his move. During this time, Reid stated in an email that Plaintiff's new workstation in the Boston office might be getting new computer equipment. Reid naturally concedes that Plaintiff was reasonably led to believe that he was getting office space in Boston. The two had daily communication for weeks after Plaintiff's move and the subject that his transfer request was somehow denied or still pending approval behind the scenes was never discussed or made known to Plaintiff. The upper-levels of management were men much younger than Plaintiff and sought to hide their discriminatory decision as long as possible.

Unbeknownst to Plaintiff, on the day he moved to Boston, Defendant was putting a plan in place to terminate him (but only after he performed important time-sensitive work) and replace him with a younger independent contractor who did not have the health issues that he had. This plan, hatched by the young upper-level managers, was basically to unload an aging, sickly worker. However, Defendant was careful to string Plaintiff along until it could transfer his technical knowledge base to his replacement.

On July 22, 2015, after successfully performing weeks of work from his home outside Boston upon the company's request without any performance issues, Defendant informed Plaintiff that in order to keep this job, he must return to the New York office on a full-time basis immediately, with a requirement that he be present in the office every day. This is despite the fact that Plaintiff had been working remotely 3 to 4 days per week before his move and remotely full-time afterward without issue. Defendant routinely utilizes telecommuting, and Plaintiff had been working from home 3 to 4 days per week for 3 years upon request of Defendant due to a space issue at Defendant's headquarters.

In short, Defendant made Plaintiff an unreasonable offer it knew he could not accept so that they could allege a legitimate, non-discriminatory reason for his termination. The evidence will show that Defendant was consistently seeking to "mitigate litigation risks" with respect to Plaintiff. This is because it had already decided before he even moved to terminate him based on the false narrative that Plaintiff "unilaterally" moved to Boston without proper approval. Defendant claims that Plaintiff went outside the required process when in fact there is no formal process by which one may transfer from one company location to another. Defendant tried to pressure Plaintiff to resign, and when he refused, he was terminated under the pretext of allegedly abandoning his job—the job he had held for 27 years.

At the time of his termination, Plaintiff's salary was $133,738.08. He also received medical, dental and disability insurance, which equate to a monetary value of $6,008 per year. Plaintiff was also was provided with 35 Paid Time Off (PTO) days, which equate to a monetary value of $17,730 per year. Plaintiff also typically received a yearly bonus incentive; for the year 2014, Plaintiff's bonus incentive was of $17,138. Employees in Plaintiff's department typically receive a 3% increase in base salary per year effective as of April 1st of each year, and therefore

Plaintiff would have expected his salary to increase in 2016 to $137,750.22 and in 2017 to $141,882.73. Plaintiff's 2014 bonus equated to approximately 13.2% of his base salary, and therefore he would have expected to receive bonuses for 2015 of $18,183.03, for 2016 of $18,728.52, and for 2017 of $19,290.38.

Plaintiff seeks monetary damages, equating to the salary, benefits, Paid Time Off and bonuses, as described above, for at least the three years he had expected to work between his termination and his expected retirement, or $540,786.96. Despite his efforts, Plaintiff was not able to find comparable employment after his termination and has been damaged as a result. Plaintiff also seeks damages for emotional distress and liquidated/punitive damages, which Plaintiff leaves allocation of the specific amount to the Court or the jury at trial. Plaintiff also seeks damages for attorneys' fees and costs incurred in connection with his claims.

**2. STIPULATION OF FACTS**

The facts below have been established by the pleadings. The parties have yet to agree upon other stipulated facts, but have discussed the possibility that further stipulated facts may be agreed upon based on the filings in connection with Defendant's motion for summary judgment. Plaintiff will work in good faith with Defendant to identify other facts that may be the subject of stipulations and attempt to further narrow factual issues in advance of trial.

A. Yury Rinsky is an individual residing at 7 Conant Road, Apartment 9, Winchester, Massachusetts.

B. Cushman & Wakefield, Inc. (the "Company") is a foreign corporation, registered to do business in the Commonwealth of Massachusetts, with a principal place of business at 1290 Avenue of the Americas, New York, New York.

C. Plaintiff was hired by the Company in June of 1988 as a Senior Systems Analyst and worked in that role for approximately 10 years.

D. During his entire tenure with Defendant, Plaintiff reported to Colin Reid, Managing Director.

E. In 1998 Plaintiff was promoted to Project Manager.

F. In 2009, the Company's Information Technology management was completely replaced, and during this time Plaintiff's position was changed to Software Engineer II.

G. During his tenure, Plaintiff played a role in the development of various projects for the Company's core business system (Legacy), reporting to Managing Director Colin Reid ("Mr. Reid").

H. Among other things, Plaintiff was responsible for conceptual design, detail design, development, testing, implementation, post-implementation maintenance and support of business software for the Legacy system. The software is used in all Company offices in the United States and Mexico.

I. Plaintiff generally worked directly with users with little or no supervision, completing most projects either on his own or with a small group of independent consultants under his supervision.

J. Plaintiff was terminated effective June 10, 2015.

**3. CONTESTED ISSUES OF FACT**

At this point, all other material facts are contested. Plaintiff refers to Defendant's Rule 56.1 Statement of Facts and Plaintiff's responses thereto, which will be filed on or before March 27, 2017, as well as Plaintiff's Concise Statement of Material Facts Omitted by Defendant,

which will be filed at the same time, and Defendant's expected responses. Plaintiff will work with Defendant in good faith to narrow any possible contested issues of fact in advance of trial.

