**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| YURY RINSKY, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 16-10403 |
| CUSHMAN & WAKEFIELD, INC. | ) | |
| Defendant. | ) | |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

CUSHMAN & WAKEFIELD, INC.,

By its attorneys,

Robert R. Berluti, Esq. (BBO# 039960)
Edward F. Whitesell, Jr., Esq. (BBO# 644331)
Michael A. Bednarz, Esq. (BBO# 689047)
BERLUTI MCLAUGHLIN & KUTCHIN LLP
44 School Street, 9th Floor
Boston, MA 02108
Phone: 617-557-3030
Fax: 617-557-2939
rberluti@bmklegal.com
ewhitesell@bmklegal.com
mbednarz@bmklegal.com

Ralph T. Lepore, III, Esq. (BBO# 294420)
Benjamin M. McGovern, Esq. (BBO# 661611)
HOLLAND & KNIGHT LLP
10 Saint James Avenue, 11th Floor
Boston, MA 02116
Phone: 617-619-9210
Fax: 617-523-6850
ralph.lepore@hklaw.com
benjamin.mcgovern@hklaw.com

Date: May 25, 2017

**TABLE OF CONTENTS**

INTRODUCTION ..... 1

FACTUAL AND PROCEDURAL BACKGROUND ..... 2

A. C&W TERMINATED PLAINTIFF BECAUSE HE ATTEMPTED TO SELF-ENGINEER A TRANSFER TO MASSACHUSETTS WITHOUT PROPER APPROVAL ..... 2

1. Before Requesting a Transfer, Plaintiff Planned His Retirement, Bought a Retirement Home in Massachusetts and Sold His New Jersey Home ..... 3

2. C&W Ultimately Denied Plaintiff's Request to Transfer ..... 3

3. C&W Needed Plaintiff in New York City ..... 4

4. Plaintiff's Requests for Clarification Focused on the Transfer Decision, Not His Age ..... 4

B. PLAINTIFF'S AGE PLAYED NO ROLE IN C&W'S TERMINATION DECISION ..... 4

1. C&W Never Discussed Plaintiff's Age ..... 5

2. Plaintiff Did Not Believe Age Was the Reason C&W Terminated Him ..... 5

C. C&W MAINTAINED A HOSPITABLE WORKPLACE ENVIRONMENT FOR EMPLOYEES OF PLAINTIFF'S AGE ..... 5

1. Plaintiff Was the Highest-Paid Member of the AS400 Team ..... 5

2. Plaintiff's Age Was Not an Outlier – Colin Reid and Anna Kleynshteyn Were Similar in Age ..... 6

3. Edgardo Felix Had Additional Skills and Was Not Treated Preferentially ..... 6

4. There is No Significant Age Disparity Between Plaintiff and Colin Reid, Whom C&W Allowed to Transfer ..... 7

ARGUMENT ..... 7

I. STANDARD OF REVIEW ..... 7

II. THIS COURT SHOULD ENTER JUDGMENT FOR C&W OR, ALTERNATIVELY, ORDER A NEW TRIAL BECAUSE THE JURY'S VERDICT IS UNSUPPORTED AND AGAINST THE WEIGHT OF THE EVIDENCE ..... 8

A. THE JURY FINDING OF AGE DISCRIMINATION IS UNSUPPORTED AND AGAINST THE WEIGHT OF THE EVIDENCE ..... 8

B. THE JURY AWARD OF PUNITIVE DAMAGES IS UNSUPPORTED AND AGAINST THE WEIGHT OF THE EVIDENCE ..... 11

III. THIS COURT SHOULD VACATE THE JUDGMENT BECAUSE THE JURY'S FACTUAL FINDINGS DEPRIVE IT OF SUBJECT MATTER JURISDICTION .........13

IV. THIS COURT SHOULD ORDER A NEW TRIAL BASED ON PREJUDICIAL ERRORS IN THE JURY INSTRUCTIONS AND SPECIAL VERDICT FORM ...........16

A. THIS COURT ERRED BY TREATING THE "BUT FOR" AND "SUBSTANTIAL FACTOR" CAUSATION STANDARDS INTERCHANGEABLY.........................................16

B. THIS COURT ERRED BY OMITTING A "CLEAR AND CONVINCING EVIDENCE" STANDARD FROM THE JURY INSTRUCTIONS AND SPECIAL VERDICT FORM.............17

C. THIS COURT ERRED BY REFUSING TO INCLUDE A PRELIMINARY QUESTION FOR THE JURY TO CLARIFY THE PROPER STANDARD AND ELEMENTS FOR AN AWARD OF PUNITIVE DAMAGES ...............................................................19

CONCLUSION.........................................................................................................20

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Adelman v. Adelman*,
191 Misc. 2d 281 (N.Y. Sup. Ct. 2002) ....................11

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006)....................13

*Cann v. Ford Motor Co.*,
658 F.2d 54 (2d Cir. 1981)....................19

*Chauca v. Abraham*,
841 F.3d 86 (2d Cir. 2016)....................18

*Colon v. Trump Int'l Hotel & Tower*,
2011 WL 6092299 (S.D.N.Y. Dec. 7, 2011) ....................9, 17

*Gordon v. N.Y. City Bd. of Educ.*,
232 F.3d 111 (2d Cir. 2000)....................17

*Gorzynski v. JetBlue Airways Corp.*,
596 F.3d 93 (2d Cir. 2010)....................9, 17

*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167 (2009)....................17

*Hoffman v. Parade Publications*,
15 N.Y.S.3d 285 (2010)....................13, 14, 15, 16

*Irvine v. Murad Skin Research Lab.*,
194 F.3d 313 (1st Cir. 1999)....................7

*Johnson v. Strive E. Harlem Employment Group*,
990 F. Supp. 2d 435 (S.D.N.Y. 2014)....................18

