**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| YURY RINSKY,<br><br>Plaintiff,<br><br>v.<br><br>CUSHMAN & WAKEFIELD, INC.,<br><br>Defendant. | C.A. No. 16-10403<br><br>**[LEAVE TO FILE GRANTED ON JUNE 15, 2017]** |

# REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

CUSHMAN & WAKEFIELD, INC.,

By its attorneys,

Robert R. Berluti, Esq. (BBO# 039960)
Edward F. Whitesell, Jr., Esq. (BBO# 644331)
Michael A. Bednarz, Esq. (BBO# 689047)
BERLUTI MCLAUGHLIN & KUTCHIN LLP
44 School Street, 9th Floor
Boston, MA 02108
Phone: 617-557-3030
Fax: 617-557-2939
rberluti@bmklegal.com
ewhitesell@bmklegal.com
mbednarz@bmklegal.com

Ralph T. Lepore, III, Esq. (BBO# 294420)
Benjamin M. McGovern, Esq. (BBO# 661611)
HOLLAND & KNIGHT LLP
10 Saint James Avenue, 11th Floor
Boston, MA 02116
Phone: 617-619-9210
Fax: 617-523-6850
ralph.lepore@hklaw.com
benjamin.mcgovern@hklaw.com

Date: June 19, 2017

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................................1

ARGUMENT ...............................................................................................................2

I. THIS COURT LACKS SUBJECT MATTER JURISDICTION TO ENTER JUDGMENT AGAINST C&W BASED ON THE JURY VERDICT ..............................2

A. THE *HOFFMAN* "IMPACT" TEST IS A JURISDICTIONAL DEFENSE ..............................2

B. C&W IS NOT JUDICIALLY ESTOPPED ......................................................................3

C. PLAINTIFF MISCHARACTERIZES THE HOLDINGS OF *HOFFMAN* AND ITS PROGENY ....................................................................................................................4

II. C&W'S RULE 50(B) ARGUMENTS ARE NOT PRECLUDED BY THIS COURT'S SUMMARY JUDGMENT DECISION ................................................6

III. C&W'S POST-TRIAL ARGUMENTS DO NOT ASK THIS COURT TO WEIGH EVIDENCE IMPROPERLY ...................................................................8

IV. PLAINTIFF MISCHARACTERIZES C&W'S ARGUMENTS REGARDING THE "BUT FOR" CAUSATION TEST UNDER THE NYSHRL ..................................9

V. PUNITIVE DAMAGES UNDER THE NYCHRL REQUIRE "CLEAR AND CONVINCING" EVIDENCE ...............................................................................9

VI. C&W'S MOTIONS ARE SUPPORTED BY THE TRIAL RECORD ...........................11

CONCLUSION ...........................................................................................................12

## INTRODUCTION

In its post-trial motions, C&W[1] identified a serious jurisdictional defect, critical gaps in the Plaintiff's evidence, and other dispositive errors that justify dismissal of this lawsuit, reversal of the judgment or, at minimum, a new trial. Plaintiff's oppositions refuse to address these issues on the merits. Instead, Plaintiff resorts to mischaracterizations, and sometimes distortions, of applicable law and C&W's arguments in an effort to protect the judgment.

Although Plaintiff expediently insists the "impact" test under the NYCHRL is a Rule 12(b)(6) defense, New York courts uniformly treat City-based impact as a requirement for ***subject matter jurisdiction***. Nor is C&W judicially estopped from raising this argument because estoppel cannot create jurisdiction where none exists. Plaintiff fails to establish estoppel in any event.

