UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

YURY RINSKY,                         *
                                     *
            Plaintiff,               *
                                     *
      v.                             *
                                     *        Civil Action No. 16-cv-10403-ADB
                                     *
CUSHMAN & WAKEFIELD, INC.,           *
                                     *
            Defendant.               *
                                     *

**MEMORANDUM AND ORDER**
**DENYING DEFENDANT'S POST-TRIAL MOTIONS**

BURROUGHS, D.J.

        Plaintiff Yury Rinsky filed this case in Massachusetts state court in January 15, 2016,

alleging that Defendant Cushman & Wakefield, Inc., his former employer, discriminated against

him based on his age and disability. [ECF No. 1-1 at 5–13]. Defendant removed the case to this

Court on February 25, 2016, invoking the Court's diversity jurisdiction. [ECF No. 1]. After a

five-day jury trial, on April 14, 2017, the jury returned a verdict finding that Plaintiff's age was a

substantial factor in Defendant's decision to terminate him, but that Plaintiff's disability, if any,

was not a substantial factor in the decision to terminate. [ECF No. 60]. The jury awarded

Plaintiff $290,000 in back pay, $135,000 in front pay, $850,000 in punitive damages, and

nothing for emotional distress, resulting in a total award of $1,275,000. Id. Now before the Court

are Defendant's renewed motion for judgment as a matter of law pursuant to Fed. R. Civ. P.

50(b) [ECF No. 74] and its motion for a new trial under Fed. R. Civ. P. 59(a) [ECF No. 75]. For

the reasons set forth below, both motions are denied.

**I.      STANDARD OF REVIEW**

        Defendant's Rule 50 motion for judgment as a matter of law is based on the contention

that the evidence was not sufficient to support the jury's verdict. "A party seeking to overturn a jury verdict faces an uphill battle." Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005). "Courts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Id. (quoting Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 9 (1st Cir. 2004)). In evaluating a motion for judgment as a matter of law, the Court must consider "the evidence presented to the jury, and all reasonable inferences that may be drawn from such evidence, in the light most favorable to the jury verdict." Osorio v. One World Techs. Inc., 659 F.3d 81, 84 (1st Cir. 2011) (quoting Granfield v. CSX Transp., Inc., 597 F.3d 474, 482 (1st Cir. 2010)).

In contrast, the Court's power to grant a Rule 59 motion for a new trial "is much broader than its power to grant a [motion for judgment as a matter of law]." Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009). The Court may grant a motion for a new trial "if the verdict is against the demonstrable weight of the credible evidence," or if it "results in a blatant miscarriage of justice." Foisy v. Royal Maccabees Life Ins. Co., 356 F.3d 141, 146 (1st Cir. 2004) (quoting Sanchez v. P.R. Oil Co., 37 F.3d 712, 717 (1st Cir. 1994)). "The district court may 'independently weigh the evidence' in deciding whether to grant a new trial." Cham v. Station Operators, Inc., 685 F.3d 87, 97 (1st Cir. 2012) (quoting Jennings, 587 F.3d at 435). "[A] district court wields 'broad legal authority' when considering a motion for a new trial . . . ." Jennings, 587 F.3d at 436 (quoting de Pérez v. Hosp. del Maestro, 910 F.2d 1004, 1006 (1st Cir.1990)). At the same time, a "district judge cannot displace a jury's verdict merely because [she] disagrees with it' or because 'a contrary verdict may have been equally . . . supportable.'" Id. (quoting Ahern v. Scholz, 85 F.3d 774, 780 (1st Cir. 1996)). "[W]hen an argument that the evidence was

insufficient forms the basis of a motion for new trial, the district court is generally well within the bounds of its discretion in denying the motion using the same reasoning as in its denial of a motion for judgment as a matter of law." Lama v. Borras, 16 F.3d 473, 477 (1st Cir. 1994).

## II.     EVIDENCE AT TRIAL

In reaching its verdict, the jury could have found the following facts, based on the evidence presented at trial.[1]

Plaintiff began working for Defendant in New York City in 1988. From 2009 to 2015, he was employed as a software engineer specializing in the AS/400 computer system. In 2012, Defendant instructed Plaintiff to work remotely part time due to a lack of space in the New York City office, so from 2012 to 2015, Plaintiff worked remotely three to four days a week, spending only one or two days per week in the office. Defendant did not impose any restrictions as to where Plaintiff performed remote work, and sometimes Plaintiff would work remotely from Boston while visiting his daughter. During this time, Plaintiff continued to receive excellent annual performance reviews.

