UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

_______________________________

YURY RINSKY,

Plaintiffs,

Civil Action
No. 1:16-cv-10403-ADB

v.

March 29, 2017
Pages 1 to 29

CUSHMAN & WAKEFIELD NATIONAL CORPORATION,

Defendants.

_______________________________

TRANSCRIPT OF PRETRIAL CONFERENCE
BEFORE THE HONORABLE ALLISON D. BURROUGHS
UNITED STATES DISTRICT COURT
JOHN J. MOAKLEY U.S. COURTHOUSE
ONE COURTHOUSE WAY
BOSTON, MA 02210

JOAN M. DALY, RMR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
One Courthouse Way, Room 5507
Boston, MA 02210
joanmdaly62@gmail.com

APPEARANCES:

FOR THE PLAINTIFF:

JOHN W. DENNEHY
Dennehy Law
127 Main Street
Suite 1
Nashua, New Hampshire 03060
603.943.7633
johnwdennehy.com

MARK D. SZAL
Donovan Hatem, LLP
53 State Street
8th Floor
Boston, Massachusetts 02109
617.406.4500
mark@szallawgroup.com

FOR THE DEFENDANT:

ROBERT R. BERLUTI
EDWARD F. WHITESELL, JR.
MICHAEL A. BEDNARZ
Berluti McLaughlin & Kutchin, LLC
44 School Street
Boston, Massachusetts 02108
617.557.3030
rberluti@bmklegal.com
ewhitesell@bmklegal.com
mbednarz@bmklegal.com

P R O C E E D I N G S

(The following proceedings were held in open court before the Honorable Allison D. Burroughs, United States District Judge, United States District Court, District of Massachusetts, at the John Joseph Moakley United States Courthouse, One Courthouse Way, Boston, Massachusetts, on March 29, 2017.)

THE CLERK: Court is in session. Please be seated. This is civil action 16-10403, *Rinsky v. Cushman & Wakefield National Corporation*. Will counsel identify yourselves for the record.

MR. SZAL: Good afternoon, Your Honor. Mark Szal representing the plaintiff Yury Rinsky.

MR. DENNEHY: John Dennehy representing the plaintiff.

MR. BERLUTI: Good afternoon, Your Honor. Robert Berluti representing Cushman & Wakefield.

MR. WHITESELL: Edward Whitesell also representing Cushman & Wakefield.

THE COURT: We're set for trial a week from Monday, right?

MR. SZAL: Yes, Your Honor.

THE COURT: And I think what's pending is the summary judgment motion and the five motions in limine, correct?

MR. DENNEHY: Correct.

MR. BERLUTI: Yes, Your Honor.

THE COURT: Then we can go over what the trial schedule is going to look like, what voir dire is going to look like, etc. I'm happy to just rule on these motions. The paper was sufficient. The motion for summary judgment is denied on the age and disability counts. I think he made out a prima facie case. You satisfactorily rebutted it, and he made an adequate showing of pretext to go forward.

Factual disputes on the other two counts. So the motion for summary judgment is denied. That being said, I think there's a choice of law question, which I'm happy to hear you on, my take on it is that New York law applies. And that under New York law he can allege damages for the misrepresentation or the estoppel counts. The motion for summary judgment is denied, but I'm not really sure how those counts go forward with no damages.

I guess you could go forward in hopes of showing something that takes this out of the realm of employment at will, but I don't see anything like that in the record. I don't know what we do about those when damages are precluded. The counts going forward at trial?

MR. DENNEHY: Your Honor, the defendants did not brief the issue of New York law in the their summary judgment motion. So we take the position that that was an issue

raised in their pretrial memorandum, and we would have a right to brief it. Typically how I handle this type of situation is present the issue to the jury, and then maybe brief the issue to say what jury instructions would apply. They could move for directed verdict if they feel like no evidence was presented and if the Court felt like there was New York law applying. I think it's premature to make the decision now.

THE COURT: Make what decision now? Which law applies?