## 4. JURISDICTIONAL QUESTIONS

Plaintiff is not aware of any jurisdictional questions in this matter at this time.

## 5. QUESTIONS OF LAW RAISED BY PENDING MOTIONS

A. Whether Defendant is entitled to summary judgment as to any of Plaintiff's claims?

B. Whether Defendant should be precluded from introducing evidence at trial concerning certain real estate transactions of Plaintiff?

C. Whether Defendant should be precluded from introducing evidence at trial concerning collateral source benefits Plaintiff may have received?

D. Whether Defendant should be precluded from introducing evidence at trial that Plaintiff failed to follow company "policies, procedures and/or practices"?

E. Whether Defendant should be precluded from introducing evidence at trial concerning matters outside of Plaintiff's department?

F. Whether evidence concerning future lost wages and benefits should be excluded with respect to Plaintiff's common law claims?

## 6. ISSUES OF LAW/EVIDENTIARY QUESTIONS

Plaintiff is not aware of any other issues of law or evidentiary issues at this time, other than those contained within the pending motions described above.

## 7. REQUESTED AMENDMENTS TO THE PLEADINGS

Plaintiff requests that the following paragraphs in his Complaint be amended and replaced with the language below due to scrivener's error:

- Paragraph 14: Specifically, Plaintiff discussed his treatment for lymphoma and the schedule of his treatment with Mr. Reid.
- Paragraph 18: Mr. Reid moved from the New York area in March 2015 and has been working from the Company's Miami office since.

- Paragraph 29: Plaintiff received a cash offer for his home via an email received from his broker on April 2, 2015, which contained a signed offer as an attachment dated March 31, 2015.
- Paragraph 40: Plaintiff contacted the President of the Company on June 22, 2015 concerning his impending termination, and was told by Human Resources that the matter would be reviewed.

Plaintiff also requests that references to “disability” in Count II and otherwise be amended to “handicap” in order to remain consistent with Massachusetts law and avoid confusion.

**8. ADDITIONAL MATTERS**

Plaintiff is not aware of any additional matters at this time that will aid the disposition of this action.

**9. PROBABLE LENGTH OF TRIAL AND TYPE**

Plaintiff requests a trial by jury and anticipates the trial to take 4 to 5 days.

**10. TRIAL WITNESSES**

Plaintiff intends to call some or all of the following fact witnesses at trial:

A. Yury Rinsky, 7 Conant Road, Apartment 9, Winchester, Massachusetts. The purpose of Mr. Rinsky’s testimony is to provide a factual account of the circumstances relative to this lawsuit and an explanation of the damages he seeks.

B. Colin Reid, address not provided by Defendant. The purpose of Mr. Reid’s testimony is to provide a factual account of the circumstances relative to this lawsuit.

C. Andrew Hamilton, address not provided by Defendant. The purpose of Mr. Hamilton’s testimony is to provide a factual account of the circumstances relative to this lawsuit.

D. Leif Maorini, address not provided by Defendant. The purpose of Mr. Maorini's testimony is to provide a factual account of the circumstances relative to this lawsuit.

E. Craig Cuyar, address not provided by Defendant. The purpose of Mr. Cuyar's testimony is to provide a factual account of the circumstances relative to this lawsuit.

F. Katrina Hicks, address not provided by Defendant. The purpose of Ms. Hicks' testimony is to provide a factual account of the circumstances relative to this lawsuit.

Plaintiff does not intend to call any medical or expert witnesses.

G. Plaintiff intends to call a Keeper of the Records witness for any and all of Defendant's business records that he seeks to introduce at the trial of this matter.

**11. PROPOSED EXHIBITS**

Defendant was unable to provide a prompt response concerning its agreement to any of Plaintiff's proposed exhibits. Defendant also did not provide a list of proposed exhibits to Plaintiff in time for Plaintiff to meaningfully consider whether he could agree to their admission. Plaintiff therefore provides his Proposed Exhibit List, attached hereto as Exhibit A. At present, Defendant has not agreed to admission of any of the exhibits. However, it is expected that the parties will confer in good faith and agree upon exhibits for trial and narrow objections as trial approaches. Plaintiff reserves the right to propose additional exhibits as trial approaches and as the evidence at trial dictates.

Respectfully submitted,

**YURY RINSKY,**
By his attorney

/s/Mark D. Szal
Mark D. Szal, BBO#667594
**SZAL LAW GROUP LLC**
589 Tremont Street, Suite 4
Boston, Massachusetts 02118
Tel: (617) 830-2494
mark@szallawgroup.com

/s/John W. Dennehy
John W. Dennehy, P.C. BBO#658247
DENNEHY LAW
127 Main Street, Suite 1
Nashua, NH 03060
(603) 943-7633
(603) 943-7642 (Fax)
jdennehy@dennehylaw.com

DATE: March 24, 2017

**Certificate of Service**

I, Mark D. Szal, hereby certify that on March 24, 2017, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, with a courtesy copy to the deputy courtroom clerk by hand.

/s/Mark D. Szal