*Lynch v. City of Boston*,
180 F.3d 1 (1st Cir. 1999)....................12

*Malone v. Lockheed Martin Corp.*,
610 F.3d 16 (1st Cir. 2010)....................7, 9

*Marcano-Rivera v. Pueblo Int'l, Inc.*,
232 F.3d 245 (1st Cir. 2000)....................7, 9, 10, 12

*Melman v. Montefiore Med. Ctr.*,
98 A.D.3d 107, 120 (N.Y. App. Div. 2012) ....................................................................8

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
725 F.3d 65 (2d Cir. 2013) ....................................................................................18

*Munoz v. Perutz*,
301 A.D.2d 382 (N.Y. App. Div. 2003) ...........................................................11, 18

*Putnam Resources v. Pateman*,
958 F.2d 448, 471 (1st Cir. 1992).........................................................................18

*Perez-Perez v. Popular Leasing Rental, Inc.*,
993 F.2d 281 (1st Cir. 1993).....................................................................................7

*Prozeralik v. Capital Cities Communications, Inc.*,
82 N.Y.2d 466 (1993) ..............................................................................................11

*Randi A.J. v. Long Island Surgi-Ctr.*,
46 A.D.3d 74 (N.Y. App. Div. 2007) ......................................................................18

*Robles v. Cox & Co., Inc.*,
841 F. Supp. 2d 615 (E.D.N.Y. 2012) ....................................................................14

*Rocanova v. Equitable Life Assur. Soc. of U.S.*,
83 N.Y.2d 603 (1994) ..............................................................................................11

*In re Theatre Row Phase II Assocs.*,
385 B.R. 511 (Bankr. S.D.N.Y. 2008).....................................................................11

*Jones ex rel. U.S. v. Massachusetts Gen. Hosp.*,
780 F.3d 479 (1st Cir. 2015)......................................................................................8

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
133 S. Ct. 2517 (2013)..............................................................................................17

*Venezia v. Luxoticca Retail N. Am. Inc.*,
WL 5692146, at *4 (S.D.N.Y., Sept. 28, 2015).........................................................8

*Wexelberg v. Project Brokers, LLC*,
No. 13 Civ. 7904(LAK)(MHD), 2014 WL 2624761 (S.D.N.Y. 2014) ............................14, 15

## INTRODUCTION

At the conclusion of a one-week trial, the jury in this case returned a verdict finding Cushman & Wakefield, Inc. ("C&W") liable for age discrimination under New York city law based on its decision to terminate the employment of the plaintiff, Yury Rinsky ("Plaintiff"). Judgment subsequently entered for Plaintiff in the amount of $1.275 million – comprised of $425,000 in compensatory damages and $850,000 in punitive damages. This judgment should be vacated for several, equally compelling reasons.

Although the substantial monetary award is based entirely on a finding of age discrimination, there is absolutely no evidence of such discrimination in the record. In addition to this fatal deficiency, this action should be dismissed because this Court lacks subject matter jurisdiction, and, even if jurisdiction were proper, a new trial should be ordered because the verdict was tainted by several prejudicial errors in the jury instructions and special verdict form.

The trial record is completely devoid of any evidence to support a finding that C&W harbored discriminatory animus towards Plaintiff based on his age, let alone that it engaged in the type of malicious conduct necessary to support an award of punitive damages. Rather, the evidence established unequivocally that Plaintiff (an at-will employee) was terminated because he moved to Massachusetts without C&W's approval to work from that location and refused to return to New York when requested to do so. There was absolutely no evidence to suggest that C&W's decision was influenced whatsoever by Plaintiff's age. To the contrary, Plaintiff admitted that his age never arose during his many conversations with C&W executives, and the C&W witnesses testified universally that Plaintiff's age was never discussed. For this reason alone, this Court should enter judgment as a matter of law for C&W or, alternatively, order a new trial.

Even if the jury could have properly found a discriminatory motive for Plaintiff's termination (which is not supported by the record), the rationale underlying the verdict deprives

this Court of subject matter jurisdiction to award relief under the New York City Human Rights Law (the "NYCHRL"). Specifically, under relevant authorities, because the jury necessarily concluded that the "impact" of Plaintiff's termination was felt in Massachusetts – not in New York – its verdict divests this Court of subject matter jurisdiction to enter judgment based upon the verdict. The judgment must be vacated because this Court lacks subject matter jurisdiction over the only claims upon which Plaintiff prevailed at trial.

Finally, even if the judgment were otherwise proper, a new trial is still warranted because there were substantive errors in the jury instructions and special verdict form that caused prejudicial jury confusion. Specifically, a new trial is required because:

- The jury was erroneously instructed to apply two separate and distinct causation standards – "substantial factor" and "but for" – as if they were interchangeable;
- The special verdict form mistakenly required the jury to apply the substantial factor test, rather than the required but for test, to its analysis of age discrimination;
- The jury was not instructed to apply the "clear and convincing evidence" standard applicable to punitive damages; and
- The special verdict form improperly omitted a preliminary question that would have clarified the heightened evidentiary standard and additional elements required to award punitive damages.

For these reasons, and as more particularly described below, this Court should enter judgment as a matter of law for C&W on Plaintiff's claims pursuant to Fed. R. Civ. P. 50(b) or, alternatively, dismiss this action or order a new trial pursuant to Fed. R. Civ. P. 59(a).

## FACTUAL AND PROCEDURAL BACKGROUND

### A. C&W Terminated Plaintiff Because He Attempted to Self-Engineer a Transfer to Massachusetts Without Proper Approval

Once speculation and innuendo are set aside, the actual evidence in the trial record points to only one possible reason for Plaintiff's termination – Plaintiff was terminated because he did

not have permission to transfer his employment from New York to Massachusetts, and refused to return to New York when he was informed that this permission was lacking.