Plaintiff also misapplies the law by suggesting that denial of summary judgment at the trial court level precludes relief under Rule 50(b), when it is well-established that only circuit court precedent is sufficient to have such preclusive effect. Plaintiff also falsely accuses C&W of asking this Court to improperly weigh evidence and impose a "but for" standard under the NYCHRL. To the contrary, as is evident from the plain language of its prior filings, C&W: (1) properly limited its request for a "weighing" of the evidence to its Rule 59 motion; and (2) argues in favor of "but for" causation under the NYSHRL, not the NYCHRL. Finally, contrary to Plaintiff's assertions, this Court should apply the "clear and convincing" standard for punitive damages endorsed by New York City-based appellate courts because, assuming *arguendo* it does not destroy the Court's subject matter jurisdiction, the NYCHRL requires an impact within the borders of the City and the cases cited by Plaintiff are easily distinguishable.

[1] Capitalized terms shall be defined for purposes of this reply memorandum as those same terms are defined in C&W's opening memorandum. *See* Dkt. No. 76.

Nothing in Plaintiff's oppositions disturb the conclusion this Court lacks subject matter jurisdiction. Even if it had jurisdiction, which it does not, the judgment should be reversed or vacated because of insufficient evidence and/or prejudicial errors tainting the verdict. For these reasons, and as more particularly described below, C&W's post-trial motions should be granted.

## ARGUMENT

### I. THIS COURT LACKS SUBJECT MATTER JURISDICTION TO ENTER JUDGMENT AGAINST C&W BASED ON THE JURY VERDICT

#### A. The *Hoffman* "Impact" Test Is a Jurisdictional Defense

Plaintiff insists disingenuously that the "impact" test for NYCHRL claims is a Rule 12(b)(6) defense. *See* Dkt. No. 77, at 8 ("…[C&W] attempts to make a failure to state a claim argument under the guise of subject matter jurisdiction…."). This argument has no merit.

In the very decision in which this test was first established, the New York Court of Appeals explicitly stated the requirement to "plead and prove that the alleged discriminatory conduct had an impact" within New York City represents an issue of ***subject matter jurisdiction***. *See Hoffman*, 933 N.E.2d at 748 (holding that trial court "properly dismissed [plaintiff's] age discrimination claim for want of subject matter jurisdiction."); *see also Wexelberg v. Project Brokers, LLC*, No. 13 Civ. 7904, 2014 WL 2624761, at * 10 (S.D.N.Y. 2014) (lack of impact in New York City is finding "that would, according to the New York Court of Appeals, trigger an absence of subject matter jurisdiction…."); *Benham v. eCommission Solutions, LLC*, 118 A.D. 3d 605, 606 (N.Y. App. Div. 2014) (dismissing NYCHRL claim based on "lack of subject matter jurisdiction").

Plaintiff's effort to mischaracterize C&W's argument as a "waived" Rule 12(b)(6) defense is unavailing. The jury's verdict necessarily requires that Plaintiff felt the impact of his termination in Massachusetts, not New York, and this deprives this Court of subject matter jurisdiction. This

jurisdictional defense was not waived and it could not be waived. *See, e.g., Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Pursuant to Rule 12(h)(3), this action ***must*** be dismissed.[2]

B. C&W Is Not Judicially Estopped

Plaintiff is also incorrect that C&W is judicially estopped from raising *Hoffman's* jurisdictional bar. This is because "judicial estoppel or waiver by the parties is not available for the purpose of creating subject matter jurisdiction where it does not exist…." *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, 76 F. Supp. 3d 321, 329 (D. Mass. 2015); *accord Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1228 (10th Cir. 2011) (refusing to "allow judicial estoppel to substitute for subject-matter jurisdiction."). Plaintiff cannot avoid an evaluation of whether this Court has subject matter jurisdiction by arguing C&W has previously taken an inconsistent position. Subject matter jurisdiction is an issue that can be raised at any time.

Even if judicial estoppel could override subject matter jurisdiction (which C&W does not concede), Plaintiff still fails to establish it should apply here. A proponent of judicial estoppel must establish: (1) that a party's "earlier and later positions" are "clearly inconsistent"; and (2) the party "succeeded" in "persuading a court to accept" the earlier position. *See Knowlton v. Shaw*, 704 F.3d 1, 10 (1st Cir. 2013). Here, Plaintiff fails to establish either of these elements.