Plaintiff learned in March 2015 that his supervisor, Colin Reid, was transferring from New York to Miami. Later the same month, Plaintiff asked Reid if he could transfer to Boston. Reid responded that he was too busy to discuss it at the time, but that they could talk about it later. In April 2015, Plaintiff informed Reid that he had sold his house, but with the option to continue living in it after the sale went through. Plaintiff again requested permission to transfer to Boston. Reid said he was willing to allow Plaintiff to transfer, especially given the fact that Plaintiff was already working remotely half of the time, although he would have to check with

---

[1] While the Court is not required to weigh evidence or draw inferences in favor of the jury's verdict for purposes of a Rule 59 motion, in this case, the Court does not believe that the verdict is against the weight of the evidence or that the jury erred in making the credibility determinations or drawing the inferences that it did.

his manager, Andrew Hamilton. A few days later, Plaintiff asked Reid if he had spoken to Hamilton yet; Reid responded that he had not. Approximately four days later, in mid-April 2015, Plaintiff asked again, and Reid responded that Hamilton had said it was "no problem" for Plaintiff to work out of the Boston office. Plaintiff asked Reid what the next steps were, and Reid responded that the chief information officer would need to arrange for a cubicle for Plaintiff in the Boston office. At this point, Plaintiff understandably believed that his transfer to Boston had been approved.

On Sunday, May 17, 2015, Plaintiff sent an email to Reid in which he stated that he planned to move to Boston on Wednesday, May 27, and asked to take four personal days off near that time. Reid responded, "Okay. We will talk on Tuesday [May 19]." When Plaintiff spoke with Reid on May 19, they discussed logistical matters such as his equipment and who would be Plaintiff's contact in the Boston office. When Plaintiff offered to come to the New York office one day per week, Reid stated that might not be necessary, and that Plaintiff would likely only have to come to New York occasionally, as needed, or possibly at the end of each month, when the workload was the heaviest. Plaintiff's last day in the New York office was May 22. On that day, he met with Reid to discuss his current projects and what he would work on in June. Plaintiff also said goodbye to his coworkers in the New York office, and told them he was transferring to Boston.

Throughout the time period at issue, neither Reid nor any other individual mentioned to Plaintiff that Defendant had a specific process for handling transfer requests, nor did anyone tell Plaintiff that any other authorization or additional steps were required beyond obtaining permission from Reid and Hamilton. As far as Plaintiff knew, Defendant did not have any official or unofficial policies concerning transferring offices. Prior to his departure, nobody told

Plaintiff that his transfer request was still pending, that there was any problem with it, that it was not approved, or that he might lose his job if he moved.

Plaintiff began working from Boston on May 28. Shortly thereafter, an employee of Defendant who managed computer inventory emailed Plaintiff to ask if he still needed his desktop computer, which was in New York. Plaintiff replied, copying Reid, that he would need it in a couple weeks once he was assigned a cubicle in the Boston office. Reid sent an email in response, copying Hamilton, stating that Plaintiff might be getting new equipment in Boston, because a consultant would be sitting at Plaintiff's previous space in New York. Plaintiff performed his work remotely during the first few weeks of June. He communicated regularly with Reid, who never mentioned any issues concerning the transfer.

Plaintiff was invited to participate in a conference call on June 22, 2015 with Reid, Hamilton, and a representative from HR, Katrina Hicks. During the call, Hamilton informed Plaintiff that he would be required to be physically present in the New York office five days per week, beginning the following day. Hamilton also stated that it would be in Plaintiff's best interest to resign, which Plaintiff declined to do. After the call ended, Reid sent an email, with a draft resignation letter attached, to Plaintiff, copying Hamilton and Hicks, that stated, "this is the response that HR is expecting from you based on our conversation this morning."[2] The proposed text included this statement: "After informing you of my decision to relocate and understanding the need for my role is located in [Defendant's] New York office, I have decided not to continue my employment." Plaintiff refused to submit the proposed resignation letter. The next day, Plaintiff lost access to the AS/400 system, and after a period of review, on July 14, 2015, Reid

_____

[2] The email misspelled Plaintiff's first name as "Yuri," even though Reid had worked with Plaintiff for 27 years. In addition, Hicks stated that she worked with Reid and a "partnership" of others to prepare the letter terminating Plaintiff's employment, although the letter did not indicate that anyone other than Reid was involved in its preparation.

sent an email to Plaintiff stating that he had been terminated.