MR. DENNEHY: Right. In fact, he was in Massachusetts when he got the notice that --

THE COURT: They raised it. You didn't respond to it. We're going to trial in like 11 days.

MR. DENNEHY: Right.

THE COURT: So when were you planning on briefing it?

MR. DENNEHY: Like I was saying, they just raised the issue now. They didn't raise it in any dispositive-type motion. The issue basically hasn't been raised in a pretrial matter. It would have to be raised during the course of the trial. If the Court wants us to brief it in advance for the Court's --

THE COURT: Look, I think they raised it. You should have responded to it if you had an issue with what

they said or at least let me know you had an issue with what they said. That being said, you're correct that it doesn't come up until jury instructions. If you're planning on going ahead with the counts and not dismissing them, I can live with that.

MR. DENNEHY: We do plan to go ahead with the counts. I feel strongly that it is a Massachusetts issue.

THE COURT: I'm not sure the law is any different under Massachusetts either. The law in Massachusetts is a little bit more forgiving but not -- I'm not sure that it gets you over the line, but we can see how it plays out at trial.

MR. DENNEHY: Okay.

MR. BERLUTI: Couple of points, Your Honor. First of all, I understand your ruling with respect to summary judgment. I would say that I believe that the law with respect to the discrimination claims and the citation to *Blare v. Husky* is wrong. I think that's been overturned by *Lipchitz* which is that even if you show -- the *Blare* law was if you could show the stated reason was not the real reason, was a pretext, then you automatically jump to discrimination.

*Lipchitz* overturned that and said that even if you prove that the stated relationship was a pretext, the burden always remains with the plaintiff employee to show that the real reason was not a discriminatory one. That is, that but

the for the discrimination this job actually would not have been taken. And I respectfully submit that the reason why this was taken was for no discriminatory reason at all.

THE COURT: That's a factual dispute at this point. I think everyone has made a sufficient legal showing for it to go to the jury.

MR. BERLUTI: Okay. I just wanted to make that point because I think their brief is misleading.

THE COURT: I understand that. You can certainly make sure I get it right in the jury instructions.

MR. BERLUTI: With respect to the second point, Your Honor, it dovetails with the motions in limine. So certainly if they're going to stand up and they intend to go forward on these other claims, Judge, we're asking for a preclusion in terms of any evidence as to damages going forward just for the exact reason that Your Honor has cited.

THE COURT: They can go forward with damages on the two discrimination counts.

MR. BERLUTI: Right. Hold on a second. Again, the choice of law also applies to that. I would simply note for Your Honor that we flagged in the motion for summary judgment in a footnote that while we were briefing it with respect to the liability under Massachusetts law with respect to damages, we raised that issue in the summary judgment motion. So the assertion that we didn't raise it until the pretrial

is just not accurate. But with respect to New York law and damages and discrimination claim, the same extent of damages are not available. That is, punitive are not available in New York law.

THE COURT: So in your view what damages would they be entitled to under the discrimination counts?

MR. BERLUTI: They could talk about lost back pay, and they could talk about lost front pay to the extent that they can prove them up until the time of when he retired. But punitive damages are not available and recovery of attorneys fees are not available.

THE COURT: I actually have no idea what the answer to that is. When we sort out the question of law we'll figure out what the jury instruction should say.

On the motions in limine, these are my tentative rulings on them. I should say my slightly more than tentative rulings on them. You can be heard on them after I rule on them. The first plaintiff's one is to preclude evidence concerning real estate transactions. I'm granting that. I don't think they're actually disputing the fact that he had an intention to move to Massachusetts.

If he gets on the witness stand and denies it, you can cross examine him on it, but I don't see any probative value to that besides what you already have. And I do think it's prejudicial.

Plaintiff's motion two, preclude evidence as a collateral source benefit, that's granted. Three, to preclude evidence by defendant that the plaintiff failed to follow company policies, that's denied.