Plaintiff was a software engineer in an information technology department within C&W. Colin Reid was Plaintiff's direct supervisor. Above Mr. Reid in the organizational command at the time were Andrew Hamilton, Leif Maiorini and Craig Cuyar, C&W's Global Chief Information Officer. Other employees in Plaintiff's department included another software engineer, Anna Kleynshteyn. From time to time, C&W would hire outside consultants to work on the AS400, including Edgardo Felix, who had worked with Plaintiff at C&W. Katrina Hicks was a C&W human resources manager who became involved with Plaintiff's employment situation after Plaintiff moved to Massachusetts.

1. *Before Requesting a Transfer, Plaintiff Planned His Retirement, Bought a Retirement Home in Massachusetts and Sold His New Jersey Home*

Plaintiff was planning to retire at sixty-six or sixty-seven, and wanted to do so in Massachusetts, where his daughter lived with his grandchildren. When he accepted an offer to purchase his New Jersey residence, Plaintiff did not know whether his request to transfer his job responsibilities to Massachusetts had been approved. According to Plaintiff, he only made plans to move once he received oral assurances, not corroborated in writing, that he had permission to transfer. Plaintiff closed on the sale of his New Jersey home and moved to Massachusetts on May 27, 2015. Based on his alleged belief that he had been granted a transfer, Plaintiff considered May 22, 2015 to be his "last day in the New York City Headquarters."

2. *C&W Ultimately Denied Plaintiff's Request to Transfer*

Contrary to Plaintiff's alleged "understanding," however, his request for a transfer had not been approved. In reality, that request was ultimately denied because Mr. Cuyar (who had final authority regarding the matter) did not want to set a "precedent that an employee could come in

and basically decide where they were going to work from and dictate that to Cushman & Wakefield, because that was a dangerous precedent to set."

3. *C&W Needed Plaintiff in New York City*

Once the decision was made to deny Plaintiff's request to transfer, C&W gave Plaintiff an option to return to New York or resign. According to Plaintiff, Mr. Hamilton told him, "[w]e need you in New York," and "[w]e need you in New York every day starting tomorrow." Mr. Maiorini testified that C&W "would have been happy to have him come back." Mr. Hamilton told Plaintiff he offered him a chance to resign because it would be better if no one found out he was fired. Plaintiff rejected this request as unreasonable because he alleges he had moved to Massachusetts "after [C&W's] approval." Although he was aware that he was an at-will employee who could be terminated at any time, Plaintiff refused to resign and did not return to New York.

4. *Plaintiff's Requests for Clarification Focused on the Transfer Decision, Not His Age*

Plaintiff subsequently sought clarification from C&W's human resources department in late June 2015 as to why, in his alleged view, the company had reneged on its approval for his transfer. In response, Ms. Hicks told Plaintiff he had left New York without talking to his manager and the human resources department. Plaintiff then provided Ms. Hicks with two emails allegedly demonstrating approval for his transfer. Ms. Hicks opened an investigation into the matter, and Plaintiff was placed on paid leave. Ultimately, C&W found no merit to Plaintiff's claim he had been granted approval to transfer. He was therefore terminated, effective July 10, 2015, on the ground that he had abandoned his job responsibilities in New York.

B. <u>Plaintiff's Age Played No Role In C&W's Termination Decision</u>

Aside from the unremarkable fact that Plaintiff was 65 years old, there is no evidence to demonstrate that age had any bearing on Plaintiff's employment termination. Plaintiff acknowledged on the witness stand that Mr. Reid never mentioned anything about Plaintiff's age

during their conversations. More pointedly, Plaintiff admitted he did not believe that Mr. Reid took an adverse employment action against him because of age. Similarly, Plaintiff concedes that Mr. Hamilton never mentioned age during their only conversation related to the requested transfer.

1. *C&W Never Discussed Plaintiff's Age*

The C&W witnesses had the same recollection of events. Mr. Reid testified he never had a conversation with Mr. Cuyar, the ultimate decision-maker, about Plaintiff's age. He similarly recalled that when he met with Ms. Hicks and Mr. Hamilton to discuss Plaintiff's request for a transfer, age never arose as a subject of conversation. For her part, Ms. Hicks testified that age played no role in the decision to deny Plaintiff a transfer because in all conversations that she participated in, Plaintiff's age was ***never*** discussed. At that time, Ms. Hicks did not know Plaintiff's age, let alone understand he was the oldest person employed by the AS400 department.

2. *Plaintiff Did Not Believe Age Was the Reason C&W Terminated Him*

At all times prior to his decision to bring this lawsuit, Plaintiff behaved as if he believed age had nothing to do with C&W's termination decision. At the time of Plaintiff's termination, C&W had written policies regarding equal opportunity that outlined procedures for initiating a complaint. Plaintiff did not avail himself of these policies. Nor did he ever raise the issue with any other C&W employee. Most notably, during his extensive communications with Ms. Hicks, Plaintiff never told her that he thought age was the reason his transfer was denied. Similarly, in his June 22, 2015 email to C&W's President, Plaintiff never mentioned he believed age was a factor in the denial of his transfer even though he admits he was considering a lawsuit at that time.

C. <u>C&W Maintained a Hospitable Workplace Environment For Employees of Plaintiff's Age</u>

1. *Plaintiff Was the Highest-Paid Member of the AS400 Team*

Far from establishing discriminatory animus, all of the evidence confirms that C&W treats its more senior employees fairly. Indeed, it is undisputed that Plaintiff was compensated

generously in comparison to his peers just prior to his termination. In March 2015, mere months prior to his allegedly discriminatory termination, Plaintiff received a discretionary bonus of $17,000, which was more than double the bonus received by his closest co-worker in the department. On April 1, 2015, Plaintiff, who already had the highest salary of any member of the AS400 team by $25,000, received a raise to $133,738.