There is no inconsistency between C&W's position that choice of law principles favored application of New York law, but the jury's verdict later eliminated subject matter jurisdiction over the NYCHRL claim. This is because a choice of law analysis requires a court to consider and balance several factors, including: "'the place where the injury occurred,' 'the place where the conduct causing the injury occurred,' 'the domicile, residence, nationality, place of incorporation

[2] It is also for this reason that Plaintiff's extensive reliance on *Brule v. Southworth*, 611 F.2d 406 (1st Cir. 1979) is misplaced. *See* Dkt. No. 77, at 7-8. *Brule* stands for the unremarkable proposition that a defendant can waive a ripeness defense because it relates to the failure to state the elements of a claim, and not a lack of subject matter jurisdiction. *See* 611 F.2d at 409. The situation here is fundamentally different because New York courts have made it abundantly clear that the "impact" requirement is jurisdictional. *See Hoffman*, 933 N.E.2d at 748.

and place of business of the parties,' and 'the place where the relationship, if any, between the parties is centered.'" *See Cornwell Ent., Inc. v. Anchin, Block & Anchin, LLP*, 830 F.3d 18, 34 (1st Cir. 2016). On the other hand, the *Hoffman* test asks ***only*** "where the impact of the alleged discriminatory conduct is felt" to assess jurisdiction. *See, e.g.*, *Hardwick v. Auriemma*, 116 A.D. 3d 465, 467 (N.Y. App. Div. 2014). It is therefore not "clearly inconsistent" for C&W to argue, first, that New York had the "most significant" relationship to Plaintiff's claims based on several choice of law factors and, later, the jury verdict deprived this Court of subject matter jurisdiction by determining the "impact" of Plaintiff's termination was felt in Massachusetts.[3]

Nor is Plaintiff correct that C&W persuaded this Court to accept its position regarding application of the NYCHRL. Just the opposite is true. C&W clearly argued against the jury's consideration of that statute during the following colloquy on the second day of trial:

> MR. BERLUTI: … C&W objects to the [NYCHRL] being applied … Our position on this is what was pled was state law claims. [Plaintiff] availed himself of the MCAD. He availed himself of MGL 151B. These are state law claims. There is a New York counterpart to MGL 151B, and that is the New York State Human Rights Law … [I]t would be the state law claims that would be the analog to the Massachusetts claims that have been pled.
>
> THE COURT: Okay. That wasn't clear. So thank you.

Trial Tr. (Day 2), at 40-41. Accordingly, far from arguing that New York law should apply for all purposes, C&W clearly objected to application of the NYCHRL. This Court overruled that objection and judgment ultimately entered on the NYCHRL claim. Accordingly, application of judicial estoppel is not available to Plaintiff because C&W's objection was overruled by the Court.

C. Plaintiff Mischaracterizes the Holdings of *Hoffman* and Its Progeny

To avoid dismissal, Plaintiff cites *Robles v. Cox and Co., Inc.* for the proposition that "a plaintiff's residence is irrelevant to the impact analysis." *See* Dkt. No. 78, at p. 12. This is a

[3] *See* C&W's Supplemental Trial Brief (Dkt. No. 45), at 3 ("The only connection that Massachusetts has to this case is the fact that Plaintiff chose to move there, and did so. New York has the most significant relationship to the case.").

misstatement of New York law. Although the portion of the *Robles* decision cited by Plaintiff purports to quote from *Hoffman*, the quoted language regarding a plaintiff's residence does not appear anywhere in the *Hoffman* decision.[4] To the contrary, *Hoffman* itself relied on the fact that the terminated employee was not a "resident of" New York as a factor negating application of the NYCHRL. *See* 15 N.Y. 3d at 292. Similarly, post-*Hoffman* decisions reiterate that subject matter jurisdiction under the NYCHRL "turns primarily on [plaintiff's] physical location at the time of the alleged discriminatory acts…." *See Benham*, 118 A.D.3d at 606; *see also Hardwick*, 116 A.D. at 467 ("[T]he place where the impact of the alleged discriminatory conduct is felt [ ] controls whether the Human Rights laws apply ….").  Plaintiff is, therefore, incorrect to suggest this Court should disregard his Massachusetts residence as part of the jurisdictional analysis.