Unbeknownst to Plaintiff, Defendant had formulated a plan to hire a replacement and then terminate Plaintiff even before Plaintiff moved to Boston. On May 14, 2015, Reid sent an email to Hamilton asking him to "think through the options and risks of replacing [Plaintiff] (via contractor or permanent role) so we can evaluate all the pros and cons of keeping and replacing."[3] Reid and Hamilton had a meeting to discuss the matter on May 19. On May 20, Reid contacted Edgardo Felix, Plaintiff's eventual replacement, to ask if he was interested in working for Defendant, and to inquire as to whether he had experience with the AS/400 system. On May 27, Hamilton sent an email to Leif Maiorini, his supervisor, who was a senior managing director for Defendant. The email explained that Hamilton, Reid, and Hicks had agreed on a plan to onboard Plaintiff's replacement, transfer knowledge from Plaintiff to his replacement, retain Plaintiff for about nine weeks, and then work with Hicks on the "official exit (mitigating litigation risks)." Felix was hired as a contractor to work on the AS/400 system in early June. For several weeks leading up to the June 22 phone call with Plaintiff, Reid, Hamilton, Maiorini, Hicks, and Craig Cuyar, the head of the department, corresponded via email about when to conduct what they referred to as Plaintiff's "termination" or "separation," depending on the progress of the knowledge transfer and Plaintiff's work on key tasks.

During the time at issue, Defendant did not maintain a formal process for evaluating employee transfer requests, and there was no written policy concerning transfers. Instead, transfer requests were discussed verbally by the managers involved, as well as HR. Maiorini testified that, in general, the process was that an employee would make a verbal transfer request

---

[3] The header of the email indicates that it was sent by Reid to Hamilton, and Reid testified that he sent the email, but the body of the email is addressed to Reid from Hamilton, and based on the content, it appears more likely that Hamilton was the sender. The email's relevance to the case is essentially the same either way, however.

to his or her manager, and then the manager would be responsible for discussing the request with the other, more senior individuals whose approval was necessary. No further action from the employee was required. Maiorini characterized the process as "informal," and stated that managers can skip steps or ignore steps in the process.

In May 2015, another employee of Defendant, Jay Leiser, who worked in the same department as Plaintiff, asked to transfer to Florida. Leiser informed his manager, Bill Wolf, that his wife had an opportunity to start a dental practice in Florida, and that he had already made plans to sell his home in New York and move to Florida. In an email sent the next month, on June 4, Cuyar informed Maiorini that he wanted to address Leiser's compensation since he was moving to an area with a lower cost of living, but that he wanted to handle Plaintiff's move differently, following the precedent established when a previous employee moved without informing Defendant first, despite the fact that Plaintiff's situation was more analogous to Leiser's. Not long after, Leiser moved to Florida. For the first six months, Leiser worked remotely one or two days per week, and came back to New York to work in person the rest of the time. Defendant then granted him permission to transfer to Florida. In addition, another employee in the department, Steve Lipka, transferred to Boston in or around 2011.

Plaintiff was 63 years old at the time he was terminated. He was the oldest person in his department. Plaintiff's replacement, Felix, was approximately 48 years old. Hamilton, Cuyar, and Maiorini were all in their 40s, while Reid was approximately 61.

## III.   DISCUSSION

### A.   Sufficiency of the Evidence

Defendant first contends that it is entitled to judgment as a matter of law, or alternatively, that it should receive a new trial, because the jury's verdict was unsupported and against the

weight of the evidence given that there was no direct evidence to prove that Plaintiff was terminated because of his age. Instead, Defendant claims that Plaintiff was fired because he moved to Boston without Defendant's approval, and then refused to return to New York when Defendant asked him to do so.[4]

Plaintiff brought his claim pursuant to the New York City Human Rights Law ("NYCHRL"), which prohibits many forms of discrimination, including, as relevant here, forbidding employers from discriminating based on age. N.Y.C. Admin. Code § 8-107. For many years, courts construed the NYCHRL "to be coextensive with its federal and state counterparts." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 108 (2d Cir. 2013). In 2005, however, the New York City Council passed the Local Civil Rights Restoration Act of 2005, which requires courts to perform an "independent analysis" of NYCHRL claims, because the council believed that courts were construing the NYCHRL too narrowly. Id. at 109. The Restoration Act "established two new rules of construction." Id. "First, it created a 'one-way ratchet,' by which interpretations of state and federal civil rights statutes can serve only 'as a floor below which the City's Human Rights law cannot fall.'" Id. (quoting Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009)). "Second, it amended the NYCHRL to require that its provisions 'be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with [comparably-worded provisions], have been so

---

[4] Plaintiff argues that the district court cannot grant Defendant's motion for judgment as a matter of law where the evidence presented at trial was not substantially different from that considered at the summary judgment stage. Plaintiff's argument is based on a case in which the Second Circuit determined that, after the trial court's grant of summary judgment had been reversed by the appellate court, the trial court could not then grant judgment as a matter of law based on essentially the same evidence. See Piesco v. Koch, 12 F.3d 332, 341–42 (2d Cir. 1993). In this case, however, where there has been no appeal and no appellate decision, the rule set forth in Piesco is inapposite.

construed.'" Id. (quoting Restoration Act § 7). "Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." Id. The Second Circuit has regularly noted error in district court decisions where the district courts applied federal standards to NYCHRL claims. Id. (citing cases).