And plaintiff four, to preclude introduction of evidence concerning matters outside of plaintiff's department, as far as I'm concerned -- I'm not actually quite sure what's at stake in that motion. As far as I'm concerned, if it was produced during discovery, it comes in subject to the rules evidence. If it wasn't produced during discovery, it doesn't. It has to be produced to come in. And if you wanted stuff that didn't get produced, you had to complain about it earlier than this.

Defendant's motion in limine to exclude damages. As I say, at this point in time if it was only the third and fourth counts going forward, I'd have to look at that motion differently. But since the two discrimination counts are going forward, I think that they're entitled to put in damages.

If you want to talk about exactly what damages, we have to figure out the choice of law question, right, if there's a difference? I just don't know the answer.

MR. BERLUTI: Let's take them one at a time. With respect to real estate, Judge, you are precluding any evidence of his purchasing property in Somerville five years

prior to the time in question?

THE COURT: It seems to me that both sides are agreeing that it's been his intent for the last 20 years to at some point move to Massachusetts.

MR. BERLUTI: Right.

THE COURT: I don't think you can say that buying real estate five years ago meant that he intended on moving five years ago, right, because that's not what -- All you're trying to establish is that he had a longstanding interest in moving to Massachusetts.

MR. BERLUTI: And took steps. Insofar as this, Judge. It's not just -- it's different than a vacation home down the Cape or something like that or investment property. These were bought for his daughter who is here. And what he testified to in his deposition is the reason why he's wanted to move here for all of this amount of time is because his daughter has been here.

THE COURT: If he disputes that or says, hey, it never entered my head to move to Boston until my boss moved to Florida and I thought, hey, I can do what I want, too, then that comes in.

MR. BERLUTI: I just want to be clear that his purchasing of the property in Winchester in December of '14, that's all fair game?

THE COURT: Yes.

MR. BERLUTI: As to collateral source, Judge, I think there may have been some misread here. We don't care about the amounts as such that he received on collateral source in terms of an offset but his application for them, when he did it. So he finds out in July that he's being terminated, and by August he's applied for Social Security benefits.

THE COURT: That might just mean the guy needs money to live on. I don't see that as probative of what you want it to be probative for.

MR. BERLUTI: Well, that, Judge, along with the fact that he really didn't apply for jobs anywhere. It's probative of the fact that he wanted to retire, and that's what he was doing, and that's what he did. This is not collateral source in the form of a disability insurance. It's not collateral source or anything like that.

It's because he's applying for Social Security benefits as a retired person. And I think it is probative to what his state of mind was at that time. We're not trying to get an offset of $25,000 against what he otherwise could have earned. So I think to that extent it should come in.

THE COURT: Did he not look for other jobs?

MR. SZAL: That's not accurate, Your Honor. There was testimony in his deposition that he looked on several search engines, Indeed, Glass Door, Monster. He had actually

even had a discussion on a similar position with Staples, but it didn't prove to be a good fit. The simple fact of the matter is that he was 63, 64 years old and his specialty was on a fairly antiquated system that the defendants were phasing out.

So he did look for work, number one. It's established by the testimony. Defendants have had ample opportunity to question him on that, and it's just not accurate.

THE COURT: I'm willing to thread the needle here and let in testimony that you want to -- if you want to try and suggest that his intent to retire is consistent with that he applied for Social Security, I would let you go that far but no further.

MR. BERLUTI: That's fine. That's fine.

THE COURT: Okay. I think that's fair.

MR. DENNEHY: I don't know there's any evidence in the record that says he had an intent to retire. If they want to try to draw that circumstantially and make that argument, and that's what the Court is going to let him do, that's one thing. But if they're representing that there's something in the record that he had an intent to retire, that's not --

THE COURT: I think they're entitled to make that out circumstantially, that he didn't want to work anymore.

MR. DENNEHY: Okay.

THE COURT: Can we move on to voir dire? Do you want more discussions on the motions in limine?