### 2. *Plaintiff's Age Was Not an Outlier – Colin Reid and Anna Kleynshteyn Were Similar in Age*

Nor do the circumstances surrounding C&W's replacement of Plaintiff suggest that the company was hostile to older workers. For example, Anna Kleynshteyn, another full-time employee in Plaintiff's former group, is approximately 60 years old and has worked for C&W for approximately 27 years. Similarly, Mr. Reid is 63 years old and has worked for C&W for 33 years.

### 3. *Edgardo Felix Had Additional Skills and Was Not Treated Preferentially*

Moreover, there is absolutely no evidence to suggest C&W terminated Plaintiff so it could hire a substantially younger employee as a replacement. Although not originally hired for that purpose, Edgardo Felix ultimately succeeded to Plaintiff's job responsibilities after Plaintiff's termination. As Mr. Reid testified at trial: "[i]nitially Yury and I had a discussion, before this Boston situation came up, that he needed help. And there were features that we needed for the interfaces between the AS/400 and Workday that Yury was not familiar with and I was not familiar with. That's the IFS feature … Initially Edgardo was brought in to do that and help with the workload …" Plaintiff testified further that Mr. Felix was approximately 15 years younger than him, or about 50 years old. Mr. Felix had never worked anywhere other than the New York office. Mr. Felix was initially paid $65 per hour, later received a raise to $75 per hour, and worked more than 40 hours a week "a lot." Projecting a forty-hour workweek on an annualized basis, Mr. Felix's consulting contract cost C&W about the same amount as Plaintiff's annual compensation.

4. *There is No Significant Age Disparity Between Plaintiff and Colin Reid, Whom C&W Allowed to Transfer*

Finally, the evidence at trial was that C&W was open to the possibility of older employees transferring offices if the proper approval protocols were followed. Despite being of a similar age to Plaintiff, Mr. Reid was given permission to transfer to Miami after waiting several months for Mr. Cuyar to approve his transfer and confirming his willingness to travel to New York (where he continues to maintain a residence) whenever needed at that office.

## **ARGUMENT**

### I. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 50(b), this Court may enter judgment as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for [Plaintiff] on that issue." *See* Fed. R. Civ. P. 50(a); *see also Marcano-Rivera v. Pueblo Int'l, Inc.*, 232 F.3d 245, 251 (1st Cir. 2000) ("To affirm the withdrawal of any claim from the jury, we must find that, as a matter of law, the record would permit a reasonable jury to reach only one conclusion as to that issue."). However, a "plaintiff is not entitled to inferences based on speculation and conjecture," *see Malone v. Lockheed Martin Corp.*, 610 F.3d 16, 20 (1st Cir. 2010), and "[a] mere scintilla of evidence will not rise to a triable issue of fact necessary to avoid dismissal under Rule 50." *Irvine v. Murad Skin Research Lab.*, 194 F.3d 313, 316 (1st Cir. 1999).

In addition, Rule 59(a) "creates the opportunity to correct a broad panoply of errors, in order to prevent injustice." *Perez-Perez v. Popular Leasing Rental, Inc.*, 993 F.2d 281, 283 (1st Cir. 1993). Grounds for a new trial include that "the verdict is against the weight of the evidence … or, that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of substantial errors in admission or rejection of evidence or instructions to the jury." *Id.* In the context of assessing the evidentiary support for a verdict under Rule 59(a), this Court "may independently weigh the evidence," and "consider the credibility of the witnesses who

testified." *Jones ex rel. U.S. v. Massachusetts Gen. Hosp.*, 780 F.3d 479, 492 (1st Cir. 2015). Here, C&W is entitled to relief under both Rule 50(b) and 59(a) because the jury verdict was unsupported and against the weight of the evidence, this Court lacks subject matter jurisdiction to award relief under the NYCHRL, and because substantive errors in the jury instructions and special verdict form prejudiced the jury's deliberations.

## II. THIS COURT SHOULD ENTER JUDGMENT FOR C&W OR, ALTERNATIVELY, ORDER A NEW TRIAL BECAUSE THE JURY'S VERDICT IS UNSUPPORTED AND AGAINST THE WEIGHT OF THE EVIDENCE

### A. The Jury Finding of Age Discrimination Is Unsupported and Against the Weight of the Evidence

For purposes of claims under the NYCHRL,[1] New York "courts apply a modified *McDonnell Douglas* analysis in which, in the first step, a 'plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason.'" *Venezia v. Luxoticca Retail N. Am. Inc.*, WL 5692146, at *4 (S.D.N.Y., Sept. 28, 2015). "Next, assuming the plaintiff carries his initial burden, the defendant must 'present evidence of its legitimate, nondiscriminatory motives to show the conduct was not caused by discrimination.'" *Id.* "Finally, if the defendant satisfies the second step, the plaintiff must present evidence that 'proves that unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for an adverse employment decision.'" *Id.* Thus, to prove that C&W's reasons were pretextual, Plaintiff must prove "both that the stated reasons were false and that discrimination was the real reason." *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 120 (N.Y. App. Div. 2012) (burden not

[1] Over C&W's objection, the special verdict form utilized the causation standard set forth in the NYCHRL to permit a finding of liability if the jury concluded that "age was a substantial factor" in C&W's termination decision. *See* Special Verdict Form (Dkt. No. 60). As set forth in Section IV, *infra*, application of the substantial factor test was erroneous, and a new trial is required because (assuming, *arguendo*, application of New York law) the special verdict form should have applied a "but for" causation test as mandated by the NYSHRL. That error notwithstanding, the verdict returned by the jury is still fatally flawed under either possible causation standard because there was no evidence whatsoever to establish that age discrimination was a substantial factor in C&W's termination of Plaintiff, let alone the *but for* reason for that decision. C&W's argument that Plaintiff failed to meet even the less stringent substantial factor test is not a concession that it was the appropriate test in the first place, nor is it a waiver of the arguments presented in Section IV, *infra*.

met in age discrimination case under the NYCHRL). In contrast, after the Second Circuit's decision in *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010), a showing of pretext under the NYSHRL requires a plaintiff to "demonstrate that a reasonable jury could find that the plaintiff's age was the 'but for' cause of the adverse employment action." *Colon v. Trump Int'l Hotel & Tower*, 2011 WL 6092299, at *7 (S.D.N.Y. Dec. 7, 2011). Under either possible causation standard, the jury verdict in this case is unsupported and against the weight of the evidence.