Moreover, the result would be the same even if residence was disregarded. The *Robles* opinion acknowledges where the "alleged discriminatory act takes place outside of New York City, the relevant location of the injury for purposes of the impact analysis is … Plaintiff's place of employment." 841 F. Supp. 2d at 625 (dismissing NYCHRL claim where plaintiff lived in New York City but was terminated while working in Plainview, New York); *see also Wexelberg*, 2014 WL 2624761, at *10 (the "impact test means that an out-of-state resident may be covered only if he worked … in the City."). Here, Plaintiff tried his case to the jury based on a theory C&W granted him permission to become an employee of the Massachusetts office. He also testified that May 22, 2015 was his "last day" at the New York City headquarters.[5] Thus, Plaintiff identified his "place of employment" as Massachusetts by the time he was terminated in July 2015, meaning he felt the "impact" of the termination outside of New York City.

---

[4] *Robles* is also unpersuasive to the extent it relies heavily on a series of decisions that pre-date *Hoffman*'s adoption of the impact test. *See* 841 F. Supp. 2d at 624-25.

[5] In this regard, Plaintiff mischaracterizes his own trial theory by suggesting in his opposition that he "began to perform work ***for*** the New York City headquarters remotely from the Boston area while awaiting office space and equipment." *See* Dkt. No. 78, at 12 (emphasis supplied).

This is also the reason why Plaintiff's reliance on *Wexelberg* is misplaced. In *Wexelberg*, the plaintiff worked at the defendant's New York City office for the "first six weeks of his eleven-week stint," and was then "directed to work remotely from his home in New Jersey." 2014 WL 2624761, at *10. Based on those facts, the *Wexelberg* court denied defendant's motion to dismiss because, at that preliminary stage, it was concerned that defendants could evade NYCHRL liability "[b]y the simple stratagem of ***directing*** a targeted employee to do his work at home rather than at the New York office where he normally works, and then terminat[e] him a few days or weeks later …" *Id.*, at *11 (emphasis supplied). The situation here is fundamentally different.

There was absolutely no evidence at trial that C&W ***directed*** Plaintiff to work remotely for the New York office from his home in Massachusetts. Rather, Plaintiff left the New York office on his own volition as of May 22, 2015, because, as he claims, C&W allegedly granted ***his*** request to work as a Massachusetts-based employee. To be clear, Plaintiff himself maintains he was a C&W employee "working at an out-of-state office," rather than, as was the case in *Wexelberg*, an employee "working remotely from his home ***for*** the New York office." *See id.* (emphasis supplied). Plaintiff cannot establish subject matter jurisdiction under the NYCHRL in these circumstances.[6] Therefore, this lawsuit must be dismissed.

## II. C&W'S RULE 50(b) ARGUMENTS ARE NOT PRECLUDED BY THIS COURT'S SUMMARY JUDGMENT DECISION

Plaintiff's oppositions fundamentally misstate the law of the case doctrine. Relying on *Piesco v. Koch*, 12 F.3d 332 (2d Cir. 1993), Plaintiff contends that "[w]here summary judgment has been denied, 'the district court cannot properly grant judgment as a matter of law on the basis of trial evidence that is not substantially different.'" *See* Dkt. No. 77, at p. 3. In other words,

[6] Equally specious is Plaintiff's argument that C&W's alleged plans to terminate him while he was still working at the New York City office establishes an impact within the city. *See* Dkt. No. 78, at 12-13. This type of contention has been squarely rejected by New York courts. *See Wexelberg*, 2014 WL 2624761, at *10 (plaintiff cannot establish jurisdiction "based solely on the contention that the discriminatory decision was made within [New York].")