For claims based on federal law, courts regularly acknowledge that "'employers are rarely so cooperative as to include a notation in the personnel file' that their actions are motivated by factors expressly forbidden by law." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994) (quoting Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 464 (2d Cir. 1989)). "[D]irect evidence of discrimination is difficult to find precisely because its practitioners deliberately try to hide it." Id. (quoting Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1112 (2d Cir. 1988)). "[A]n employer who discriminates is unlikely to leave a 'smoking gun' attesting to a discriminatory intent," which means that "a victim of discrimination is seldom able to prove his claim by direct evidence, and is usually constrained to rely on circumstantial evidence." Id.

Due to the fact that discriminatory intent can be difficult to prove, the Supreme Court developed an analytic framework in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147–49 (2000) to determine where it is appropriate for a jury to infer discrimination if it declines to credit the employer's explanation for an adverse employment action. "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." Reeves, 530 U.S. at 147. "Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." Id. "Evidence suggesting that a defendant

accused of illegal discrimination has chosen to give a false explanation for its actions gives rise to a rational inference that the defendant could be masking its actual, illegal motivation." Holcomb v. Iona Coll., 521 F.3d 130, 141 (2d Cir. 2008) (quoting Reeves, 530 U.S. at 154 (Ginsburg, J., concurring)). "Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. Of course, this does not mean "that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability." Id. For instance, where "the record conclusively revealed some other, non-discriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue," the employer could be entitled to judgment as a matter of law. Id. Therefore, "[w]hether judgment as a matter of law is appropriate in any particular case will depend on a number of factors," including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case." Id. at 148–49.

Alternatively, a plaintiff may also prevail in a NYCHRL action "if he or she proves that unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for an adverse employment decision." Melman v. Montefiore Med. Ctr., 98 A.D.3d 107, 127 (N.Y. App. Div. 2012). "If a plaintiff can prevail on a 'mixed motive' theory, it follows that he or she need not prove that the reason proffered by the employer for the challenged action was actually false or entirely irrelevant." Id. Rather, under this analysis, the plaintiff must demonstrate that the challenged action was "more likely than not based in whole or in part on discrimination." Id. (quoting Aulicino v. N.Y.C. Dep't of Homeless Servs., 580 F.3d 73, 80 (2d Cir. 2009)).

Here, the evidence presented at trial strongly suggested that Defendant's asserted reason for firing Plaintiff was false. Defendant's employee, Reid, told Plaintiff that in order to transfer to Boston, he only had to obtain permission from Reid and Hamilton, and further conveyed that he had received that permission. Plaintiff was not aware of any policy to the contrary, or any remaining issue that needed to be resolved. During the period of time when Plaintiff made arrangements to move to Boston, told his colleagues that he was transferring, began working in Boston, and asked for equipment and space in Boston, none of Defendant's employees told Plaintiff that he did not have permission to transfer or that there was any problem with the transfer. Meanwhile, however, Defendant's employees were formulating a plan to fire Plaintiff.

Based on this evidence, it appears that Defendant allowed Plaintiff to think that he had permission to transfer, waited until he moved to Boston and his replacement was trained, and then used the move as a pretense to fire him. Had Defendant wished to continue to employ Plaintiff, it simply could have told him, at any point prior to his move to Boston, that he did not have permission to transfer, or that he was still required to work in the New York office on the same schedule as before. The circumstances surrounding the June 22 conversation also undermine Defendant's asserted reason for firing Plaintiff. Although Defendant told Plaintiff that he could keep his position if he returned to New York, Defendant had already hired Plaintiff's replacement, made plans to "terminate" Plaintiff, and then put strong pressure on Plaintiff to resign. Furthermore, Defendant insisted that Plaintiff would have to be physically present in the New York office five days per week, beginning the very next day, despite the unreasonable time frame and the same space constraints which had originally prompted Defendant to require Plaintiff to work remotely at least 60% of the time in the years leading up to his termination. In contrast, when Leiser, the similarly-situated employee who wished to transfer to Florida,

approached Defendant with his transfer request, Defendant did not fire him for planning to move or even moving to Florida; instead, Defendant accommodated the move, first allowing him to work remotely for part of the time and then eventually allowing him to transfer. Thus, the evidence demonstrates that Defendant's purported justification for terminating Plaintiff was false.