MR. SZAL: Just one other thing, Your Honor. If you are going to allow evidence regarding Social Security benefits, I think the plaintiffs should be entitled to present a damages argument about having to elect Social Security benefits early at the age of 64 as opposed to --

THE COURT: That's fine. It was your motion. The further you open the door, the further they also get to walk through it. Okay? In terms of voir dire, I know that at least one of you submitted voir dire questions, maybe both of you. I think you both did. We will get out a set of draft voir dire questions for everyone to look at before trial. You can comment on them. A lot of what you both asked for will be included although not in the way that you asked for it.

Some of the questions are just overly broad. We'll never get a jury on things like, "Do you know anyone who worked in HR". I'm going to narrow those. Whoever asked for the bumper sticker question, that's a no go. We'll basically put together a draft and we can talk about it before we voir dire the jury.

The way I do voir dire and jury selection is in a civil trial I seat 12 jurors. I don't differentiate between

jurors and alternates. Whoever is left standing at the end of the trial gets to deliberate. So if we lose one, there's 11. If we don't lose one, there's 12. They'll bring up a panel usually at around 10. They all sit them in numerical order 1 through -- What are we getting like 40, Karen?

THE CLERK: Probably.

THE COURT: They'll bring up about 40 people. They'll be seated in numerical order. We will run through all the voir dire questions. We'll keep track of whoever answers yes to any question. When we've gotten through all the questions, we'll bring them up here one at a time and get them to talk about each question they've answered yes on. They'll go back to their seat.

It is my sort of view that none of us should want jurors here that don't want to be here. On the other hand, we have to get a jury. So we have the definite yeses. We have the definite nos. I try to keep sort of a running maybe list, and my idea at the end is get rid of all the maybes if possible, some of them for hardship or people who just don't want to be here.

You will be fully apprised standing at side bar who is in which category. Once we have finished all that, and I don't typically let people go even if they're an absolute no because I don't want the other jurors to understand that that's an option unless there's another judge that's looking

for a panel and we need to get people back downstairs. In which case I'd probably do just the cause issues, the hardship issues and then send those people out and keep the rest.

Ideally when we're done, there will still be 40 people sitting here, still be in numerical order, but not all of them will be viable. Then you will have the opportunity, three peremptories per side usually. You can strike whoever you want. If we're seating 12 and we're going to have 6 strikes, that means sort of the first 18 are in play. So if you decide to strike juror 32, that's your prerogative. That doesn't really make any sense.

You can strike in any order you want. You can strike juror number 1 and juror number 18. I don't care. You can back strike -- you'll see who each other's peremptories are. I just alternate between you, and then we'll have the jury. Do you have any questions about that? I don't put them in the box. When you're striking you're not going to see them. You're going to see all 40, not 18.

Mr. Berluti, any questions?

MR. BERLUTI: No questions, Your Honor.

MR. SZAL: No, Your Honor.

THE COURT: So then we'll have the jury. That week that we're scheduled to try, you all had initially indicated a shorter trial. I know one of you said still it's two or

three days, but one of you said four or five. I'm not in that Friday, Good Friday. And then I'm on vacation. It's school vacation week. So we need to get this tried by Thursday.

So I'm going to propose that we try 10 to 4 to get it done. Is everyone all right with that? And then to make the day efficient, I have found the day is more efficient if we buy the jurors lunch and then they're here to eat. We don't lose all that time with them going to the cafeteria.

In order to do that, I need to explain to them that I'm entering an order of partial sequestration. And I will explain to them it's so we can get them lunch. There's an additional instruction that I need to give them about not fraternizing and why I want them to stay away from the parties. It needs to be done to get the food up here. So the typical day will be 10 to 12; lunch break 12 to quarter of 1; back quarter of 1 to 2:15; 15-minute break; 2:30 to 4. So the longest they sit is two hours, and that's first thing in the morning. And then it's two hour-and-a-half chunks.

Keeping in mind that Thursday is absolutely it, there's some flexibility, if you run out of witness in the afternoon, but we're going to get done. It's your case to try in your time, but I have a hard cut off Thursday afternoon.