The *Malone* and *Marcano-Rivera* decisions are factually analogous to the instant circumstances. In *Malone*, plaintiff alleged racial discrimination for reprimands, bad performance reviews and an eventual demotion, and claimed that the employer's stated reason – a continued practice of taking vacation time and time off without sufficient notice – was a pretext. 610 F.3d at 20. The plaintiff admitted he reached this conclusion only "after ruling everything [else] out," and the record reflected that the "only racially tinged incident put forth by [plaintiff] was that coworkers, not including [his direct supervisor], once joked that [plaintiff] was 'driving Miss Daisy' because he had to drive a white colleague to and from a work site. *Id. at* 21. The First Circuit affirmed District Court's grant of a Rule 50(b) motion in favor defendant, holding that plaintiff "submitted no evidence suggesting any racial motivation for [his supervisor's] response to [the plaintiff]'s continued and severe absenteeism problem." *Id.* at 22.

*Marcano-Rivera* involved a similar outcome in a disability discrimination case. In that case, the plaintiff was born with a congenital bone defect in her legs, which were amputated, requiring her to use a wheelchair. *Marcano-Rivera*, 232 F.3d at 248. Thereafter, the *Marcano-Rivera* plaintiff claimed that her reclassification and subsequent dismissal as part of a reduction in workforce were pretexts for disability discrimination. *Id*. at 250-53. Affirming the District Court's grant of a Rule 50(a) motion on the discrimination claim, the First Circuit held that the claim failed

as a matter of law because there was "no evidence to indicate" that the reclassification was discriminatory or intended to cause her dismissal, even if the reclassification had been in error. *Id*. at 252-53.

The same is true here. The jury's finding of causation was against the weight of the evidence because there was not a scintilla of evidence to suggest that age was a factor in any regard in Plaintiff's termination. Rather, the only evidence before the jury demonstrated that C&W terminated Plaintiff because he refused to return to work in New York after being told that his request for a transfer to Massachusetts had been denied. Plaintiff never raised the issue of his age, despite admitting he was considering a lawsuit, and C&W never discussed it internally. That is because everyone involved at the time understood that the only issue was whether C&W had given Plaintiff permission to transfer. Regardless of whom the jury believed on this issue, and irrespective of whether C&W was justified in requiring Plaintiff to return to New York, none of it had anything to do with Plaintiff's age. It was only when Plaintiff met with a lawyer to discuss potential claims that the theory of age discrimination was concocted.

In stark contrast, the evidence that C&W harbored no discriminatory animus is plentiful. Plaintiff worked at C&W for 23 years after turning 40 years old. His supervisor, Mr. Reid, is 63 years old. Mr. Reid was allowed to transfer, despite his age, because he followed the proper procedure and waited for the approval before moving. Ms. Kleynshteyn, who worked at C&W for an extended period similar to Plaintiff, is approximately 60 years old. The contractor who assumed Plaintiff's work was not originally hired for that purpose, had done consulting work for C&W previously, and is approximately 50 years old. There were also no cost savings realized by C&W when Mr. Felix assumed Plaintiff's old job responsibilities. Perhaps most telling, however, is that just months before C&W allegedly hatched a plan to terminate Plaintiff because of his age, Mr. Hamilton authorized a discretionary bonus to Plaintiff in the amount of $17,000.

Plaintiff was not terminated because he was 63 years old; he was terminated because he refused to return to New York for his work. Accordingly, this Court should enter judgment as a matter of law for C&W on the discrimination claim or, alternatively, order a new trial.

B. The Jury Award of Punitive Damages Is Unsupported and Against the Weight of the Evidence

For the same reasons that the jury verdict was against the weight of the evidence for purposes of liability, it is also deficient for purposes of the punitive damages award. "A demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action such as fraud." *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 616 (1994). "If no valid underlying claim exists for which compensatory damages could be recovered, then no claim for punitive damages can stand." *In re Theatre Row Phase II Assocs.*, 385 B.R. 511, 522 n. 19 (Bankr. S.D.N.Y. 2008). Accordingly, judgment should enter denying Plaintiff's request for punitive damages because, for the reasons set forth in Section II.A, *supra*, there is no sustainable finding of liability to serve as a foundation for such an award.

However, even assuming *arguendo* that the jury's finding of liability was appropriate (which it is not), the award of punitive damages is still against the weight of the evidence. This is because punitive damages require a much higher level of culpability than the underlying discrimination claim. "Punitive damages may be awarded to victims where the wrongful conduct was so depraved or so gross, wanton, malicious, and culpable as to evince utter recklessness, or where it was actuated by evil, reprehensible, or wrongful purposes or motives." *Adelman v. Adelman*, 191 Misc. 2d 281, 284 (N.Y. Sup. Ct. 2002). The purpose of punitive damages is "to punish a person for outrageous conduct which is malicious, wanton, reckless, or in willful disregard for another's rights." *Prozeralik v. Capital Cities Communications, Inc.*, 82 N.Y.2d 466, 479–80 (1993). Further, this egregious conduct must be proven by "clear, unequivocal and convincing evidence." *See Munoz v. Perutz*, 301 A.D.2d 382, 384 (N.Y. App. Div. 2003).

Nothing in the trial record establishes the type of "outrageous" or "reprehensible" behavior that can properly support an award of punitive damages. As set forth above, there is no evidence of age discrimination. At worst, the jury might have believed that C&W told Plaintiff he could transfer to Boston and then changed its mind. But, because Plaintiff was an at-will employee, there was nothing to prevent C&W from doing so. Nor is it enough that C&W may have failed to apprise Plaintiff of its internal management discussions, or that it allegedly failed to make Plaintiff understand clearly enough that he did not have authorization to transfer. This is particularly true where, as here, it is undisputed that Plaintiff was paid his salary up until the date he was terminated.