Plaintiff suggests that the denial of C&W's summary judgment motion precludes its current Rule 50(b) motion. This argument fails.

Although the standards for motions under Rule 50 and 56 mirror each other, "such that the inquiry under each is the same," *see, e.g., Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000), there is no merit to Plaintiff's theory that one necessarily has a preclusive effect on the other. Nothing in either rule supports this proposition. Moreover, such a result would be counterintuitive to the requirements of Rule 50(b), where relief is actually contingent upon the moving party having previously been denied Rule 50(a) relief under the exact same standard. This Court's summary judgment ruling, therefore, has no preclusive effect, particularly where, as here, there was evidence in the trial record not present in the summary judgment record.

Plaintiff's discussion of *Piesco* also takes its language out of context and turns a blind eye to a key aspect of the holding – ***who*** denied the summary judgment motion. In *Piesco*, the prior decision that precluded post-trial relief was issued by the Second Circuit, not the trial judge. 12 F.3d at 337, 339-42 ("By the same token, when ***we have reversed the granting of summary judgment***, the district court cannot properly grant judgment as a matter of law on the basis of trial evidence that is not substantially different.") (emphasis supplied). As such, *Piesco* stands for the ***limited*** proposition that a trial judge cannot evade a reversal of summary judgment by reinstating that relief on the same evidence through post-trial motions. *See Kerman v. City of N.Y.*, 374 F.3d 93, 109-10 (2d Cir. 2004) ("[D]istrict court cannot properly, on remand, grant judgment as a matter of law to that party on the basis of trial evidence that is not substantially different.").

By contrast, courts always enjoy the discretion to reconsider their ***own*** decisions. *Aramony v. United Way of America*, 254 F.3d 403, 410 (2d Cir. 2001) (court may reconsider its own prior decision in same case); *see also Sagendorf-Teal v. City of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996) (district court not constrained by law of the case doctrine in reconsidering denial of summary

judgment and granting subsequent motion to dismiss). Accordingly, in this context "application of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Id*. Because there is no ***appellate*** decision denying C&W's motion for summary judgment, this Court can and should reconsider the sufficiency of the evidence of discrimination under Rules 59(a) and 50(b). Here, such evidence is lacking.

## III. C&W's POST-TRIAL ARGUMENTS DO NOT ASK THIS COURT TO WEIGH EVIDENCE IMPROPERLY

Plaintiff erroneously suggests that C&W is asking the Court to improperly weigh the evidence in connection with the Rule 50(b) motion. For purposes of efficiency, C&W analyzed the sufficiency of the evidence of age discrimination under both Rule 50 and Rule 59 standards in its opening memorandum. *See generally* Dkt. No. 76. In the opening sentence of its argument, C&W accurately stated the standard for judgment as a matter of law and directly quoted Rule 50(b): "this Court may enter judgment as a matter of law if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for [Plaintiff] on that issue.'" *Id.* at 7. In the following paragraph, C&W referenced the more lenient standard for granting a new trial on evidentiary grounds under Rule 59, to the effect "the verdict is against the weight of the evidence." *Id.* And, throughout its arguments, C&W made clear it was seeking relief under both standards. *See, e.g., id.* at 9 ("Under either possible causation standard, the jury verdict in this case is unsupported ***and*** against the weight of the evidence.") (Emphasis supplied).

There should be no confusion here. In its Rule 50(b) motion, C&W argued there was ***no*** evidence of discrimination – Plaintiff was terminated because he refused to return to work.[7] Plaintiff's suggestion that C&W is asking this Court to improperly weigh evidence is untrue.

[7] C&W also anticipated Plaintiff's argument regarding a "waiver" of any Rule 50(b) relief for the award of punitive damages, and addressed it in its opening memorandum. *See* Dkt. No. 76, at n.2. There is therefore no merit to Plaintiff's suggestion that this argument has been waived. *See* Dkt. No. 77, at p. 5.