Next, continuing to apply the analytic framework set forth in Reeves, the Court also concludes that Plaintiff presented a prima facie case of age discrimination. To make out a prima facie case of age discrimination, a plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified to hold the position; (3) he was terminated from employment or suffered another adverse employment action; and (4) the discharge or other adverse action occurred under circumstances giving rise to an inference of discrimination." Melman, 98 A.D.3d 107, 113 (N.Y. App. Div. 2012). The first three factors appear to be undisputed here: Plaintiff was a member of a protected class due to his age; he was qualified to hold the position; and he was terminated. As to the fourth factor, courts have determined that, in general, "a plaintiff's replacement by a significantly younger person is evidence of age discrimination" at the prima facie stage. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000) (citing cases); see also Mendillo v. Prudential Ins. Co. of Am., 156 F. Supp. 3d 317, 339 (D. Conn. 2016) (same). In this case, Plaintiff's replacement, Felix, was approximately 15 years younger, which is enough to satisfy the fourth factor. Thus, Plaintiff presented a prima facie case of age discrimination.

Even though Plaintiff established a prima facie case of age discrimination and provided compelling evidence that Defendant's purported justification was false, the Court must still determine whether the jury permissibly inferred that Defendant unlawfully discriminated against him. As discussed supra, factors to consider include the relative strength or weakness of the

evidence presented by each side, including the strength of the plaintiff's prima facie case, and whether the record "conclusively revealed" an alternative, non-discriminatory reason for the employer's decision. Reeves, 530 U.S. at 148–49. Here, much of Plaintiff's case hinges on the fact that Defendant's purported reason for firing Plaintiff did not make sense, given the way events unfolded, and also that the behavior of Defendant's employees was at odds with Defendant's justification. Indeed, the evidence indicates that Defendant was actively attempting to create a pretext to fire Plaintiff. Furthermore, Defendant treated Plaintiff differently than another employee who made essentially the same request within the same time period, which gives rise to an inference that Defendant was singling out Plaintiff for different treatment even if the reason for the disparate treatment remained unclear. In light of this evidence, Plaintiff's solid prima facie case, and the lack of any indication in the record of an obvious, alternative, non-discriminatory explanation for Plaintiff's firing, the jury permissibly inferred that Defendant's continued insistence that it fired Plaintiff for moving without permission was covering up an impermissible motive, even where there was little direct evidence of age discrimination. Moreover, Plaintiff was entitled to prove his case through circumstantial evidence.

Although there is limited case law concerning post-verdict motions challenging the sufficiency of the evidence under the NYCHRL, the New York City Council has repeatedly reiterated that the NYCHRL is meant to be uniquely broad and protective, and that state and federal civil rights statutes serve only as a floor below which the NYCHRL cannot fall. Therefore, the Court determines that, although this case might be a close call under federal law given the lack of any direct evidence of age discrimination, the scope of the NYCHRL permits Plaintiff to prove his case through the use of circumstantial evidence, by disproving Defendant's

proffered non-discriminatory explanation, and then relying on appropriate inferences.[5]

Accordingly, the evidence is sufficient to support the jury's verdict that Defendant violated the

NYCHRL.

**B.    Existence of Subject Matter Jurisdiction**

Next, Defendant argues that the jury's verdict deprived the Court of subject matter

jurisdiction because the NYCHRL protects only individuals who "inhabit or are 'persons in' the

City of New York." Hoffman v. Parade Publ'ns, 15 N.Y.3d 285, 289 (2010). In order to establish

that a plaintiff is protected by the law, the plaintiff must establish that the "alleged discriminatory

conduct had an impact within the city." Id. at 290 (quotation marks omitted). Defendant contends

that the jury verdict reflects a finding that the jury believed Plaintiff had permission to transfer to

Massachusetts, and so the impact of the discriminatory conduct was felt in Massachusetts, not

New York. As such, Defendant contends that the Court was deprived of subject matter

jurisdiction at the time the jury rendered its verdict.

Defendant's argument is flawed for a number of reasons. First, as Plaintiff correctly

points out, Defendant invoked the Court's diversity jurisdiction at the time it removed the case

from state to federal court. [ECF No. 1]. The only requirements for diversity jurisdiction are: (1)

diversity of citizenship; and (2) that the amount in controversy exceeds $75,000. 28 U.S.C.

§ 1332(a); see also id. at § 1441 (same requirements for removal). Defendant has never claimed

that either of these two prerequisites are not present here. See [ECF No. 1 at 2] (notice of

removal filed by Defendant, which asserts that "[t]here is complete diversity between the

parties," because Plaintiff is a citizen of Massachusetts and Defendant is a New York

---

[5] Defendant's argument relies heavily on two cases, Malone v. Lockheed Martin Corp., 610 F.3d 16, 20–22 (1st Cir. 2010) and Marcano-Rivera v. Pueblo Int'l, Inc., 232 F.3d 245, 248–53 (1st Cir. 2000). Those cases did not apply the framework set forth in Reeves, and they concern federal law as interpreted by the First Circuit; therefore, they have limited persuasive value here.

corporation, and claims that "[t]he amount in controversy exceeds $75,000"). Nothing about the jury's verdict changes the fact that the parties are diverse and that the amount in controversy is more than $75,000. Therefore, the Court continues to have subject matter jurisdiction over the dispute.