The first day depending on what you think about

scheduling, my normal practice is to get a jury, give them preliminary instructions and have you open. I don't generally require witnesses on the first day, but if you think we're going to be up against it with a Thursday deadline, let me know.

Part of the problem is I think jury selection and openings and preliminary instructions is already a long day for them. They show up the first day thinking they're only going to stay until 1. So whatever child care or business arrangements they've made, they can usually straighten it out by Tuesday but not by Monday. So if we just get through openings on Monday, do you all think we're on schedule to finish by Thursday?

MR. DENNEHY: I think it's a good schedule and will probably work.

MR. BERLUTI: It does work, Judge, yes.

THE COURT: Okay. Let's see what else is on my list here. We've talked about choice of law, talked about voir dire, done the motions in limine.

Anything else you all want to talk about today?

MR. SZAL: Not from us, Your Honor.

MR. BERLUTI: All set, Your Honor. Thank you.

THE COURT: I would not normally have you in again unless you want to come in. But when we file the draft voir dire, just feel free to send a letter, mark it up and send it

back. It doesn't need to be filed on the docket unless you want to, but it doesn't need to be. But somehow get us back what your thoughts on it are.

Monday morning, the day we start, we probably won't get a jury up before 10, but why don't you all plan on being here around 9:30, and anything that's come up including final questions on the voir dire we can take care of.

A couple other things in terms of logistics. Does everyone know how to use the electronic system in here if they want to use it? If you don't and you want to, Karen can set you up to figure out how to use it. The jurors each have individual screens. If you have an exhibit that you're showing electronically and there's an objection to it, when it first goes up, you all see it and I see it. The jury doesn't see it until it's ruled on or there's a consensus that it can be admitted.

I sit the witness over here so the jury gets a good view of them which makes it a little awkward for me but so be it. I think it's more important that the jury gets a chance to see them. You can open wherever you want. You can question from wherever you want. As long as you're not really obstructing anybody else's view or are really awkward. You can move around the courtroom the way you want.

I want you guys to try your case the way you want to try it. I'm pretty loosey-goosey about the logistics in

here. I want everybody to do their thing, not be hung up on sort of the procedures and logistics of the courtroom. I typically -- I have not let the jurors ask questions, but that's only because every time I offer it to the parties everybody declines.

If you want the jurors to be able to ask questions, I'm amenable to that and I'll instruct them to that. But I won't do it over anybody's objection.

What else? I'm sure I'm forgetting something. They are allowed to take notes. We keep the notebooks. They don't leave the courtroom. Anything else that's on anyone's mind about how this works in here?

MR. BERLUTI: If you do ask questions, Judge, it's at the end of all testimony and then they submit it to you in writing, we see it, you make a ruling, and then however you're going to phrase it, you ask it and then --

THE COURT: I've never done it before. I've offered it for every case I've tried and there's always somebody that either objects or is just generally terrified of the process. But what I would do is -- I did try a very long criminal case in here and the jurors got pretty comfortable and yelled out a few questions.

I don't think they like to wait until the end of the evidence. I think when they have a question, they want to ask it. So what I would let them do is write down their

questions and pass them up during a break to Karen.

MR. BERLUTI: Okay.

THE COURT: And then I would look at it and ask it or not ask it and phrase it in a more neutral way than they probably asked it.

MR. BERLUTI: If you took the questions before a witness was completed, you would then ask the question then?

THE COURT: I probably would ask it -- it depends on when they give it to me, but typically when they have questions like that, it's right after a break. They go back to the jury room, they think about it, they write it down, they come out and hand it to me. So if it is about a witness that you're directing, I would wait until the end of your direct.

MR. BERLUTI: Okay.

THE COURT: And then I would say they have this question that I think is still viable.

MR. BERLUTI: That makes sense.

THE COURT: I would try and find a logical place. I'm not going to let them run the show in here. It's interesting. During this long criminal case I did, these people are putting up exhibit after exhibit and all these letters. One of the jurors yelled out -- I guess they sent a note back, they're like are they ever going to tell us who wrote these letters? It's not like an inquisitorial

question. It's a point of clarification like something they think you missed.