Conversely, there is significant evidence that C&W acted to preserve Plaintiff's rights. C&W implemented policies against age discrimination and procedures for making complaints, which weigh against awarding punitive damages. *See Marcano-Rivera*, 232 F.3d at 254. When Plaintiff informed Ms. Hicks he had received permission to transfer, C&W placed Plaintiff on paid leave while Ms. Hicks conducted an internal investigation into his claims. In these circumstances, even if the jury had been properly instructed (which it was not, *see* Section IV, *infra*), the weight of the clear and unequivocal evidence is inconsistent with any suggestion C&W engaged in malicious, wanton, reckless or willful behavior. This Court should therefore enter judgment as a matter of law for C&W on the award of punitive damages or, alternatively, order a new trial.[2]

---

[2] Nor does the fact that C&W's Rule 50(a) motion did not explicitly raise the issue of punitive damages bar consideration of that argument now. At the time that the Rule 50(a) motion was filed, there had been no charge conference, and C&W continued to press its position that there were no punitive damages available under the NYSHRL. Moreover, the argument regarding the insufficiency of the evidence supporting the punitive damages is inextricably intertwined with C&W's argument that there is no evidence to support a finding of age discrimination in the first place. It is well-established that Rule 50(a) "does not require technical precision in stating the grounds of the motion. It does require that they be stated with sufficient certainty to apprise the court and opposing counsel of the movant's position with respect to the motion." *Lynch v. City of Boston*, 180 F.3d 1, 13 n.9 (1st Cir. 1999) (failure to specifically assert qualified immunity in Rule 50(a) motion not a bar to raising issue in Rule 50(b) motion) (holding that Rule 50(a) "is designed to prevent unfair surprise."). As was the case in *Lynch*, Plaintiff here "could hardly have been surprised by" C&W's assertion in the Rule 50(b) Motion that he failed to prove punitive damages for age discrimination when it challenged the factual sufficiency of the underlying claim in the Rule 50(a) Motion.

## III. THIS COURT SHOULD VACATE THE JUDGMENT BECAUSE THE JURY'S FACTUAL FINDINGS DEPRIVE IT OF SUBJECT MATTER JURISDICTION

Pursuant to Fed. R. Civ. P. 12(h)(3), "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court ***must*** dismiss the action." (emphasis supplied). The objection that a federal court lacks subject matter jurisdiction to adjudicate a claim "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Moreover, "subject matter jurisdiction, because it involves a court's power to hear a case, can ***never*** be forfeited or waived." *Id.*, at 514 (emphasis supplied). Here, because the jury's factual findings deprive this Court of subject matter jurisdiction to award relief under the NYCHRL, the judgment must be vacated.

In the seminal decision of *Hoffman v. Parade Publications*, 15 N.Y.S.3d 285 (2010), the New York Court of Appeals addressed the precise factual scenario posed by Plaintiff's claims here – whether "nonresidents" of New York "must plead and prove that the alleged discriminatory conduct had an impact" within New York City to obtain relief under the NYCHRL. *Id.*, at 289. The *Hoffman* court unequivocally answered this question in the affirmative.

In so doing, the court in *Hoffman* observed that "it is clear" from the language of the NYCHRL "that its protections are afforded only to those who inhabit or are 'persons in' the City of New York", and that the "obvious intent" of the NYSHRL "is to protect 'inhabitants' and persons 'within' the state, meaning that those who work in New York fall within the class of persons who may bring discrimination claims in New York." *Id.* at 289, 291. Based on this logic, the *Hoffman* court held that to establish subject matter jurisdiction under the NYCHRL, a non-resident plaintiff must demonstrate that "the alleged discriminatory conduct had an 'impact' within the city." *Id.* at 290. If a plaintiff cannot satisfy that burden because the impact of discrimination "was felt outside the city", there is no subject matter jurisdiction, even if the "termination decision was made in the city." *Id*. The court then went on to extend that same holding to the NYSHRL.

*Id.* at 291 ("Application of the 'impact' requirement to NYSHRL claims achieves the same ends as is the case with its City counterpart, because it permits those who work in the state to invoke its protections. Therefore, we conclude that a nonresident must plead and prove that the alleged discriminatory conduct had an impact in New York.").

After setting forth this analytical framework, the *Hoffman* court reinstated a trial court ruling dismissing claims under the NYCHRL and NYSHRL based on a lack of subject matter jurisdiction because the plaintiff "was neither a resident of, nor employed in, the City or State of New York," and did not "state a claim that the alleged discriminatory conduct had any impact in either of those locations." *Id.* at 292. Since that time, New York courts have consistently applied the *Hoffman* decision to deny subject matter jurisdiction under these statutes where a plaintiff cannot establish that the "impact" of discrimination was felt within the borders of New York City and/or the State of New York. *See, e.g.*, *Wexelberg v. Project Brokers, LLC*, No. 13 Civ. 7904(LAK)(MHD), 2014 WL 2624761, at *10 (S.D.N.Y. 2014) ("[A] plaintiff living outside New York must both plead and prove that the discriminatory or otherwise wrongful conduct had an impact within New York State (for State law coverage) and an impact within the City (for City coverage)."); *Robles v. Cox & Co., Inc.*, 841 F. Supp. 2d 615, 623 (E.D.N.Y. 2012) ("[I]t is the impact of the adverse action, and not the location where acts leading to the discrimination occur that gives rise to a claim under the NYCHRL.").