## IV. PLAINTIFF MISCHARACTERIZES C&W'S ARGUMENTS REGARDING THE "BUT FOR" CAUSATION TEST UNDER THE NYSHRL

In his opposition, Plaintiff claims to find it "beyond disturbing" C&W advocates for the "but for" test as the proper causation standard under the NYCHRL. *See* Dkt. No. 78, at 13 & n. 8. This completely mischaracterizes C&W's position. C&W's argument regarding the proper causation standard is based on case law under the NYSHRL, not the NYCHRL.

As demonstrated by the colloquy excerpted in Section I, *supra*, C&W's counsel objected to application of the NYCHRL during the second day of trial, and continued to advocate its position post-trial. *See* Dkt. No. 76, at 17 ("…it was the NYSHRL, not the NYCHRL, that should have furnished the substantive standards ….”). Similarly, C&W's post-trial arguments regarding the "but for" standard relate ***exclusively to the NYSHRL.*** *See id.* ("Pursuant to the NYSHRL, New York courts impose the *but for* standard…") ("…to show pretext in an ADEA or NYSHRL case, the plaintiff must demonstrate that a reasonable jury could find that the plaintiff's age was the 'but for' cause of the adverse employment action.").

In his oppositions, Plaintiff does not address C&W's actual arguments under the NY**S**HRL. Instead, he falsely accuses C&W of attempting to deceive the Court, and then devotes over two pages describing the causation standards developed under the NY**C**HRL. *See* Dkt. No. 78, at 13-15. Plaintiff's exaggerated misdirections should be rejected. Moreover, his failure to oppose C&W's arguments under the NYSHRL means it is undisputed this Court should have instructed the jury on the "but for" test for purposes of that statute. C&W is entitled to a new trial on this basis alone.

## V. PUNITIVE DAMAGES UNDER THE NYCHRL REQUIRE "CLEAR AND CONVINCING" EVIDENCE

The New York appellate departments are split regarding the question of "whether punitive damages must be shown by clear and convincing evidence or a preponderance of the evidence."

*See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 725 F.3d 65, 127 n. 49 (2d Cir. 2013). But, Plaintiff is wrong to suggest this Court should disregard the New York City-based First and Second Appellate Departments in attempting to predict how this split will be resolved.

This case is distinguishable from *Michalski v. Home Depot, Inc.* cited by Plaintiff. In *Michalski*, the Second Circuit determined that, in attempting to assess a split of authority regarding the open and obvious doctrine for premises liability, the trial court was not bound to follow the law that would have applied in the appellate department where "the accident occurred and where the suit was originally filed." 225 F.3d 113, 116-17 (2d Cir. 2000). However, the *Michalski* court was confronted with a garden-variety tort claim that could easily have occurred within the jurisdiction of any of the New York appellate departments. Here, by contrast, Plaintiff's NYCHRL claim could not have accrued *theoretically* in any New York geographic area outside the First or Second Departments because *Hoffman* requires an "impact" within the boundaries of New York City (*i.e.*, the geographic area covered by those departments).[8] Accordingly, there are factors in this case simply not present in *Michalski* that should lead this Court to take geography into account in determining the proper burden of proof for punitive damages under the NYCHRL.

Plaintiff is also not correct that *Greenbaum v. Svenska Handelsbanken* is dispositive in attempting to predict how this split might be resolved. *Greenbaum* was decided in 1997. *See* 979 F. Supp. 973 (S.D.N.Y. 1997). At that time, the court observed that "New York law on burden of proof in deciding punitive damages is unclear" because the state courts themselves "have not specifically addressed" the issue. *Id.* at 975. As a result, *Greenbaum* analyzed two cases from the New York Court of Appeals – decided in 1874 and 1920 – that reference the issue in passing, but ultimately decided those "cases raise more questions than they answer." *See id.* at 977-78. This situation has substantially changed since 1997.

[8] C&W continues to assert the alleged "impact" as effectively found by the jury, was in Massachusetts.