While Defendant provides quotes from several cases asserting that the court lacks subject matter jurisdiction over a NYCHRL claim where the discriminatory impact of the challenged action is felt outside New York City, Defendant fails to note that those cases concern the jurisdiction of New York state courts. See Hoffman, 15 N.Y.3d at 289 (describing Appellate Division decision as addressing whether "New York has subject matter jurisdiction over the claims"); see also id. at 292 (Jones, J., dissenting) ("At issue is whether New York courts have subject matter jurisdiction over a nonresident plaintiff's claims against a New York employer . . . ."); Benham v. eCommission Solutions, LLC, 989 N.Y.S.2d 20 (App. Div. 2014) (discussing "[w]hether New York courts have subject matter jurisdiction over a nonresident plaintiff's claims" under city and state human rights laws). In addition, Defendant cites to a federal district court case which notes that New York courts view the issue as one of subject matter jurisdiction and then proceeds to analyze an argument under that framework, but the case does not discuss whether the lack of state court jurisdiction would deprive a federal court of diversity jurisdiction. See Wexelberg v. Project Brokers LLC, No. 13 CIV. 7904 LAK MHD, 2014 WL 2624761, at *1, *10, *12 (S.D.N.Y. Apr. 28, 2014).

Furthermore, even if the Court accepted the contention that a jury verdict on the merits of the case could bear on the issue of whether the Court has diversity jurisdiction, Defendant is not correct that the verdict in this case proves that Plaintiff is not entitled to the protection of the NYCHRL. The jury was not asked specifically whether Plaintiff was given permission to transfer

to Massachusetts, and Defendant never requested the inclusion of such a question on the verdict form. An alternate, equally (if not more) plausible reading of the verdict and the evidence is that Defendant allowed Plaintiff to believe that he would be able to transfer to Massachusetts, but never officially authorized or intended to authorize the transfer, thus creating a pretext to fire him after he moved.[6] If the jury concluded that Plaintiff was always employed in New York City, even if he sometimes worked remotely for the New York City office, he would be able to bring a claim pursuant to the NYCHRL. See Hoffman, 15 N.Y.3d at 291 (describing the NYCHRL as protecting "those who work in the city"); Robles v. Cox & Co., 841 F. Supp. 2d 615, 624 (E.D.N.Y. 2012) (same, quoting Hoffman); see also Wexelberg, 2014 WL 2624761 at *11 (recognizing that working remotely for a New York City office "may present quite a different scenario" from one where an employee is stationed at an out-of-state office). Ultimately, Defendant's argument demonstrates the folly in attempting to discern a factual finding from a verdict where the jury was not asked to make a specific determination as to that issue. Accordingly, the verdict does not demonstrate that Plaintiff is not protected by the NYCHRL.

Finally, Defendant claims in a footnote that Plaintiff waived his ability to pursue a NYCHRL claim because his original complaint, which brought claims based on Massachusetts state law, did not include a cause of action under a Massachusetts city statute (despite the fact that no such statute exists in Winchester, where he resides). While the Court is skeptical of the merits of this argument, Defendant has never raised this point before, and does not explain what

---

[6] Were the Court required to make factual findings concerning its diversity jurisdiction, the Court would conclude that Defendant never transferred Plaintiff to Massachusetts and he was therefore continuously employed in New York City, despite the fact that he worked remotely from Massachusetts in the days preceding his termination. Importantly, Defendant issued an ultimatum to Plaintiff—that he would have to be physically present in the New York City office five days per week to keep his job—which demonstrated that Defendant viewed the job as being located in New York City at the time Plaintiff was terminated.

principle would allow it to do so for the first time in a post-trial motion. Simply appending an

otherwise-waived argument to a jurisdictional argument is not enough. In any case, had

Defendant raised this issue earlier, the Court would have entertained a motion to amend the

complaint. See Fed. R. Civ. P. 15 (court should "freely give leave" to amend complaint "when

justice so requires," and allowing amendments even during and after trial); 6 Charles Alan

Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1488 (3d ed.)