I think they can be sort of helpful, but I'm not going to let them be an investigating juror. I'm going to let them ask questions that clarify but not questions that take us beyond the scope of what either one of you want to present.

MR. BERLUTI: That's fine. In the state court my experience has been when they've done it, it's actually become less frequent than more, they wait until the end of a witness and then the question, and then they how follow up obviously from either side. What you've proposed at the end of direct and at the end of cross is fine. If it's at the end of cross -- again I expect if it's at the end of a witness, both sides will have an opportunity to follow up.

THE COURT: Yes.

MR. BERLUTI: Okay. That's fine.

THE COURT: It's supposed to be helpful, not a trap.

MR. BERLUTI: Exactly.

THE COURT: I will let you all decide. You can let me know Monday morning if you want them to be able to ask questions or not. I leave it wholly up to you. When the jury is deliberating, you never know how long the deliberations are going to take, and I have to leave on

Friday. I will get another judge to cover deliberations, but we need to get through jury charge before Thursday afternoon.

I have another trial next week, but in the interest of making sure that you all stay moving, we'll get you draft jury charges as early in your trial week as we can. Obviously we can't do it until we solve this choice of law question. If anybody thinks that the choice of law is going to influence what evidence comes in, it needs to be briefed before the morning of trial. Anything else?

MR. BERLUTI: I don't think so, Your Honor.

MR. SZAL: No, Your Honor.

THE COURT: Do you want to come back before trial or not bother?

MR. BERLUTI: I'm sorry?

THE COURT: Do you want to come back before trial or not bother? We'll meet Monday morning. I'm happy to meet at 9 instead of 9:30 if that makes a difference to you. If there's things on your mind and you want to come in, I'm happy to see you next week.

MR. BERLUTI: I guess my only thought, Judge, is if there's going to be a choice of law thing, we should know that sooner than later.

THE COURT: Have you briefed it as comprehensively as you want to?

MR. WHITESELL: We just touched on the issue in a

pretrial memorandum. We'd like the opportunity -- if it's going to be briefed in full, we'd like to look into it a little further.

THE COURT: Do you want to brief it simultaneously?

MR. BERLUTI: I think that makes sense, Judge.

MR. DENNEHY: To respond to your initial inquiry, I think the evidence is going to come in how it's going to come in. I'd prefer to brief it further into the trial. If they want to submit their brief early, I would like the ability to be able to say this is what the Court heard in my brief and it's part of teeing up what the jury instruction would be.

We deal with this all the time. Whether Connecticut or New Hampshire or whatever, it's typically done as you try to figure out what jury instructions to give after the evidence has come in.

THE COURT: That's not been my experience. My experience is this is normally hashed out on a motion to dismiss or motion for summary judgment, when I actually have to apply law to figure out if the case is going forward. I'm happy to figure out in the middle of trial unless it has an impact on what evidence comes in. Then I don't think it's fair. I don't think it's fair to anybody to have evidence come in that shouldn't or to preclude evidence that should.

So if it's not going to change the evidence, if it's just sort of the strength of the instruction, that's

fine. I honestly don't the answer. I don't know the difference between Massachusetts and New York law and the issues that are going to be raised here.

On a first look it's a functional test. The guy worked in New York for 28 years. The company is in New York. The preliminary discussions about his move were in New York. It seems like the balance tips in favor of New York, although I understand that he moved here and the termination happened here. I hear you on that.

MR. SZAL: He also performed work here for a month without objection. So he was working from Massachusetts, and the termination happened while he was here.

MR. BERLUTI: It was more like three weeks, Judge, because the first week he was off and he performed some things --

THE COURT: Three weeks, 28 years, four weeks, 28 years. If you want to brief it, it's fine. I really have sort of an open mind about it. I think this test is sort of mushy, but it feels to me like it tips in favor of New York.