Here, the manner in which the jury reached its verdict confirms that Plaintiff felt the impact of any alleged discrimination in Massachusetts, not New York. C&W contended throughout the trial that it never granted Plaintiff permission to transfer from New York to Massachusetts, meaning that at all times it considered him to be an employee of its New York office. If believed, that theory may have conceivably supported a finding that the impact of any purported discrimination against Plaintiff – up to and including his termination – was felt in New York

because he remained an employee of the New York office notwithstanding his physical location. *See Wexelberg*, 2014 WL 2624761, at *11 (holding that "it is not clear" from *Hoffman* or its progeny whether a plaintiff who works in New York for some portion of the relevant time period "may not be deemed to have been working in the City for purposes of all of his claims.").

However, the jury made clear in its verdict that it accepted Plaintiff's contention that he was granted permission by C&W to live and work in Massachusetts as a Massachusetts-based employee. *See id.* (drawing distinction between employee "working remotely from his home ***for the New York office*** rather than working ***at an out-of-state office*** of the [] defendants or at a client site…."). Accordingly, by the time Plaintiff was allegedly terminated on the basis of his age, he could only have felt the impact of that decision in Massachusetts. This deprives this Court of subject matter jurisdiction to resolve Plaintiff's claims under either the NYCHRL or NYSHRL.[3]

The conclusion that the impact of any purported discrimination was felt in Massachusetts is also consistent with Plaintiff's testimony at trial. For example, it is undisputed that Plaintiff closed on the sale of his New Jersey home and moved to Massachusetts on May 27, 2015. Plaintiff also identified May 22, 2015 as his "last day in the New York City Headquarters before moving to Massachusetts." Based on this testimony, Plaintiff argued that he was given permission to transfer to Massachusetts, and that C&W's claimed reason for terminating him – a refusal to return to New York – was actually a pretext for age discrimination. Thus, the evidence developed by Plaintiff reflected his contention that, at the time of his termination, he was a Massachusetts resident working with C&W's approval as a Massachusetts employee. It therefore necessarily follows that, under Plaintiff's theory, he felt the impact of his termination ***in Massachusetts***, not

[3] This conclusion is not at odds with C&W's pretrial argument that New York law applies to Plaintiff's common-law claims under the Massachusetts "functional" choice-of-law test. *See* Dkt. No. 45, at pp. 8-11. The subject matter requirement embedded in the statutory claims has no bearing on the substantive law applicable to the common-law claims, and the decision to dismiss those claims under New York law remains proper.

New York. Thus, pursuant to *Hoffman,* the locus of this impact is fatal to this Court's continued exercise of subject matter jurisdiction over Plaintiff's NYCHRL claim. This Court is therefore obligated to vacate the judgment and dismiss this action because that was the only cause of action upon which Plaintiff prevailed at trial.[4]

## IV. THIS COURT SHOULD ORDER A NEW TRIAL BASED ON PREJUDICIAL ERRORS IN THE JURY INSTRUCTIONS AND SPECIAL VERDICT FORM

### A. <u>This Court Erred By Treating the "But For" and "Substantial Factor" Causation Standards Interchangeably</u>

At trial, C&W requested an instruction that would have required Plaintiff to prove that discrimination was the "but for" cause of his termination, as well as a special verdict question asking the jury whether Plaintiff had "proven by a preponderance of the evidence: (1) but for age discrimination, his job would not have been terminated." Instead, this Court included reference to both a "substantial factor" and "but for" causation test in the jury instructions, while referencing only the substantial factor test in the special verdict form. It was error for this Court to treat the two causation standards interchangeably.

The U.S. Supreme Court has held on several occasions that the two standards are substantively different, in large part because under Title VII discrimination cases, the mixed-motives standard (*i.e.*, substantial or motivating factor) applies when there is direct evidence of discrimination, and thus places a burden on the employer that does not exist under a *but for* causation standard. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009) (rejecting

[4] In the alternative, even if this Court ultimately concludes that it has subject matter jurisdiction over the statutory claim, the award of punitive damages should still be vacated because such relief was only available under the NYCHRL, and Plaintiff waived his ability to pursue that claim by failing to plead a city-based cause of action. Indeed, Plaintiff initially pursued his age discrimination claim under Massachusetts ***state*** law, M.G.L. c. 151B. Plaintiff did not plead a claim under the NYCHRL, nor did he attempt to amend his pleadings when this Court ruled that New York law applied. Absent the appropriate modifications to Plaintiff's pleadings to reflect a city-based claim, this Court should not have treated Plaintiff's c. 151B claim as sounding under the NYCHRL any more than it could have theoretically transformed the c. 151B claim into one sounding under federal discrimination statutes. Accordingly, the appropriate analogue to Plaintiff's c. 151B claim is its New York ***state*** counterpart – the NYSHRL. Because that state-law claim does not carry with it the possibility of punitive damages, that portion of the award must be vacated.

motivating factor test of *Price Waterhouse* in favor of but for test in ADEA cases); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528-2530 (2013) (following *Gross* and applying but for to Title VII retaliation claims rather than motivating factor). Instructing the jury on two distinct causation standards likely caused confusion among the jurors during their deliberations.

Moreover, after instructing the jury on two separate causation standards as if they were interchangeable, this Court referenced ***only the incorrect standard*** in the special verdict form. For the reasons set forth in footnote 4, *supra*, it was the NYSHRL, not the NYCHRL, that should have furnished the substantive standards because Plaintiff waived his ability to proceed under any city-based statute by failing to plead such a claim. Pursuant to the NYSHRL, New York courts impose the *but for* standard because the "law governing ADEA claims has been held to be identical to that governing claims made under the NYSHRL." *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). "After *Gross* and *Gorzynski*, to show pretext in an ADEA or NYSHRL case, the plaintiff must demonstrate that a reasonable jury could find that the plaintiff's age was the 'but for' cause of the adverse employment action." *Colon v. Trump Int'l Hotel & Tower*, 2011 WL 6092299, at *7 (S.D.N.Y. Dec. 7, 2011). Because the special verdict form did not reflect this standard, a new trial is required. *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (erroneous instruction on burden of proof "not harmless error because it goes directly to the plaintiff's claim, and a new trial is warranted.").