Specifically, the *Greenbaum* court did not have available to it the First and Second Appellate Department decisions cited in C&W's opening memorandum – issued in 2003 and 2007[9] – holding that punitive damages require clear and convincing evidence. This Court should give greater weight to more recent authority from New York appellate courts applying the clear and convincing evidence standard. *See Michalski*, 225 F.3d at 116 (holding of an intermediate state appellate court "is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.").

## VI. C&W's MOTIONS ARE SUPPORTED BY THE TRIAL RECORD

Plaintiff criticizes C&W for failing "to cite to the record even though it obtained daily transcripts." *See* Dkt. No. 78, at 1. This absence of citation was due in part to the space limitations imposed upon C&W in its opening memorandum, *see* Dkt. No. 71, and in part to the fact that the daily transcripts have not been finalized and filed with this Court officially. However, now that Plaintiff has filed those unofficial transcripts on the docket, *see* Dkt. Nos. 78-1 – 78-4, C&W provides this Court with the following summary of the evidence relied upon in its opening memorandum for the purpose of facilitating this Court's convenient review of the trial record:

| Page | Sentence Beginning | Record Citation |
|---|---|---|
| 3 | "Plaintiff was planning to…" | Trial Tr. (Pl's Testimony) at 61 (Day 2) |
| 3 | "When he accepted an…" | Trial Tr. (Pl's Testimony) at 76-77 (Day 2) |
| 3 | "According to Plaintiff…" | Trial Tr. (Pl's Testimony) at 79 (Day 2) |
| 3 | "Plaintiff closed on the…" | Trial Tr. (Pl's Testimony) at 43-44, 85, 90 (Day 2) |
| 3 | "Based on his belief…" | Trial Tr. (Pl's Testimony) at 84 (Day 2) |
| 3-4 | "In reality, that request…" | Trial Tr. (Maiorini Testimony) at 379-380 (Day 3) |
| 4 | "Once the decision…" | Trial Tr. (Reid Testimony) at 505 (Day 4) |
| 4 | "According to Plaintiff…" | Trial Tr. (Pl's Testimony) at 101 (Day 2) |
| 4 | "Mr. Maiorini testified…" | Trial Tr. (Maiorini Testimony) at 400 (Day 3) |
| 4 | "Mr. Hamilton told…" | Trial Tr. (Pl's Testimony) at 104 (Day 2) |
| 4 | "Plaintiff rejected this…" | Trial Tr. (Pl's Testimony) at 103 (Day 2) |
| 4 | "Although he was…" | Trial Tr. (Pl's Testimony) at 104-07, 195, 201 (Day 2) |

[9] *See Randi A.J. v. Long Island Surgi-Ctr.*, 46 A.D.3d 74, 86 (N.Y. App. Div. 2007); *Munoz v. Perutz*, 301 A.D.2d 382, 384 (N.Y. App. Div. 2003).