("Quite appropriately the courts have not imposed any arbitrary timing restrictions on requests

for leave to amend and permission has been granted under Rule 15(a) at various stages of the

litigation."). Allowing Plaintiff to amend the complaint would have been appropriate once the

Court determined, at Defendant's behest, that New York law applied, and such an amendment

would not have prejudiced Defendant.[7]

### C.       Standard of Proof for Punitive Damages Under the NYCHRL

Defendant asserts that the jury should have been instructed that Plaintiff had to prove his

entitlement to punitive damages by "clear and convincing" evidence. Instead, the jury was

instructed that it was permitted, but not required, to award punitive damages "if you find that the

acts of the Defendant were wanton and reckless or malicious." [Tr. Day 4 at 585:16–18]. The

Court went on to explain that "[a]n act is malicious when it is done deliberately with knowledge

of the Plaintiff's rights, and with the intent to interfere with those rights," and that "[a]n act is

wanton and reckless when it demonstrates conscious indifference and utter disregard of its effect

---

[7] Defendant separately argues that the inclusion of the "substantial factor" causation standard in
the jury instructions and the special verdict form was error. This argument is based on the
premise that Plaintiff should only have been allowed to bring a claim under the New York State
Human Rights Law ("NYSHRL"), not the New York City Human Rights Law. Since there is no
basis to conclude that Plaintiff should not have been allowed to bring his NYCHRL claim,
however, for the reasons discussed in this section, the argument based on the NYSHRL also
fails.

upon the health, safety and rights of others." <u>Id.</u> at 585:22–586:2. The jury was further instructed that it could not award punitive damages "[i]f you find that Defendant's acts were not wanton and reckless or malicious." <u>Id.</u> at 586:3–5.

The NYCHRL explicitly authorizes an award of punitive damages, but does not specify the standard to be used for determining liability for punitive damages. <u>See</u> N.Y.C. Admin. Code § 8-502; <u>see also</u> <u>Chauca v. Abraham</u>, 841 F.3d 86, 90 (2d Cir. 2016) (holding that appropriate standard for awarding punitive damages under NYCHRL was unclear, thus warranting certification of question to New York Court of Appeals). After the trial in this case concluded and briefing on the post-trial motions was completed, however, on November 1, 2017, the New York Court of Appeals issued a definitive opinion on this question. The court announced that "the standard for determining punitive damages under the NYCHRL is whether the wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a 'conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'" <u>Chauca v. Abraham</u>, 30 N.Y.3d 325, 334 (2017) (quoting <u>Home Ins. Co. v. Am. Home Prod. Corp.</u>, 75 N.Y.2d 196, 203–204 (1990)).[8] The instructions given to the jury in this case track the <u>Chauca</u> standard closely; if anything, they impose a higher burden of proof than that endorsed in <u>Chauca</u>. Although <u>Chauca</u> was not the law at the time of trial, it simply clarified an area of law that previously lacked a definitive explanation from the state's highest court, rather than reversing a prior decision or announcing a new standard. <u>See</u> <u>Chauca</u>, 841 F.3d at 93 ("New York state court decisions do not provide definitive guidance on this question."). Therefore, <u>Chauca</u> confirms that the punitive damages instructions in this case were not erroneous.

---

[8] In its brief in support of its post-trial motions, Defendant noted that the issue of the standard of proof for punitive damages for NYCHRL claims was pending before the New York Court of Appeals in <u>Chauca</u>. [ECF No. 76 at 18 n.4].

Further, even based on the cases available at the time of trial, there is no indication that the instructions were incorrect. Throughout trial, and again in its post-verdict motions, Defendant cited only negligence cases[9] in support of applying the "clear and convincing" standard and never offered any explanation as to why the standard for assessing punitive damages for negligence claims must also apply in the context of a NYCHRL claim. When faced with this issue, then-District Judge Sotomayor explained that "under New York law, punitive damages are not a separate cause of action;" rather, "[t]hey are inextricably linked to the underlying cause of action." Greenbaum v. Svenska Handelsbanken, N.Y., 979 F. Supp. 973, 982 (S.D.N.Y. 1997). Therefore, "it is difficult to justify subjecting only one form of damages to a different evidentiary standard than all of the other elements of the claim at issue—at least without clear direction from either a statute or controlling judicial authority." Id. She determined that, "[g]iven that there is no such clear direction [concerning city and state human rights laws], it is more reasonable to apply the same burden of proof with respect to one aspect of a claim as is applied to other aspects of the claim," and then accordingly concluded that a punitive damages award made under the preponderance standard applicable to federal claims should also apply to a NYCHRL claim. Id. at 982–83.

Defendant was unable to cite a single case that employed the "clear and convincing" standard for punitive damages on a NYCHRL claim. In contrast, a multitude of cases have applied the "willful or wanton negligence, or recklessness" standard. See, e.g., Johnson v. Strive E. Harlem Emp't Grp., 990 F. Supp. 2d 435, 449–50 (S.D.N.Y. 2014) (applying federal standard to NYCHRL claim, and explaining that the "punitive damages award thus turns on whether the

_____

[9] Defendant cites Randi A.J. v. Long Island Surgi-Ctr., 842 N.Y.S.2d 558 (App. Div. 2007) (breach of confidentiality, privacy, and fiduciary duty), and Munoz v. Puretz, 753 N.Y.S.2d 463 (App. Div. 2003) (personal injury).

evidence supports an inference of 'intentional discrimination with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" (quoting <u>MacMillan v. Millennium Broadway Hotel</u>, 873 F. Supp. 2d 546, 563 (S.D.N.Y. 2012))); <u>Farias v. Instructional Sys., Inc.</u>, 259 F.3d 91, 101 (2d Cir. 2001) (holding that the federal standard applies to claims for punitive damages under NYCHRL); <u>Roberts v. United Parcel Serv., Inc.</u>, 115 F. Supp. 3d 344, 373 (E.D.N.Y. 2015) (same); <u>MacMillan</u>, 873 F. Supp. 2d at 563 (same).