MR. DENNEHY: All's I'm saying is to me it's been raised just recently, and I would like to explore it. And I'd like to be prepared for trial, let evidence come in and then brief it than the way it played out here. I'd like to go back and see how it played out with MCAD and how they responded to it. The claims were brought here under

Massachusetts law and it went forward here. There's a part of this that I don't know if there's an estoppel issue as well.

THE COURT: For you to be objecting and me hear it's admissible under Massachusetts law and not under New York law and not have any resolution as to what law we're looking at, that's what I don't want.

MR. BERLUTI: The MCAD, Judge, was filed and withdrawn. The MCAD took no action on this. There's been no probable cause finding. It seems to me we should probably get the briefing to you by Thursday of next week.

THE COURT: That's fine. You can supplement them. If the law is sufficiently different enough between the two jurisdictions that it's going to affected the admissibility of evidence, I can't do it on the fly.

MR. DENNEHY: I don't think it does. I think what happens is it affects the jury instructions in this case.

THE COURT: If that's all it affects, it can wait until the end. If it affects the admissibility of various types of evidence --

MR. DENNEHY: I think it's more of a jury instruction.

THE COURT: If that's what it is, that's what it is. That's fine. You can wait until jury instructions. If we get to a question of admissibility, I don't want you to

let the briefing on this go and me be in a position where someone is telling me it comes in under one law and not on the other. There are many things I do on the fly up here, but to do an analysis on a choice of law question is not going to be one of them.

All right. What do you want to do? Do you want to brief it? Do you want to run for luck that it's a jury instruction issue? Do you want to look at it and see if it's a jury instruction issue?

MR. DENNEHY: I think it is a jury instruction issue. Maybe what we should do is just report to the Court what we feel like we should do and you can decide how you want to deal with it.

THE COURT: That's fine. Do you all think this goes to the admissibility of any evidence or just an instruction issue?

MR. BERLUTI: I don't think we should wait until the evidence is my inclination. I think it should be briefed by next Thursday or Friday and we should know before we open. If it's going to affect admissibility, it's going to affect what we may present to the jury in opening.

THE COURT: Let's have it briefed by next Thursday. We won't leave anyone time for much response, but hopefully you'll both be thorough.

MR. BERLUTI: And if Your Honor wants, if it will

be beneficial for any oral argument, you can let us know to come in next Friday for any argument.

THE COURT: I love oral arguments on Friday afternoon. It's my favorite.

MR. BERLUTI: As much as we love to give them, Your Honor.

MR. DENNEHY: I would just say how counsel just presented was he basically agreed with me that it's a jury instruction issue, but he wants to brief it earlier, which is fine. But I guess in this situation what I'd like to do is if the Court wants to see this earlier and that's what you are more comfortable with, then we brief it by Thursday and give it to you. But I would like the ability to have that as an issue that's reserved before jury instructions and be supplemented if there's something in the evidence. It's a major issue here.

THE COURT: If you brief it by next Thursday and it is evident from the briefs that it comes down to just a jury instruction issue, you can have at it as we go along. But I'm going to have to make or I'm going to be inclined to make some sort of preliminary finding. At least a preliminary finding if there's any question about it impacting evidence that comes in.

MR. DENNEHY: Okay.

THE COURT: Anything else?

MR. BERLUTI: No, Your Honor.

MR. SZAL: No, Your Honor.

THE COURT: All right. We'll have the briefing on the choice of law done by next week, and then I'll see you all -- I'm here. So whenever you want to come in that Monday of trial, if you feel like you have a lot, come in at 9. Karen will come get me. If you feel like it's not a lot, come in at 9:30. If you want help with the electronics in the courtroom, ask Karen. She'll help you out.

We have easels. We have podiums. All right? We'll get the voir dire, too. Thanks everyone.

THE CLERK: Court is adjourned.

(Court adjourned at 2:36 p.m.)

\- - - - - - - - - - - - -

CERTIFICATION

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter to the best of my skill and ability.

/s/ Joan M. Daly                    May 4, 2018

______________________              ____________________

Joan M. Daly, RMR, CRR              Date
Official Court Reporter