B. <u>This Court Erred By Omitting a "Clear and Convincing Evidence" Standard From the Jury Instructions and Special Verdict Form</u>

Equally prejudicial was the potential for jury confusion with respect to the proper standard to be applied to Plaintiff's request for punitive damages. In C&W's proposed jury instructions, as well as during the charge conference, C&W specifically requested an instruction requiring ***clear and convincing*** evidence to support a punitive damage award. This Court erred by declining to deliver such an instruction.

The available authority in New York favors application of a clear and convincing threshold of evidence for purposes of punitive damages.[5] As discussed in the comments to the New York Pattern Jury Instruction on punitive damages, the charge contains no "statement of the standard of proof" because the intermediate appellate courts in New York "are split on the issue." *See In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 127 n. 49 (2d Cir. 2013).[6] However, the Appellate Departments with jurisdiction over New York City each apply the heightened standard. The First Department, based in Manhattan, applies a "clear, unequivocal and convincing evidence" standard to punitive damages claims. *Munoz v. Perutz*, 301 A.D.2d 382, 384 (N.Y. App. Div. 2003). The Second Department, based in Brooklyn, has held that a trial court "erred in failing to charge the jury that the standard of proof regarding the imposition of punitive damages was clear and convincing evidence." *Randi A.J. v. Long Island Surgi-Ctr.*, 46 A.D.3d 74, 86 (N.Y. App. Div. 2007).

As instructed in the comments to the pattern charge, until "the issue is definitively resolved by the Court of Appeals, trial judges should charge the standard of proof applicable in the Department in which the case is tried." Here, however, this Court erroneously applied the standard of the Fourth Department, instead of the law of the First or Second Departments that include New York City. The failure to instruct the jury on the proper standard of proof for punitive damages warrants a new trial. *See, e.g., Putnam Resources v. Pateman*, 958 F.2d 448, 471 (1st Cir. 1992) ("As a general proposition, we are confident that application of the wrong standard of proof, if the variance was substantial and worked to the detriment of the losing party, will ordinarily require retrial.").

[5] The case authority ostensibly relied upon by the Court is not to the contrary because it addresses only ***what*** a plaintiff must prove to obtain punitive damages, not ***the level*** to which the claim must be proven. *See Johnson v. Strive E. Harlem Employment Group*, 990 F. Supp. 2d 435 (S.D.N.Y. 2014). The *Johnson* holding therefore has no bearing on the level of evidence required to support a punitive damages award.

[6] In 2016, this issue was certified by the Second Circuit to the New York Court of Appeals, and the matter remains pending before that court. *See Chauca v. Abraham*, 841 F.3d 86 (2d Cir. 2016).

C. This Court Erred by Refusing to Include a Preliminary Question for the Jury to Clarify the Proper Standard and Elements for an Award of Punitive Damages

During the charge conference, C&W requested that the following question be included in the special verdict form: "[d]id Yury Rinsky prove by clear, unequivocal and convincing evidence that Cushman & Wakefield's acts were wanton and reckless and malicious, thereby warranting an award of punitive damages, yes or no?" It was error to exclude this preliminary question from the special verdict form.

It is well-established in New York that a plaintiff must prove additional elements in order to become entitled to punitive damages. Specifically, the New York Pattern Jury Instructions require a plaintiff to prove that the acts of a defendant are wanton, reckless and/or malicious. Although this Court instructed the jury properly on this point, it was nonetheless erroneous to reject C&W's request to repeat those same elements in the special verdict form. While the "formulation of special verdict questions rests in the discretion of the trial judge," federal courts "will reverse a judgment entered upon answers to questions which mislead and confuse the jury or which inaccurately frame the issues to be resolved by the jury." *Cann v. Ford Motor Co.*, 658 F.2d 54, 58 (2d Cir. 1981). Here, the jury was likely confused by the inclusion of a line item for punitive damages without clarification that such an award requires clear, unequivocal and convincing evidence of wanton, reckless and/or malicious conduct. That confusion led directly to an award of $850,000 in punitive damages. In these circumstances, the judgment should be vacated by this Court in favor of a new trial.

## CONCLUSION

WHEREFORE, for the foregoing reasons, C&W respectfully requests that this Court enter judgment as a matter of law for C&W on Plaintiff's claims pursuant to Fed. R. Civ. P. 50(b), or, alternatively, order a new trial pursuant to Fed. R. Civ. P. 59(a). In the event that this Court determines that subject matter jurisdiction is lacking, the action should be dismissed in its entirety with prejudice.

Respectfully Submitted,

**CUSHMAN & WAKEFIELD, INC.,**

By its attorneys,

/s/ Benjamin M. McGovern
Robert R. Berluti, Esq. (BBO# 039960)
Edward F. Whitesell, Jr., Esq. (BBO# 644331)
Michael A. Bednarz, Esq. (BBO# 689047)
BERLUTI MCLAUGHLIN & KUTCHIN LLP
44 School Street, 9th Floor
Boston, MA 02108
Phone: 617-557-3030
Fax: 617-557-2939
rberluti@bmklegal.com
ewhitesell@bmklegal.com
mbednarz@bmklegal.com

Ralph T. Lepore, III, Esq. (BBO# 294420)
Benjamin M. McGovern, Esq. (BBO# 661611)
HOLLAND & KNIGHT LLP
10 Saint James Avenue, 11th Floor
Boston, MA 02116
Phone: 617-619-9210
Fax: 617-523-6850
ralph.lepore@hklaw.com
benjamin.mcgovern@hklaw.com

Date: May 25, 2017

## **CERTIFICATE OF SERVICE**

I, Benjamin M. McGovern, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 25th day of May, 2017.

*/s/ Benjamin M. McGovern*
Benjamin M. McGovern

Dated: May 25, 2017