| Page | Sentence Beginning | Record Citation |
|---|---|---|
| 4 | "In response, Ms. Hicks …" | Trial Tr. (Pl's Testimony) at 108 (Day 2) & (Hicks Testimony) at 344 (Day 3) |
| 4 | "Plaintiff then provided…" | Trial Ex. 44; Trial Tr. (Pl's Testimony) at 109, 198-99 (Day 2) |
| 4 | "Ms. Hicks opened an…" | Trial Ex. 59; Trial Tr. (Pl's Testimony) at 112 (Day 2); Trial Tr. (Hicks Testimony) at 296-99, 308-309, 312-14, 346 (Day 3) |
| 4 | "Ultimately, C&W found…" | Trial Ex. 66 |
| 4 | "He was therefore…" | Trial Ex. 66 |
| 5 | "More pointedly, Plaintiff…" | Trial Tr. (Pl's Testimony) at 148, 149 (Day 2) |
| 5 | "Similarly, Plaintiff…" | Trial Tr. (Pl's Testimony) at 149 (Day 2) |
| 5 | "Mr. Reid testified…" | Trial Tr. (Reid Testimony) at 526-27 (Day 4); Trial Tr. (Hicks Testimony) at 346 (Day 3) |
| 5 | "He similarly recalled…" | Trial Tr. (Reid Testimony) at 526 (Day 4) |
| 5 | "For her part, Ms. Hicks…" | Trial Tr. (Hicks Testimony) at 348 (Day 3) |
| 5 | "At that time, Ms. Hicks…" | Trial Tr. (Hicks Testimony) at 218 (Day 2) and 266 (Day 3) |
| 5 | "At the time of Plaintiff's…" | Trial Ex. 77; Trial Tr. (Hicks Testimony) at 324-26 (Day 3) |
| 5 | "Similarly, in his June…" | Trial Ex. 47; Trial Tr. (Pl's Testimony) at 150-51 (Day 2) |
| 6 | "In March 2015…" | Trial Ex. 4; Trial Tr. (Reid Testimony) at 508 (Day 4) |
| 6 | "On April 1, 2015…" | Trial Tr. (Reid Testimony) at 508 (Day 4); Trial Tr. (Pl's Testimony) at 133 (Day 2) |
| 6 | "For example, Anna…" | Trial Tr. (Pl's Testimony) at 95, 144 (Day 2) |
| 6 | "Similarly, Mr. Reid…" | Trial Tr. (Reid Testimony) at 515 (Day 4); Trial Tr. (Pl's Testimony) at 46-47 (Day 2) |
| 6 | "Although not originally…" | Trial Tr. (Reid Testimony) at 522 (Day 4) |
| 6 | "As Mr. Reid testified…" | Trial Tr. (Reid Testimony) at 522 (Day 4) |
| 6 | "Plaintiff testified…" | Trial Tr. (Pl's Testimony) at 99 (Day 2) |
| 6 | "Mr. Felix had never…" | Trial Tr. (Maiorini Testimony) at 408 (Day 3) |
| 6 | "Mr. Felix was initially…" | Trial Tr. (Reid Testimony) at 522-523 (Day 4) |
| 6 | "Projecting a forty-hour…" | Trial Tr. (Maiorini Testimony) at 423 (Day 3) |
| 7 | "Despite being of a…" | Trial Tr. (Reid Testimony) at 489-90, 515-17 (Day 4) |

## CONCLUSION

WHEREFORE, for the foregoing reasons, and for the reasons stated in its opening memorandum, C&W respectfully requests that this Court dismiss Plaintiff's claims for lack of subject matter jurisdiction or, alternatively, enter judgment as a matter of law for C&W on Plaintiff's claims pursuant to Fed. R. Civ. P. 50(b) or, alternatively, order a new trial pursuant to Fed. R. Civ. P. 59(a).

Respectfully Submitted,

**CUSHMAN & WAKEFIELD, INC.,**

By its attorneys,

/s/ Benjamin M. McGovern
Robert R. Berluti, Esq. (BBO# 039960)
Edward F. Whitesell, Jr., Esq. (BBO# 644331)
Michael A. Bednarz, Esq. (BBO# 689047)
BERLUTI MCLAUGHLIN & KUTCHIN LLP
44 School Street, 9th Floor
Boston, MA 02108
Phone: 617-557-3030
Fax: 617-557-2939
rberluti@bmklegal.com
ewhitesell@bmklegal.com
mbednarz@bmklegal.com

Ralph T. Lepore, III, Esq. (BBO# 294420)
Benjamin M. McGovern, Esq. (BBO# 661611)
HOLLAND & KNIGHT LLP
10 Saint James Avenue, 11th Floor
Boston, MA 02116
Phone: 617-619-9210
Fax: 617-523-6850
ralph.lepore@hklaw.com
benjamin.mcgovern@hklaw.com

Date: June 19, 2017

**CERTIFICATE OF SERVICE**

I, Benjamin M. McGovern, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 19th day of June, 2017.

*/s/ Benjamin M. McGovern*
Benjamin M. McGovern

Dated: June 19, 2017