Defendant responds to this line of cases by asserting that they describe "only *what* a plaintiff must prove to obtain punitive damages, not *the level* to which the claim must be proven." [ECF No. 76 at 18 n.5]. Though Defendant does not elaborate on this point, apparently the argument is that a plaintiff is required to prove, by clear and convincing evidence, that the defendant acted with willful or wanton negligence or recklessness. Again, Defendant does not cite any cases that directly support this proposition. Furthermore, the cases that analyze the NYCHRL punitive damages standard in depth do not include even a single mention of either the "preponderance" or "clear and convincing" standards. <u>See, e.g.</u>, <u>Chauca</u>, 30 N.Y.3d at 330–34; <u>Chauca</u>, 841 F.3d at 89–93; <u>Farias</u>, 259 F.3d at 101–102.

In New York, "the general standard of proof in civil litigation is a preponderance of the evidence," with some exceptions. 8 <u>Carmody-Wait New York Practice</u> § 56:16 (2d ed. 2017); <u>accord</u> 5 <u>N.Y. Practice Series</u> §§ 3:9–10. Absent a recognized exception, courts should be hesitant to apply a higher burden of proof. <u>Greenbaum</u>, 979 F. Supp. at 982. Here, in particular, the reasoning behind <u>Chauca</u> indicates that the clear and convincing standard should not apply to NYCHRL punitive damages claims. In <u>Chauca</u>, the court began with the Title VII standard for punitive damages, as endorsed in <u>Farias</u>, but explained that, in light of the Restoration Act and subsequent guidance issued by the City Council, a lower standard of proof should apply. <u>Chauca</u>,

30 N.Y.3d at 332–34. Multiple appellate courts have determined that, in Title VII cases, a plaintiff must only prove entitlement to punitive damages by a preponderance of the evidence. See, e.g., White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 805–806 (6th Cir. 2004), aff'd sub nom. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); Karnes v. SCI Colo. Funeral Servs., Inc., 162 F.3d 1077, 1080–82 (10th Cir. 1998); Notter v. N. Hand Prot., No. 95-1087, 1996 WL 342008, at *10 (4th Cir. Jun. 21, 1996). Since the Chauca court concluded that the standard for recovering punitive damages under the NYCHRL should be *less* demanding than the federal standard, requiring punitive damages to be proven by clear and convincing evidence would directly contradict Chauca's reasoning. Consistent with this approach, a New York federal district court determined that a plaintiff bringing federal and NYCHRL claims was required to "prove *by a preponderance of the evidence* that the employer acted with malice or reckless indifference, or engaged in egregious and outrageous conduct." Caravantes v. 53rd St. Partners, LLC, No. 09 CIV. 7821 RPP, 2012 WL 3631276, at *25 (S.D.N.Y. Aug. 23, 2012) (emphasis added). Therefore, given the lack of support for Defendant's position, the authority indicating that the clear and convincing standard should *not* apply, and the reluctance of New York courts to impose a higher standard of proof absent clear direction to do so, the Court concludes that Defendant was not entitled to an instruction that Plaintiff was required to prove his claim for punitive damages by clear and convincing evidence.[10]

## IV. CONCLUSION

For the reasons discussed supra, Defendant is not entitled to judgment as a matter of law because the evidence was sufficient to support the jury's verdict. Likewise, Defendant is not

---

[10] For the same reasons, Defendant is not correct that it was entitled to a question on the special verdict form reflecting the clear and convincing evidence standard.

entitled to a new trial on the basis that the verdict is against the "demonstrable weight of the credible evidence," Foisy, 356 F.3d at 146, because the jury's verdict is sufficiently supported by the credible evidence presented at trial. Furthermore, the additional grounds that Defendant raised in arguing for a new trial—the existence of subject matter jurisdiction, the standard of proof for punitive damages, choice of law issues, and arguments based on the New York state human rights law—are also unavailing.

Accordingly, Defendant's motion for judgment as a matter of law [ECF No. 74] and motion for a new trial [ECF No. 75] are DENIED.

**SO ORDERED.**

March 7, 2018                                     /s/ Allison D. Burroughs
                                                 ALLISON D. BURROUGHS
                                                 U.S. DISTRICT JUDGE